# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
LOS ANGELES SUPERIOR COURT

JUL 2 2 2019

Sherri R. Carter, Executive Officer/Clerk
By _____ *Tanya Herrera*_____, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; [Additional Parties Attachment form is attached]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RICHARD TRUJILLO, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA")

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):* **19STCV25377**

Los Angeles County Superior, Central District, Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Arnab Banerjee(252618), Capstone Law APC, 1875 Century Park East, #1000, LA, CA 90067 (310) 556-4811

DATE:                            SHERRI R. CARTER
*(Fecha)* JUL 2 2 2019      Clerk, by _____, Deputy
                            *(Secretario)*              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*  Tanya Herrera

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)

          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

BY FAX

07/24/2019

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Richard Trujillo v. The Chefs' Warehouse West Coast. LLC, et al | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

THE CHEFS' WAREHOUSE, INC., a Delaware corporation; DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; QZINA SPECIALITY FOODS, INC., a Washington corporation; and/or QZINA SPECIALTY FOODS (AMBASSADOR), INC., a California corporation; and DOES 1 through 10, inclusive

Page   1   of   1

Page 1 of 1

1  Arnab Banerjee (SBN 252618)
   Arnab.Banerjee@capstonelawyers.com
2  Brandon Brouillette (SBN 273156)
   Brandon.Brouillette@capstonelawyers.com
3  Ariel Harman-Holmes (SBN 315234)
   Ariel.Harman-Holmes@capstonelawyers.com
4  Capstone Law APC
   1875 Century Park East, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 556-4811
6  Facsimile:    (310) 943-0396

7  Attorneys for Plaintiff Richard Trujillo

**FILED**
**LOS ANGELES SUPERIOR COURT**

JUL 2 2 2019

Sherri R. Carter, Executive Officer/Clerk
By _____ Nunes _____, Deputy
Tanya Herrera

8
9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF LOS ANGELES

11  RICHARD TRUJILLO, individually, and on    Case No.: **19STCV25377**
    behalf of other members of the general
12  public similarly situated, and as an aggrieved   **CLASS ACTION COMPLAINT &**
    employee pursuant to the Private Attorneys    **ENFORCEMENT ACTION UNDER THE**
13  General Act ("PAGA"),                         **PRIVATE ATTORNEYS GENERAL ACT,**
                                                  **CALIFORNIA LABOR CODE §§ 2698, ET**
14                 Plaintiff,                     **SEQ.**

15          vs.                                   (1) Violation of California Labor Code §§ 510
                                                      and 1198 (Unpaid Overtime);
16  THE CHEFS' WAREHOUSE WEST             (2) Violation of California Labor Code
    COAST, LLC, a Delaware limited liability          §§ 1182.12, 1194, 1197, 1197.1, and 1198
17  company; THE CHEFS' WAREHOUSE,                    (Unpaid Minimum Wages);
    INC., a Delaware corporation; DEL        (3) Violation of California Labor Code
18  MONTE CAPITOL MEAT COMPANY,                       §§ 226.7, 512(a), and 1198 (Failure to
    LLC, a Delaware limited liability company;        Provide Meal Periods);
19  QZINA SPECIALITY FOODS, INC., a          (4) Violation of California Labor Code
    Washington corporation; and/or QZINA             §§ 226.7 and 1198 (Failure to Authorize
20  SPECIALTY FOODS (AMBASSADOR),                     and Permit Rest Periods);
    INC., a California corporation; and DOES 1   (5) Violation of California Labor Code § 227.3
21  through 10, inclusive,                            (Failure to Pay Vacation Wages)
                                              (6) Violation of California Labor Code §§
22                 Defendants.                     226(a), 1174(d), and 1198 (Non-Compliant
                                                   Wage Statements and Failure to Maintain
23                                                 Payroll Records);
                                              (7) Violation of California Labor Code §§ 201
24                                                 and 202 (Wages Not Timely Paid Upon
                                                   Termination);
25                                            (8) Violation of California Labor Code § 2802
                                                   (Unreimbursed Business Expenses);
26                                            (9) Civil Penalties for Violations of California
                                                   Labor Code, Pursuant to PAGA, §§ 2698, *et*
27                                                 *seq.*;
                                              (10)    Violation of California Business &
28                                                 Professions Code §§ 17200, *et seq.*

BY FAX

07/22/2019

1   (Unlawful Business Practices); and
    (11)    Violation of California Business &
2           Professions Code §§ 17200, *et seq.* (Unfair
            Business Practices)
3
    **Jury Trial Demanded**
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Richard Trujillo ("Plaintiff"), individually, and on behalf of all other members of the public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved employees, alleges as follows:

## JURISDICTION AND VENUE

1.      This class action and state enforcement action is brought pursuant to California Code of Civil Procedure section 382 and California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.  The monetary damages, penalties, and restitution sought by Plaintiff exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.  This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10.  The statutes under which this action is brought do not specify any other basis for jurisdiction. Plaintiff's share of damages, penalties, and other relief sought in this action does not exceed $75,000.

2.      This Court has jurisdiction over Defendants because Defendants are either citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court because Defendants employ persons in this county, and employed Plaintiff this county, and thus a substantial portion of the transactions and occurrences related to this action occurred in this county.

4.      California Labor Code sections 2698, *et seq.*, the "Labor Code Private Attorneys General Act of 2004" ("PAGA"), authorize aggrieved employees to sue as private attorneys general their current or former employers for various civil penalties for violations of

1 │ various provisions in the California Labor Code.

2 │ **THE PARTIES**

3 │     5.    Plaintiff Richard Trujillo is a resident of Pico Rivera, in Los Angeles County,

4 │ California.  Defendants employed Plaintiff as an hourly paid, non-exempt employee from

5 │ approximately March 2016 to July 10, 2018.  Plaintiff worked for Defendants at their

6 │ warehouse/distribution center location in City of Industry, California.  Plaintiff was hired as a

7 │ Warehouse Worker, promoted to Order Selector in July 2016, and then promoted to Will Call

8 │ Dispatcher in 2017.  In June 2018, Plaintiff again worked as a Warehouse Worker, where he

9 │ remained until the end of his employment.  Plaintiff typically worked eight (8) to ten (10) hours

10 │ per day, five (5) days per week, and forty (40) to fifty (50) hours per week.  At the time

11 │ Plaintiff's employment with Defendants ended, he earned approximately $13.50 per hour.

12 │ Plaintiff's job duties included replenishing bins, scanning items, operating a forklift, fulfilling

13 │ and packing customer orders, reviewing and verifying that orders were fulfilled properly,

14 │ logging damaged items, printing order tickets, counting and breaking down pallets, monitoring

15 │ transfers and pick-ups of pallets, and maintaining a clean work area.

16 │     6.    THE CHEFS' WAREHOUSE WEST COAST, LLC was and is, upon

17 │ information and belief, a Delaware limited liability company, and at all times hereinafter

18 │ mentioned, an employer whose employees are engaged throughout this county, the State of

19 │ California, or the various states of the United States of America.

20 │     7.    THE CHEFS' WAREHOUSE, INC. was and is, upon information and belief, a

21 │ Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are

22 │ engaged throughout this county, the State of California, or the various states of the United States

23 │ of America.

24 │     8.    DEL MONTE CAPITOL MEAT COMPANY, LLC was and is, upon

25 │ information and belief, a Delaware limited liability company, and at all times hereinafter

26 │ mentioned, an employer whose employees are engaged throughout this county, the State of

27 │ California, or the various states of the United States of America.

28 │     9.    QZINA SPECIALTY FOODS, INC. was and is, upon information and belief, a

1    Washington corporation, and at all times hereinafter mentioned, an employer whose employees

2    are engaged throughout this county, the State of California, or the various states of the United

3    States of America.

4          10.    QZINA SPECIALTY FOODS (AMBASSADOR), INC. was and is, upon

5    information and belief, a California corporation, and at all times hereinafter mentioned, an

6    employer whose employees are engaged throughout this county, the State of California, or the

7    various states of the United States of America.

8          11.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein

9    under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the

10   complaint and serve such fictitiously named Defendants once their names and capacities

11   become known.

12         12.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10

13   were the partners, agents, owners, or managers of THE CHEFS' WAREHOUSE WEST

14   COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE CAPITOL MEAT

15   COMPANY, LLC; QZINA SPECIALTY FOODS, INC.; and QZINA SPECIALTY FOODS

16   (AMBASSADOR), INC. at all relevant times.

17         13.    Plaintiff is informed and believes, and thereon alleges, that each and all of the

18   acts and omissions alleged herein was performed by, or is attributable to, THE CHEFS'

19   WAREHOUSE WEST COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE

20   CAPITOL MEAT COMPANY, LLC; QZINA SPECIALTY FOODS, INC.; QZINA

21   SPECIALTY FOODS (AMBASSADOR), INC.; and/or DOES 1 through 10 (collectively,

22   "Defendants" or "THE CHEFS' WAREHOUSE"), each acting as the agent, employee, alter

23   ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and

24   was acting within the course and scope of such agency, employment, joint venture, or concerted

25   activity with legal authority to act on the others' behalf.  The acts of any and all Defendants

26   were in accordance with, and represent, the official policy of Defendants.

27         14.    At all relevant times, Defendants, and each of them, ratified each and every act or

28   omission complained of herein.  At all relevant times, Defendants, and each of them, aided and

1    abetted the acts and omissions of each and all the other Defendants in proximately causing the

2    damages herein alleged.

3        15.    Plaintiff is informed and believes, and thereon alleges, that each of said

4    Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

5    omissions, occurrences, and transactions alleged herein.

6        16.    Under California law, Defendants are jointly and severally liable as employers

7    for the violations alleged herein because they have each exercised sufficient control over the

8    wages, hours, working conditions, and employment status of Plaintiff and class members.  Each

9    Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled

10   their work schedule and/or conditions of employment, determined their rate of pay, and

11   maintained their employment records.  Defendants suffered or permitted Plaintiff and class

12   members to work and/or "engaged" Plaintiff and class members so as to create a common law

13   employment relationship.  As joint employers of Plaintiff and class members, Defendants are

14   jointly and severally liable for the civil penalties and all other relief available to Plaintiff and

15   class members under the law.

16       17.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times,

17   Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class

18   members because Defendants have:

19           (a)    jointly exercised meaningful control over the work performed by Plaintiff

20                  and class members;

21           (b)    jointly exercised meaningful control over Plaintiff's and class members'

22                  wages, hours, and working conditions, including the quantity, quality

23                  standards, speed, scheduling, and operative details of the tasks performed

24                  by Plaintiff and class members;

25           (c)    jointly required that Plaintiff and class members perform work which is

26                  an integral part of Defendants' businesses; and

27           (d)    jointly exercised control over Plaintiff and class members as a matter of

28                  economic reality in that Plaintiff and class members were dependent on

CLASS ACTION COMPLAINT

1    Defendants, who shared the power to set the wages of Plaintiff and class

2    members and determine their working conditions, and who jointly reaped

3    the benefits from the underpayment of their wages and noncompliance

4    with other statutory provisions governing their employment.

5    18.    Plaintiff is informed and believes, and further alleges, that at all relevant times

6    there has existed a unity of interest and ownership between Defendants such that any

7    individuality and separateness between the entities has ceased.

8    19.    THE CHEFS' WAREHOUSE WEST COAST, LLC; THE CHEFS'

9    WAREHOUSE, INC.; DEL MONTE CAPITOL MEAT COMPANY, LLC; QZINA

10   SPECIALTY FOODS, INC.; QZINA SPECIALTY FOODS (AMBASSADOR), INC.; and

11   DOES 1-10 are therefore alter egos of each other.

12   20.    Adherence to the fiction of the separate existence of Defendants would permit an

13   abuse of the corporate privilege, and would promote injustice by protecting Defendants from

14   liability for the wrongful acts committed by them under the name THE CHEFS'

15   WAREHOUSE.

16   21.    Plaintiff further alleges, upon information and belief, that Defendants are alter

17   egos of each other for the additional following reasons:

18          (a)    On information and belief, Christopher Pappas serves as the Chief

19                 Executive Officer of THE CHEFS' WAREHOUSE WEST COAST,

20                 LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE CAPITOL

21                 MEAT COMPANY, LLC; QZINA SPECIALTY FOODS, INC.; and

22                 QZINA SPECIALTY FOODS (AMBASSADOR), INC.;

23          (b)    On information and belief, James Leddy serves as the Chief Financial

24                 Officer of THE CHEFS' WAREHOUSE WEST COAST, LLC; THE

25                 CHEFS' WAREHOUSE, INC.; DEL MONTE CAPITOL MEAT

26                 COMPANY, LLC; QZINA SPECIALTY FOODS, INC.; and QZINA

27                 SPECIALTY FOODS (AMBASSADOR), INC.;

28          (c)    On information and belief, Alexandros Aldous serves as the Secretary and

1           Chief Financial Officer of THE CHEFS' WAREHOUSE, INC.; QZINA

2           SPECIALTY FOODS, INC.; and QZINA SPECIALTY FOODS

3           (AMBASSADOR), INC.;

4     (d)  On information and belief, THE CHEFS' WAREHOUSE WEST

5           COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE

6           CAPITOL MEAT COMPANY, LLC; QZINA SPECIALTY FOODS,

7           INC.; and QZINA SPECIALTY FOODS (AMBASSADOR), INC. share

8           the same mailing address and entity address of 100 E Ridge Road,

9           Ridgefield, Connecticut 06877, and THE CHEFS' WAREHOUSE WEST

10         COAST, LLC; THE CHEFS' WAREHOUSE, INC.; and DEL MONTE

11         CAPITOL MEAT COMPANY, LLC have registered this location as their

12         entity and mailing address with the California Secretary of State;

13     (e)  On information and belief, THE CHEFS' WAREHOUSE WEST

14         COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE

15         CAPITOL MEAT COMPANY, LLC; QZINA SPECIALTY FOODS,

16         INC.; and QZINA SPECIALTY FOODS (AMBASSADOR), INC. share

17         the same agent for service of process, CORPORATION SERVICE

18         COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC

19         - LAWYERS INCORPORATING SERVICE;

20     (f)  On information and belief, THE CHEFS' WAREHOUSE WEST

21         COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE

22         CAPITOL MEAT COMPANY, LLC; QZINA SPECIALTY FOODS,

23         INC.; and QZINA SPECIALTY FOODS (AMBASSADOR), INC. utilize

24         the same career website

25         (https://recruiting.adp.com/srccar/public/RTI.home?c=1124341&d=Exte

26         rnalCareerSite) to attract prospective employees, procure employment

27         information from prospective employees, and process employment

28         applications; and

1      (g)    On information and belief, THE CHEFS' WAREHOUSE WEST

2             COAST, LLC; THE CHEFS' WAREHOUSE, INC.; DEL MONTE

3             CAPITOL MEAT COMPANY, LLC; QZINA SPECIALTY FOODS,

4             INC.; and QZINA SPECIALTY FOODS (AMBASSADOR), INC. utilize

5             the same standardized employment forms and issue the same

6             employment policies.

7                       **GENERAL ALLEGATIONS**

8      22.    Defendants are a specialty food distributor delivering ingredients to restaurants

9 and other food preparation vendors in 26 states, including California.  In California, Defendants

10 operates approximately nine (9) warehouse/distribution center locations associated with the

11 following brands and subsidiaries: Chefs' Warehouse, Del Monte Meat Company, Qzina, and

12 Ports Seafood.  Upon information and belief, Defendants maintain a single, centralized Human

13 Resources ("HR") department at their corporate headquarters in Ridgefield, Connecticut, which

14 is responsible for recruiting and hiring of new employees, and communicating and

15 implementing Defendants' company-wide policies, including timekeeping policies and meal and

16 rest break policies, to employees throughout California.

17      23.    In particular, Plaintiff and class members, on information and belief, received the

18 same standardized documents and/or written policies.  Upon information and belief, the usage of

19 standardized documents and/or written policies, including new-hire documents, indicate that

20 Defendants dictated policies at the corporate level and implemented them company-wide,

21 regardless of their employees' assigned locations or positions.  Upon information and belief,

22 Defendants set forth uniform policies and procedures in several documents provided at an

23 employee's time of hire.

24      24.    Upon information and belief, Defendants maintain a centralized Payroll

25 department at their corporate headquarters in Ridgefield, Connecticut which processes payroll

26 for all non-exempt, hourly paid employees working for Defendants at their various locations and

27 jobsites in California, including Plaintiff and class members.  Based upon information and

28 belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid

1  employees in California, irrespective of their work locations.  Upon information and belief,

2  Defendants process payroll for departing employees in the same manner throughout the State of

3  California, regardless of the manner in which each employee's employment ends.

4      25.     Defendants continue to employ non-exempt or hourly paid employees in

5  California.

6      26.     Plaintiff is informed and believes, and thereon alleges, that at all times herein

7  mentioned, Defendants were advised by skilled lawyers and other professionals, employees and

8  advisors knowledgeable about California labor and wage law, employment and personnel

9  practices, and about the requirements of California law.

10     27.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class

11  members were not paid for all hours worked because all hours worked were not recorded.

12  Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have

13  known that Plaintiff and class members were entitled to receive certain wages for overtime

14  compensation and that they were not receiving certain wages for overtime compensation.

15     28.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

16  should have known that Plaintiff and class members were entitled to receive at least minimum

17  wages for compensation and that they were not receiving at least minimum wages for work that

18  was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and

19  class members were not paid at least minimum wages for work done off-the-clock.

20     29.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

21  should have known that Plaintiff and class members were entitled to meal periods in accordance

22  with the Labor Code or payment of one (1) additional hour of pay at their regular rates of pay

23  when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and

24  that Plaintiff and class members were not provided with all meal periods or payment of one (1)

25  additional hour of pay at their regular rates of pay when they did not receive a timely,

26  uninterrupted, thirty (30) minute meal period.

27     30.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

28  should have known that Plaintiff and class members were entitled to rest periods in accordance

with the Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

31.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

32.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

33.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members who are former employees were entitled to receive all vested vacation pay with their final wages in accordance with California law. In violation of the California Labor Code, Plaintiff and class members who are former employees were not provided all vested vacation pay with their final wages.

34.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members who are former employees were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members who are former employees did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and all vested vacation pay within permissible time periods.

35.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages

1    during their employment.  In violation of the California Labor Code, Plaintiff and class

2    members did not receive payment of all wages, including, but not limited to, overtime wages,

3    minimum wages, and meal and rest period premiums within permissible time periods.

4         36.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

5    should have known that Plaintiff and class members were entitled to receive reimbursement for

6    all business-related expenses and costs they incurred during the course and scope of their

7    employment and that they did not receive reimbursement of applicable business-related

8    expenses and costs incurred.

9         37.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

10   mentioned, Defendants knew or should have known that Defendants had a duty to provide

11   Plaintiff and class members with written notice of the material terms of their employment with

12   Defendants as required by the California Wage Theft Prevention Act, but willfully, knowingly,

13   and intentionally failed to do so.

14        38.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

15   mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff

16   and class members for all hours worked, and that Defendants had the financial ability to pay

17   such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely

18   represented to Plaintiff and class members that they were properly denied wages, all in order to

19   increase Defendants' profits.

20                    **PAGA REPRESENTATIVE ALLEGATIONS**

21        39.    At all times herein set forth, PAGA provides that any provision of law under the

22   Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and

23   collected by the LWDA for violations of the California Labor Code and applicable IWC Wage

24   Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on

25   behalf of themselves and other current or former employees pursuant to procedures outlined in

26   California Labor Code section 2699.3.

27        40.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any

28   person who was employed by the alleged violator and against whom one or more of the alleged

1  violations was committed."

2      41.    Plaintiff and other current and former employees of Defendants are "aggrieved

3  employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or

4  former employees and one or more of the alleged violations were committed against them.

5      42.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

6  employee, including Plaintiff, may pursue a civil action arising under PAGA after the following

7  requirements have been met:

8          (a)    The aggrieved employee shall give written notice by online filing

9                 (hereinafter "Employee's Notice") to the LWDA and by certified mail to

10                 the employer of the specific provisions of the California Labor Code

11                 alleged to have been violated, including the facts and theories to support

12                 the alleged violations.

13         (b)    An aggrieved employee's notice filed with the LWDA pursuant to

14                 2699.3(a) and any employer response to that notice shall be accompanied

15                 by a filing fee of seventy-five dollars ($75).

16         (c)    The LWDA shall provide notice (hereinafter "LWDA Notice") to the

17                 employer and the aggrieved employee by certified mail that it does not

18                 intend to investigate the alleged violation within sixty (60) calendar days

19                 of the postmark date of the Employee's Notice.  Upon receipt of the

20                 LWDA Notice, or if the LWDA Notice is not provided within sixty-five

21                 (65) calendar days of the postmark date of the Employee's Notice, the

22                 aggrieved employee may commence a civil action pursuant to California

23                 Labor Code section 2699 to recover civil penalties in addition to any

24                 other penalties to which the employee may be entitled.

25      43.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees,

26  through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision

27  other than those listed in Section 2699.5 after the following requirements have been met:

28         (a)    The aggrieved employee or representative shall give written notice by

1    online filing to the LWDA and by certified mail to the employer of the

2    specific provisions of the California Labor Code alleged to have been

3    violated (other than those listed in Section 2699.5), including the facts

4    and theories to support the alleged violation.

5    (b)    An aggrieved employee's notice filed with the LWDA pursuant to

6    2699.3(c) and any employer response to that notice shall be accompanied

7    by a filing fee of seventy-five dollars ($75).

8    (c)    The employer may cure the alleged violation within thirty-three (33)

9    calendar days of the postmark date of the notice.  The employer shall give

10    written notice by certified mail within that period of time to the aggrieved

11    employee or representative and the agency if the alleged violation is

12    cured, including a description of actions taken, and no civil action

13    pursuant to Section 2699 may commence.  If the alleged violation is not

14    cured within the 33-day period, the employee may commence a civil

15    action pursuant to Section 2699.

16    44.    On May 15, 2019, Plaintiff provided written notice by online filing to the LWDA

17 and by certified mail to Defendants of the specific provisions of the California Labor Code

18 alleged to have been violated, including facts and theories to support the alleged violations, in

19 accordance with California Labor Code section 2699.3.  Plaintiff's written notice was

20 accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA

21 Administrator has confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA

22 Case Number LWDA-CM-694527-19.  A true and correct copy of Plaintiff's written notice to

23 the LWDA and Defendants dated May 15, 2019, is attached hereto as "Exhibit 1."

24    45.    As of the filing date of this complaint, over 65 days have passed since Plaintiff

25 sent the initial LWDA Notice described above, and the LWDA has not responded that it intends

26 to investigate Plaintiff's claims, and Defendants have not cured the violations.

27    46.    Thus, Plaintiff has satisfied the administrative prerequisites under California

28 Labor Code sections 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for

1 | violations of California Labor Code sections 201, 202, 203, 204, 222.5, 227.3, 226(a), 226.7,

2 | 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

3 |        47.    Labor Code section 558 (a) provides "[a]ny employer or other person acting on

4 | behalf of an employer who violates, or causes to be violated, a section of this chapter or any

5 | provision regulating hours and days of work in any order of the Industrial Welfare Commission

6 | shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for

7 | each underpaid employee for each pay period for which the employee was underpaid in addition

8 | to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one

9 | hundred dollars ($100) for each underpaid employee for each pay period for which the

10 | employee was underpaid in addition to an amount sufficient to recover underpaid wages."

11 | Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in

12 | addition to any other civil or criminal penalty provided by law."

13 |        48.    Defendants, at all times relevant to this complaint, were employers or persons

14 | acting on behalf of an employer(s) who violated Plaintiff's and class members' rights by

15 | violating various sections of the California Labor Code as set forth above.

16 |        49.    As set forth below, Defendants have violated numerous provisions of both the

17 | Labor Code sections regulating hours and days of work as well as the applicable IWC Wage

18 | Order.

19 |        50.    Pursuant to PAGA, and in particular, California Labor Code sections 2699(a),

20 | 2699.3(a), 2699.3(c), and 2699.5, Plaintiff, acting in the public interest as a private attorney

21 | general, seeks assessment and collection of civil penalties for himself, all other aggrieved

22 | employees, and the State of California against Defendants for violations of California Labor

23 | Code sections 201, 202, 203, 204, 222.5, 227.3, 226(a), 226.7, 510, 512(a), 1174(d), 1182.12,

24 | 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

25 | **CLASS ACTION ALLEGATIONS**

26 |        51.    Plaintiff brings this action on his own behalf, as well as on behalf of each and

27 | all other persons similarly situated, and thus seeks class certification under California Code of

28 | Civil Procedure section 382.

1    52.    All claims alleged herein arise under California law for which Plaintiff seeks

2    relief authorized by California law.

3    53.    Plaintiff's proposed classes consist of and are defined as follows:

4            All persons who are or were employed by Defendants as
             nonexempt, hourly paid employees in California (excluding
5            Drivers and Driver Trainers) within four years prior to the filing
             of this complaint until the date of trial ("Class").
6
     54.    Plaintiff's proposed subclass consists of and is defined as follows:
7            All persons who worked for Defendants as non-exempt, hourly
             paid employees in California and who received at least one wage
8            statement within one year prior to the filing of the initial
             complaint until the date of trial ("Subclass").
9
     55.    Members of the Class and Subclass are referred to herein as "class members."
10
     56.    Plaintiff reserves the right to redefine the Class and Subclass and to add
11
     additional subclasses as appropriate based on further investigation, discovery, and specific
12
     theories of liability.
13
     57.    There are common questions of law and fact as to class members that
14
     predominate over questions affecting only individual members, including, but not limited to:
15
             (d)    Whether Defendants required Plaintiff and class members to work over
16
                    eight (8) hours per day, over twelve (12) hours per day, or over forty
17
                    (40) hours per week and failed to pay all legally required overtime
18
                    compensation to Plaintiff and class members;
19
             (e)    Whether Defendants failed to pay Plaintiff and class members at least
20
                    minimum wages for all hours worked;
21
             (f)    Whether Defendants failed to provide Plaintiff and class members with
22
                    meal periods;
23
             (g)    Whether Defendants failed to authorize and permit Plaintiff and class
24
                    members to take rest periods;
25
             (h)    Whether Defendants failed to pay Plaintiff and class members all vested
26
                    vacation time as wages at their final rate in accordance with the terms
27
                    and conditions of Defendants' employment contract and/or policy;
28

(i)    Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(j)    Whether Defendants failed to pay earned overtime wages, minimum wages, meal and rest period premiums, and all vested vacation time due to Plaintiff and class members upon their discharge;

(k)    Whether Defendants failed timely to pay overtime wages, minimum wages, and meal and rest period premiums to Plaintiff and class members during their employment;

(l)    Whether Defendants failed to pay Plaintiff and class members for the costs of mandatory physical examinations and/or drug testing;

(m)    Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(n)    Whether Defendants failed to provide written notice of information material to Plaintiff's and class members' employment with Defendants;

(o)    Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(p)    The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

58.    There is a well-defined community of interest in the litigation and the class members are readily ascertainable:

(q)    Numerosity:  The class members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of

1    Defendants' employment records.

2    (r)    Typicality:  Plaintiff is qualified to, and will, fairly and adequately

3    protect the interests of each class member with whom he has a well-

4    defined community of interest, and Plaintiff's claims (or defenses, if

5    any) are typical of all class members as demonstrated herein.

6    (s)    Adequacy:  Plaintiff is qualified to, and will, fairly and adequately

7    protect the interests of each class member with whom he has a well-

8    defined community of interest and typicality of claims, as demonstrated

9    herein.  Plaintiff acknowledges that he has an obligation to make known

10   to the Court any relationship, conflicts or differences with any class

11   member.  Plaintiff's attorneys, the proposed class counsel, are versed in

12   the rules governing class action discovery, certification, and settlement.

13   Plaintiff has incurred, and throughout the duration of this action, will

14   continue to incur costs and attorneys' fees that have been, are, and will

15   be necessarily expended for the prosecution of this action for the

16   substantial benefit of each class member.

17   (t)    Superiority:  The nature of this action makes the use of class action

18   adjudication superior to other methods.  A class action will achieve

19   economies of time, effort, and expense as compared with separate

20   lawsuits, and will avoid inconsistent outcomes because the same issues

21   can be adjudicated in the same manner and at the same time for the

22   entire class.

23   (u)    Public Policy Considerations:  Employers in the State of California

24   violate employment and labor laws every day.  Current employees are

25   often afraid to assert their rights out of fear of direct or indirect

26   retaliation.  Former employees are fearful of bringing actions because

27   they believe their former employers might damage their future

28   endeavors through negative references and/or other means.  Class

1    actions provide the class members who are not named in the complaint

2    with a type of anonymity that allows for the vindication of their rights

3    while simultaneously protecting their privacy.

4                              **FIRST CAUSE OF ACTION**

5    **Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

6                              **(Against all Defendants)**

7        59.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each

8    and every allegation set forth above.

9        60.     Labor Code section 1198 makes it illegal to employ an employee under

10   conditions of labor that are prohibited by the applicable wage order.  California Labor Code

11   section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall

12   be the . . . standard conditions of labor for employees.  The employment of any employee . . .

13   under conditions of labor prohibited by the order is unlawful."

14       61.     California Labor Code section 1198 and the applicable IWC Wage Order

15   provide that it is unlawful to employ persons without compensating them at a rate of pay

16   either time-and-one-half or two-times that person's regular rate of pay, depending on the

17   number of hours worked by the person on a daily or weekly basis.

18       62.     Specifically, the applicable IWC Wage Order provides that Defendants are and

19   were required to pay Plaintiff and class members working more than eight (8) hours in a day

20   or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all

21   hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a

22   workweek.

23       63.     The applicable IWC Wage Order further provides that Defendants are and were

24   required to pay Plaintiff and class members working more than twelve (12) hours in a day,

25   overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's

26   regular rate of pay includes all remuneration for employment paid to, or on behalf of, the

27   employee, including non-discretionary bonuses and incentive pay.

28       64.     California Labor Code section 510 codifies the right to overtime compensation

at one and one-half times (1½) the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

65.     During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

66.     First, Defendants had, and continue to have, a company-wide policy of understaffing their locations, including warehouses/distribution centers, resulting in a failure to provide Plaintiff and class members with adequate meal period coverage, because there were too few employees on duty to handle the workload and attend to the demands of supervisors and customers in the retail area.  As a result of this lack of meal period coverage, Plaintiff and class members had their meal periods interrupted and cut short by work to meet supervisor and customer demands.  For example, once or twice a week, Plaintiff would work between 5-8 minutes answering questions from a supervisor or helping a customer, while clocked out for his meal period.  Other employees also had their meal periods interrupted to attend to customers and respond to supervisor requests.  To the extent these hours worked qualified for overtime, Defendants did not pay Plaintiff and class members for the time they continued to perform tasks during their meal periods.

67.     Second, Defendants have, and continue to have, a company-wide policy and/or practice of discouraging accrual of overtime hours by employees.  Because Defendants discouraged overtime accrual by, among other things, requiring employees to obtain pre-approval of overtime hours from Defendants' supervisors, Plaintiff and class members would be required to complete assigned tasks outside of their scheduled shifts without being compensated for their work.  For example, two or three days a week, Plaintiff would clock out at the end of

1   his shift and then spend 5-10 minutes walking over to the racks and verifying all outgoing

2   packages were picked up. At all times, Plaintiff and class members remained under Defendants'

3   control. This off-the-clock work could have been recorded by Defendants, but they refused to

4   do so to avoid payment of additional wages to Plaintiff and class members.

5        68.    Third, Defendants also had a company-wide practice and/or policy of requiring

6   all employees, including Plaintiff and class members, to carry radios so that other employees

7   and management could communicate with them as needed. Defendants knew or should have

8   known that employees were being made to communicate with each other and/or supervisors

9   while clocked out for meal periods to meet Defendants' expectations, but failed to compensate

10   them for this off-the-clock work.

11        69.    Defendants knew or should have known that, as a result of these company-wide

12   practices and/or policies, Plaintiff and class members were performing assigned duties during

13   their meal periods and before and after their scheduled shifts, and thereby performing work for

14   which they were not paid. Defendants further knew or should have known that they did not

15   compensate Plaintiff and class members at applicable overtime rates of pay for overtime hours

16   that they worked. Because Plaintiff and class members sometimes worked shifts of eight (8)

17   hours a day or more or forty (40) hours a week or more, some of this off-the-clock work

18   qualified for overtime premium pay. Therefore, Plaintiff and class members were not paid

19   overtime wages for all of the overtime hours they actually worked.

20        70.    Defendants' failure to pay Plaintiff and class members the balance of overtime

21   compensation, as required by California law, violates the provisions of California Labor Code

22   sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiff and class

23   members are entitled to recover their unpaid overtime compensation, as well as interest, costs,

24   and attorneys' fees.

25   **SECOND CAUSE OF ACTION**

26   **Violation of Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid Minimum**

27   **Wages**

28   **(Against All Defendants)**

71.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

72.     At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

73.     As set forth above, due to Defendants' uniform policy and/or practice of understaffing and resultant lack of meal period coverage, Plaintiff and class members were impeded from taking all uninterrupted meal periods to which they were entitled and resulted in them working off-the-clock.  Additionally, Defendants required Plaintiff and class members to carry radios during meal periods, but did not pay employees for the time they spent responding calls on their radios and continuing to perform work-related tasks while clocked out.  Moreover, as stated above, Defendants systematically failed to pay Plaintiff and class members for actual hours worked during their meal periods and after scheduled shifts because Defendants discouraged employees from accruing overtime hours; thus, these hours were not always correctly recorded.

74.     Moreover, during the relevant time period, Defendants maintained and implemented a company-wide policy of requiring all employees to undergo mandatory drug testing and/or physical examinations.  At all times, Defendants were in control of scheduling the date and time for the testing and/or examinations, selecting where the testing and/or examinations were to take place, and determining the scope of the testing and/or examinations.  Defendants gave Plaintiff and class members strict instructions to obtain drug testing and/or physical examinations, and Plaintiff and class members underwent the examinations and testing for the sole benefit of Defendants.  For example, Plaintiff spent approximately one (1) hour and 35 minutes traveling to and from the Defendants' designated

1    medical facility and undergoing mandatory drug testing.  However, Defendants did not

2    compensate Plaintiff and class members for the time they spent undergoing the drug testing

3    and/or physical examinations.

4        75.    Thus, Defendants did not pay at least minimum wages for off-the-clock hours

5    that qualified for overtime premium payment.  Also, to the extent that these off-the-clock

6    hours did not qualify for overtime premium payment, Defendants did not pay at least

7    minimum wages for those hours worked off-the-clock in violation of California Labor Code

8    sections 1182.12, 1194, 1197, 1197.1, and 1198.

9        76.    Defendants' failure to pay Plaintiff and class members minimum wages violates

10   California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to

11   California Labor Code section 1194.2, Plaintiff and class members are therefore entitled to

12   recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest

13   thereon.

14                          **THIRD CAUSE OF ACTION**

15   **Violation of Labor Code §§ 226.7, 512(a), and 1198—Meal Period Violations**

16                          **(Against all Defendants)**

17       77.    At all relevant times herein set forth, the applicable IWC Wage Order(s) and

18   California Labor Code sections 226.7, 512(a), and 1198 were applicable to Plaintiff's and

19   Class members' employment by Defendants.

20       78.    At all relevant times herein set forth, California Labor Code section 512(a)

21   provides that an employer may not require, cause, or permit an employee to work for a period

22   of more than five (5) hours per day without providing the employee with a meal period of not

23   less than thirty (30) minutes, except that if the total work period per day of the employee is

24   not more than six (6) hours, the meal period may be waived by mutual consent of both the

25   employer and the employee.  Under California law, first meal periods must start after no more

26   than five hours.  *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal.

27   2012).

28       79.    At all relevant times herein set forth, California Labor Code section 226.7 and

512(a) provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

80.     At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

81.     First, as stated, Defendants have, and continue to have, a company-wide policy and/or practice of understaffing their locations, including warehouse and distribution centers, which resulted in a lack of meal break coverage and impeded Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled.  Plaintiff and class members had their meal periods cut short or interrupted to return to work and/or waited extended periods of time before taking meal periods in order to address customer demand in the retail area or respond to supervisors' questions.

82.     Second, as stated, Defendants had a company-wide policy and/or practice of requiring that Plaintiff and class members carry radios on their persons so that other employees and management could communicate with them.  As a result of Defendants' policy and/or practice that employees carry and respond to radios at all times, some employees were compelled to perform work-related duties during their unpaid meal periods.

83.     In addition, Defendants did not schedule second meal periods and had no policy for permitting Plaintiff and class members to take second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  Plaintiff and class members did not receive second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  For example, when Plaintiff worked in excess of ten (10) hours in a day, Defendants did not schedule him to take a second meal period and did not provide him with the opportunity to take a second meal period.  Instead, Plaintiff continued to work until he clocked out for the day.  Plaintiff and class members did not sign valid meal break waivers on days that they were

1    entitled to meal periods and were not relieved of all duties.

2        84.    Furthermore, Defendants had a company-wide policy of requiring all newly-

3    hired employees to sign blanket Meal Period Waivers at or near their time of hire.  Defendants

4    took the position that non-exempt, hourly paid employees had waived their rights to first and

5    second meal periods for the entirety of their employment and on that basis did not provide

6    them with all meal periods to which they were entitled.  Specifically, Defendants' "First Meal

7    Period Waiver" and "Second Meal Period Waiver" forms provide that the waivers remain in

8    effect until the employee provides his or her revocation in writing: "I also understand that I

9    may revoke this waiver at any time by providing **at least one day's advance written notice to**

10   **my supervisor**.  This waiver will remain in effect until I revoke it."  (Emphasis added)

11       85.    Defendants' company-wide use of blanket meal waivers signed at or near the

12   time of hire and imposition of the burden on employees to revoke the waivers *in writing* on a

13   specific workday, discouraged and impeded Plaintiff and class members from taking all meal

14   periods to which they were entitled.  And, Defendants' presumption that second meal periods

15   would not be provided for shifts in excess of ten (10) hours but less than twelve (12) hours

16   due to blanket second meal period waivers discouraged and prevented Plaintiff and class

17   members from taking second meal periods.

18       86.    What's more, an employer's obligation to provide a meal break is only

19   "triggered" when the employer "employs an employee for a work period of more than five

20   hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits

21   anyone to work for a full five hours, its meal break obligation is triggered.").  "[A]fter the

22   meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-

23   duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end

24   the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit.

25   Failure to do one of these will render the employer liable for premium pay."  *Id.* (citing Cal.

26   Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).

27       87.    Further, under Labor Code section 512(a) and the applicable IWC Wage Order,

28   employees may waive their second meal breaks only if they took their first meal break.  That

Defendants require Plaintiff and class members to sign Meal Period Waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because Defendants' obligation to provide Plaintiff and class members with meal breaks did not arise until they had employed them for a full five (5) hours. In addition, Defendants' "Second Meal Period Waiver" form is facially invalid in that it fails to state and inform Plaintiff and class members that an employee may waive their second meal period only if their first meal period was provided (and taken). Thus, Plaintiff and class members did not sign valid meal break waivers on days that they were entitled to meal periods but were not relieved of all duties.

88.     Defendants knew or should have known that as a result of its policies, Plaintiff and class members were not actually relieved of all duties to take timely, uninterrupted meal periods. Defendants further knew or should have known that they did not pay Plaintiff and class members meal period premium wages when meal periods were missed, late, short, and/or interrupted. As a result, Plaintiff and class members had to work through part or all of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods.

89.     Moreover, Defendants engaged in a systematic, company-wide practice and/or policy of not paying meal period premiums owed when compliant meal periods were not provided. As a result, Defendants failed to provide Plaintiff and class members compliant meal periods and failed to pay the full meal period premiums due.

90.     Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198. Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

### FOURTH CAUSE OF ACTION

### Violation of Labor Code §§ 226.7 and 1198—Rest Break Violations

### (Against all Defendants)

91.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each

1    and every allegation set forth above.

2         92.     At all relevant times herein set forth, the applicable IWC Wage Order and

3    California Labor Code sections 226.7 and 1198 were applicable to Plaintiff's and Class

4    members' employment by Defendants.

5         93.     At all relevant times, the applicable IWC Wage Order provides that "[e]very

6    employer shall authorize and permit all employees to take rest periods, which insofar as

7    practicable shall be in the middle of each work period" and that the "rest period time shall be

8    based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4)

9    hours or major fraction thereof" unless the total daily work time is less than three and one-half

10    (3½) hours.

11         94.     At all relevant times, California Labor Code section 226.7 provides that no

12    employer shall require an employee to work during any rest period mandated by an applicable

13    order of the California IWC.  To comply with its obligation to provide rest periods under

14    California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must

15    "relinquish any control over how employees spend their break time, and relieve their

16    employees of all duties — including the obligation that an employee remain on call.  A rest

17    period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2

18    Cal. 5th 257, 269-270 (2016).

19         95.     Pursuant to the applicable IWC Wage Order and California Labor Code

20    section 226.7(b), Plaintiff and class members are entitled to recover from Defendants one (1)

21    additional hour of pay at their regular rates of pay for each work day that a required rest

22    period was not provided.

23         96.     As with meal periods, Defendants' company-wide policy and practice of

24    understaffing prevented Plaintiff and class members from being relieved of all duty to take

25    compliant rest periods.  Moreover, its policy and/or practice of requiring Plaintiff and class

26    members to carry radios and respond to radio calls also prevented employees from being

27    relieved of all duty to take compliant rest periods.  Furthermore, Defendants had no policy of

28    scheduling rest periods for employees, which further impeded Plaintiff and class members from

1    taking compliant rest periods.  As a result, Plaintiff and class members worked shifts in excess

2    of 3.5 hours, in excess of six (6) hours, and/or in excess of ten (10) hours without receiving all

3    uninterrupted ten (10) minute rest periods to which they were entitled.  For example, Plaintiff

4    never received a third rest break when working shifts over eight (8) hours.

5          97.    Additionally, Defendants maintained and implemented a company-wide practice

6    and/or policy requiring that Plaintiff and class members remain on premises during their rest

7    breaks.  Because Plaintiff and class members were restricted from leaving the premises during

8    rest periods, they were denied the ability to use their rest periods freely for their own purposes.

9    Thus, Defendants effectively maintained control over Plaintiff and class members during rest

10   periods, and, as a result of this rest period policy, Defendants did not relinquish control over

11   Plaintiff and class members during rest periods.

12         98.    Defendants have also engaged in a company-wide practice and/or policy to not

13   pay rest periods premiums owed when compliant rest periods are not provided.  As a result,

14   Plaintiff and class members were denied rest periods and Defendants failed to pay Plaintiff

15   and class members the full rest period premiums due, in violation of Labor Code section 226.7

16   and the applicable IWC Wage Order.

17         99.    Defendants' conduct violates the applicable IWC Wage Order and California

18   Labor Code sections 226.7 and 1198.  Plaintiff and class members are therefore entitled to

19   recover from Defendants one (1) additional hour of pay at the employee's regular rate of

20   compensation for each work day that the rest period was not provided.

21                            **FIFTH CAUSE OF ACTION**

22         **Violation of Labor Code § 227.3—Failure to Pay Vacation Wages**

23                              **(Against all Defendants)**

24         100.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

25   and every allegation set forth above.

26         101.   At all relevant times herein, California Labor Code section 227.3 provides that

27   whenever a contract of employment or employer policy provides for paid vacations, and an

28   employee is terminated without having taken his or her vested vacation time, all vested

1  vacation shall be paid to him or her as wages at his or her final rate in accordance with such

2  contract of employment or employer policy respecting eligibility or time served.

3      102.    During the relevant time period, Defendants had a uniform, company-wide

4  policy and/or practice of failing to immediately pay employees vested vacation wages that

5  were owed to them at the end of their employment, including all vested vacation wages that

6  accrued during employees' final week of employment.  Rather, improperly Defendants only

7  paid Plaintiff and other class members their unused and vested vacation wages through their

8  second to last pay period worked.  Specifically, Plaintiff accrued 15.93 hours of vested

9  vacation pay at the time his employment with Defendants ended.  However, Defendants only

10  paid out 14 hours, which was Plaintiff's accrued and unused vacation wages that had vested as

11  of the prior week's pay period.

12  Defendants' uniform policy of failing to pay Plaintiff and class members all vested vacation

13  wages at the end of their employment caused a forfeiture of vested vacation wages in violation

14  of California Labor Code section 227.3.  Accordingly, Plaintiff and class members who are

15  former employees of Defendant are entitled to all unpaid vested vacation wages owed.

16                          **SIXTH CAUSE OF ACTION**

17  **Violation of Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements**

18                  **and Failure to Maintain Accurate Payroll Records**

19                          **(Against all Defendants)**

20      103.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

21  and every allegation set forth above.

22      104.    At all relevant times herein, California Labor Code section 226(a) provides that

23  every employer shall furnish each of his or her employees an accurate and complete itemized

24  wage statement in writing, including, but not limited to, the name and address of the legal

25  entity that is the employer, the inclusive dates of the pay period, the total hours worked, and

26  all applicable rates of pay.

27      105.    During the relevant time period, Defendants have knowingly and intentionally

28  provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage

statements.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).  Because Defendants did not record the time Plaintiff and Subclass members spent working off-the-clock, Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and 226(a)(5), respectively.  For the same reason, Defendants failed to accurately list the total number of the hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).  Defendants also knowingly and intentionally provided Plaintiff and Subclass members who are former employees with final wage statements that failed to accurately list the amount of vested vacation wages that were owed.

106.    The wage statement deficiencies also include, among other things: failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the correct name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

107.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  During the relevant time period, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a

1    result of failing to record the off-the-clock hours that they worked.

2         108.    California Labor Code section 1198 provides that the maximum hours of work

3    and the standard conditions of labor shall be those fixed by the Labor Commissioner and as

4    set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he

5    employment of any employees for longer hours than those fixed by the order or under

6    conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC

7    Wage Order, employers are required to keep accurate time records showing when the

8    employee begins and ends each work period and meal period.  During the relevant time

9    period, Defendants failed, on a company-wide basis, to keep accurate records of meal period

10   start and stop times for Plaintiff and Subclass members, in violation of section 1198.  Also, in

11   light of Defendants' failure to provide Plaintiff and Subclass members with second 30-minute

12   meal periods to which they were entitled, Defendants kept no records of meal start and end

13   times for second meal periods.

14        109.    Because Defendants' violations of 226(a) and 1174(d) were committed against

15   Plaintiff and Subclass members, Plaintiff and Subclass members are entitled to recover from

16   Defendants the greater of their actual damages caused by Defendants' failure to comply with

17   California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand

18   dollars ($4,000) per employee.

19                          **SEVENTH CAUSE OF ACTION**

20   **Violation of Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination**

21                              **(Against all Defendants)**

22        110.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide

23   that if an employer discharges an employee, the wages earned and unpaid at the time of

24   discharge are due and payable immediately, and that if an employee voluntarily leaves his or

25   her employment, his or her wages shall become due and payable not later than seventy-two

26   (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of

27   his or her intention to quit, in which case the employee is entitled to his or her wages at the

28   time of quitting.

111.    Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants all their earned wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ in violation of California Labor Code sections 201, 202, and 203.

112.    Defendants' failure to pay Plaintiff and those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

## EIGHTH CAUSE OF ACTION

### Violation of Labor Code § 2802—Unpaid Business-Related Expenses

### (Against all Defendants)

113.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

114.    At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

115.    First, during the relevant time period, as stated, Defendants had a company-wide

1  policy of requiring Plaintiff and class members to travel in their own personal vehicles to

2  medical clinics to undergo mandatory drug testing and/or physical examinations, but did not

3  reimburse them for their travel expenses, including mileage.  For example, Plaintiff drove for

4  approximately 30 minutes roundtrip to obtain a mandatory drug test and/or physical

5  examination per Defendants' instructions, but was not reimbursed for his mileage to and from

6  the medical clinic.

7       116.   Second, during the relevant time period, Defendants, on a company-wide basis,

8  required that Plaintiff and class members utilize their own personal cellular phones and/or

9  cellular phone data to carry out their job duties, but failed to reimburse them for the costs of

10  their cellular phone and/or data plans.  For example, Plaintiff was required to use his personal

11  cellular phone to perform his work, such as calling FedEx and UPS to discuss order pick-ups

12  and deliveries.  Although Defendants required Plaintiff and class members to regularly utilize

13  his personal cellular phone to carry out work-related responsibilities, Defendants failed to

14  reimburse him for this cost.

15       117.   Defendants could have provided Plaintiff and class members with the actual

16  tools required for use on the job, including company phones and company vehicles to be used

17  for fulfilling work-related tasks, or reimbursed employees for their cellular phone usage,

18  travel, and mileage, but instead, Defendants passed these operating costs off onto Plaintiff and

19  Class members.  Thus, Defendants had, and continue to have, a company-wide policy and/or

20  practice of not reimbursing employees for expenses necessarily incurred.

21       118.   Defendants' company-wide policy and/or practice of passing their operating

22  costs on to Plaintiff and class members is in violation of California Labor Code section 2802.

23  Defendants have intentionally and willfully failed to fully reimburse Plaintiff and class

24  members for necessary business-related expenses and costs.

25       119.   Plaintiff and class members are therefore entitled to recover from Defendants

26  their business-related expenses incurred during the course and scope of their employment,

27  plus interest.

28  **NINTH CAUSE OF ACTION**

1    **For Civil Penalties Pursuant to California Labor Code §§ 2698,** *et seq.*

2    **(Against all Defendants)**

3        120.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

4    and every allegation set forth above.

5        121.   California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover

6    civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section

7    2699.5. Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 222.5, 226(a),

8    226.7, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802. Labor Code section

9    2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for

10   violations of those Labor Code sections not found in section 2699.5, including section 1182.12

11   and 2810.5.

12       122.   Defendants' conduct, as alleged herein, violates numerous sections of the

13   California Labor Code, including, but not limited to, the following:

14           (a)   Violation of Labor Code sections 510, 1198, and the applicable IWC

15                   wage order for Defendants' failure to compensate Plaintiff and other

16                   aggrieved employees with all required overtime pay, as alleged herein;

17           (b)   Violation of Labor Code sections 1182.12, 1194, 1197, 1198, and the

18                   applicable IWC wage order for Defendants' failure to compensate

19                   Plaintiff and other aggrieved employees with at least minimum wages for

20                   all hours worked as alleged herein;

21           (c)   Violation of Labor Code sections 226.7, 512, 1198, and the applicable

22                   IWC wage order for Defendants' failure to provide Plaintiff and other

23                   aggrieved employees with meal periods, as alleged herein;

24           (d)   Violation of Labor Code sections 226.7, 1198, and the applicable IWC

25                   wage order for Defendants' failure to authorize and permit Plaintiff and

26                   other aggrieved employees to take rest periods, as alleged herein;

27           (e)   Violation of Labor Code sections 226(a), 1198, and the applicable IWC

28                   wage order for failure to provide accurate and complete wage statements

to Plaintiff and other aggrieved employees, as alleged herein;

(f)    Violation of Labor Code sections 1174(d), 1198, and the applicable IWC wage order for failure to maintain payroll records, as alleged herein;

(g)    Violation of Labor Code section 204 for failure to pay all earned wages during employment, as set forth below;

(h)    Violation of Labor Code sections 201, 202, and 203 for failure to pay all earned wages upon termination, as alleged herein;

(i)    Violation of Labor Code section 222.5 for failing to pay the costs of mandatory drug tests and/or physical examinations, as set forth below;

(j)    Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred, as alleged herein; and

(k)    Failing to provide written notice of information material to Plaintiff's and other aggrieved employees' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

123.    At all relevant times herein set forth, California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed. Labor Code section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

124.    At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more

1 than seven (7) calendar days following the close of the payroll period.

2     125.   During the relevant time period, Defendants willfully failed to pay Plaintiff and
3 other aggrieved employees all wages due to them within any time period specified by California
4 Labor Code section 204 including, but not limited to, overtime wages, minimum wages, and
5 meal and rest period premium wages.

6     126.   At all times herein set forth, California Labor Code section 222.5 requires
7 employers to pay for the costs an employee incurs for obtaining any required medical or
8 physical examination.

9     127.   During the relevant time period, Defendants implemented, on a company-wide
10 basis, an employer-imposed requirement that Plaintiff and other aggrieved employees undergo
11 mandatory drug testing and/or physical examinations, but required them to do so at their own
12 expense. As stated, Defendants had a company-wide policy requiring that all employees,
13 including Plaintiff and other aggrieved employees, travel to a specified medical facility on their
14 own time and use their own means of transportation to undergo drug testing and/or physical
15 examinations. At all times, Defendants were in control of scheduling the date and time for the
16 drug testing and/or physical examinations, selecting the provider or facility where the drug
17 testing and/or physical examinations were to take place, and determining the scope of the drug
18 testing and/or physical examinations.

19     128.   For example, Plaintiff was instructed by Defendants to travel to a specific
20 medical facility two (2) miles from the warehouse/distribution center in City of Industry,
21 California, and obtain a drug test. Plaintiff followed Defendants' instructions, traveled
22 approximately 6 to 7 miles roundtrip, and underwent the required drug testing. Plaintiff spent
23 approximately one (1) hour and 35 minutes traveling to and from the clinic and undergoing the
24 required drug test. However, Defendants did not compensate Plaintiff for this time or reimburse
25 him for his travel expenses to and from the medical facility.

26     129.   Defendants did not compensate Plaintiff and other aggrieved employees for the
27 time they spent traveling to and from their drug tests and/or physical examinations, or for the
28 time they spent undergoing the testing and/or examinations, or reimburse them for the travel

1   expenses they incurred getting to and from the medical facilities.  Defendants' policy and/or

2   practice of not paying for all costs Plaintiff and other aggrieved employees incurred obtaining

3   mandatory drug tests and/or physical examinations violates California Labor Code section

4   222.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties

5   pursuant to Labor Code section 2699(a), (f)-(g).

6       130.   California's Wage Theft Prevention Act was enacted to ensure that employers

7   provide employees with basic information material to their employment relationship at the time

8   of hiring, and to ensure that employees are given written and timely notice of any changes to

9   basic information material to their employment.  Codified at California Labor Code section

10  2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must

11  provide written notice to employees containing basic and material payroll information,

12  including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour,

13  shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the

14  regular payday designated by the employer, and any allowances claims as part of the minimum

15  wage, including meal or lodging allowances.  Labor Code section 2810.5(a)(1)(A)-(C).

16      131.   Defendants failed to provide Plaintiff and other aggrieved employees written

17  notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

18  Defendants' failure to provide Plaintiff and other aggrieved employees with written notice of

19  basic information regarding their employment with Defendants is in violation of Labor Code

20  section 2810.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil

21  penalties pursuant to Labor Code section 2699(a), (f)-(g).

22  **TENTH CAUSE OF ACTION**

23  **Violation of California Business & Professions Code §§ 17200, *et seq.*—Unlawful**

24  **Business Practices**

25  **(Against all Defendants)**

26      132.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

27  and every allegation set forth above.

28      133.   Defendants are "persons" as defined by California Business & Professions

1   Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

2   and/or associations.

3        134.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

4   unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has

5   suffered injury in fact and has lost money as a result of Defendants' unlawful business

6   practices.  Plaintiff seeks to enforce important rights affecting the public interest within the

7   meaning of Code of Civil Procedure section 1021.5.

8        135.   Defendants' activities, as alleged herein, are violations of California law, and

9   constitute unlawful business acts and practices in violation of California Business &

10  Professions Code sections 17200, *et seq.*

11       136.   A violation of California Business & Professions Code sections 17200, *et seq.*

12  may be predicated on the violation of any state or federal law.  In the instant case, Defendants'

13  policies and practices have violated state law in at least the following respects:

14               (l)   Requiring non-exempt, hourly paid employees, including Plaintiff and

15                     class members, to work overtime without paying them proper

16                     compensation in violation of California Labor Code sections 510 and

17                     1198 and the applicable IWC Order, as alleged herein;

18               (m)  Failing to pay at least minimum wage to Plaintiff and class members in

19                     violation of California Labor Code sections 1182.12, 1194, 1197,

20                     1197.1, and 1198 and the applicable IWC Order, as alleged herein;

21               (n)   Failing to provide uninterrupted meal periods to Plaintiff and class

22                     members in violation of California Labor Code sections 226.7, 512(a),

23                     1198, and the applicable IWC Order, as alleged herein;

24               (o)   Failing to authorize and permit Plaintiff and class members to take

25                     uninterrupted rest periods in violation of California Labor Code sections

26                     226.7, 1198, and the applicable IWC Order, as alleged herein;

27               (p)   Failing to pay all vested vacation wages to Plaintiff and class members

28                     in violation of California Labor Code 227.3;

(q)  Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), 1198, and the applicable IWC Order, as alleged herein;

(r)  Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204 and the applicable IWC Order, as set forth below;

(s)  Failing to pay Plaintiff and class members the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

(t)  Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein; and

(u)  Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

137.  At all relevant times herein set forth, California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed.  Labor Code section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

138.  At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by

1    the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not
2    more than seven (7) calendar days following the close of the payroll period.

3        139.    During the relevant time period, Defendants willfully failed to pay Plaintiff and
4    class members all wages due to them within any time period specified by California Labor
5    Code section 204 including, but not limited to, overtime wages, minimum wages, and meal
6    and rest period premium wages.

7        140.    At all times herein set forth, California Labor Code section 222.5 requires
8    employers to pay for the costs an employee incurs for obtaining any required medical or
9    physical examination.

10       141.    During the relevant time period, Defendants implemented, on a company-wide
11   basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory
12   drug testing and/or physical examinations, but required them to do so at their own expense.
13   As stated, Defendants had a company-wide policy requiring that all employees, including
14   Plaintiff and class members, travel to a specified medical facility on their own time and use
15   their own means of transportation to undergo drug testing and/or physical examinations.  At
16   all times, Defendants were in control of scheduling the date and time for the drug testing
17   and/or physical examinations, selecting the provider or facility where drug testing and/or
18   physical examinations were to take place, and determining the scope of the drug testing and/or
19   physical examinations.

20       142.    For example, Plaintiff was instructed by Defendants to travel to a specific
21   medical facility two (2) miles from the warehouse/distribution center in City of Industry,
22   California, and obtain a drug test.  Plaintiff followed Defendants' instructions, traveled
23   approximately 6 to 7 miles roundtrip, and underwent the required drug testing.  Plaintiff spent
24   approximately one (1) hour and 35 minutes traveling to and from the clinic and undergoing
25   the required drug test.  However, Defendants did not compensate Plaintiff for this time or
26   reimburse him for his travel expenses to and from the medical facility.

27       143.    Defendants did not compensate Plaintiff and class members for the time they
28   spent traveling to and from their drug tests and/or physical examinations, or for the time they

1    spent undergoing the testing and/or examinations, or reimburse them for the travel expenses

2    they incurred getting to and from the medical facilities.  Defendants' policy and/or practice of

3    not paying for all costs Plaintiff and class members incurred obtaining mandatory drug testing

4    and/or physical examinations violates California Labor Code section 222.5.

5         144.   California's Wage Theft Prevention Act was enacted to ensure that employers

6    provide employees with basic information material to their employment relationship at the

7    time of hiring, and to ensure that employees are given written and timely notice of any

8    changes to basic information material to their employment.  Codified at California Labor

9    Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an

10   employer must provide written notice to employees containing basic and material payroll

11   information, including, among other things, the rate(s) of pay and basis thereof, whether paid

12   by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for

13   overtime, the regular payday designated by the employer, and any allowances claims as part

14   of the minimum wage, including meal or lodging allowances.  Labor Code section

15   2810.5(a)(1)(A)-(C).

16        145.   Defendants failed to provide Plaintiff and class members written notice that

17   lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

18   Defendants' failure to provide Plaintiff and class members with written notice of basic

19   information regarding their employment with Defendants is in violation of Labor Code section

20   2810.5.

21        146.   As a result of the violations of California law herein described, Defendants

22   unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members

23   have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged

24   herein.

25        147.   Pursuant to California Business & Professions Code sections 17200 *et seq.*,

26   Plaintiff and class members are entitled to restitution of the wages withheld and retained by

27   Defendants during a period that commences four years prior to the filing of this complaint; a

28   permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

1    class members; and an award of attorneys' fees pursuant to California Code of Civil

2    Procedure section 1021.5 and other applicable laws; and an award of costs.

### ELEVENTH CAUSE OF ACTION

**Violation of California Business & Professions Code §§ 17200, et seq.—Unfair Business**

**Practices**

**(Against all Defendants)**

7    148.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

8    and every allegation set forth above.

9    149.    Defendants are "persons" as defined by California Business & Professions

10   Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

11   and/or associations.

12   150.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

13   and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered

14   injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff

15   seeks to enforce important rights affecting the public interest within the meaning of Code of

16   Civil Procedure section 1021.5.

17   151.    Defendants' activities, namely Defendants' company-wide practice and/or

18   policy of not paying Plaintiff and class members all meal and rest period premium wages due

19   to them under Labor Code section 226.7, deprived Plaintiff and class members of the

20   compensation guarantee and enhanced enforcement implemented by section 226.7.  The

21   statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to

22   compensate employees, and secondarily to shape employer conduct. *Safeway, Inc. v. Superior*

23   *Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were

24   guaranteed to Plaintiff and class members as part of their employment with Defendants, and

25   thus Defendants' practice and/or policy of denying these statutory benefits constitutes an

26   unfair business practice in violation of California Business & Professions Code sections

27   17200, *et seq.* (Id.)

28   152.    A violation of California Business & Professions Code sections 17200, *et seq.*

1   may be predicated on any unfair business practice.  In the instant case, Defendants' policies

2   and practices have violated the spirit of California's meal and rest break laws and constitute

3   acts against the public policy behind these laws.

4         153.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

5   Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory

6   benefits implemented by section 226.7 withheld and retained by Defendants during a period

7   that commences four years prior to the filing of this complaint; a permanent injunction

8   requiring Defendants to pay all statutory benefits implemented by section 226.7 due to

9   Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil

10  Procedure section 1021.5 and other applicable laws; and an award of costs.

11                          **REQUEST FOR JURY TRIAL**

12        Plaintiff requests a trial by jury.

13                            **PRAYER FOR RELIEF**

14        Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against

15  Defendants, jointly and severally, as follows:

16        1.       For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in

17  excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff

18  reserves the right to amend his prayer for relief to seek a different amount.

19                            **Class Certification**

20        2.       That this case be certified as a class action;

21        3.       That Plaintiff be appointed as the representative of the Class and Subclass;

22        4.       That counsel for Plaintiff be appointed as class counsel.

23                       **As to the First Cause of Action**

24        5.       That the Court declare, adjudge, and decree that Defendants violated California

25  Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay

26  all overtime wages due to Plaintiff and class members;

27        6.       For general unpaid wages at overtime wage rates and such general and special

28  damages as may be appropriate;

1     7.     For pre-judgment interest on any unpaid overtime compensation commencing

2    from the date such amounts were due, or as otherwise provided by law;

3     8.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

4    California Labor Code section 1194(a); and

5     9.     For such other and further relief as the Court may deem equitable and

6    appropriate.

7                    **As to the Second Cause of Action**

8     10.    That the Court declare, adjudge and decree that Defendants violated California

9    Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay

10   minimum wages to Plaintiff and class members;

11    11.    For general unpaid wages and such general and special damages as may be

12   appropriate;

13    12.    For pre-judgment interest on any unpaid compensation from the date such

14   amounts were due, or as otherwise provided by law;

15    13.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

16   California Labor Code section 1194(a);

17    14.    For liquidated damages pursuant to California Labor Code section 1194.2; and

18    15.    For such other and further relief as the Court may deem equitable and

19   appropriate.

20                    **As to the Third Cause of Action**

21    16.    That the Court declare, adjudge, and decree that Defendants violated California

22   Labor Code sections 226.7, 512(a), and 1198 and applicable IWC Wage Order(s) by willfully

23   failing to provide all meal periods to Plaintiff and class members;

24    17.    That the Court make an award to the Plaintiff and class members of one (1)

25   hour of pay at each employee's regular rate of pay for each workday that a meal period was

26   not provided;

27    18.    For all actual, consequential, and incidental losses and damages, according to

28   proof;

1    19.    For premiums pursuant to California Labor Code section 226.7(b);

2    20.    For pre-judgment interest on any unpaid meal period premiums from the date

3    such amounts were due, or as otherwise provided by law;

4    21.    For attorneys' fees pursuant to California Code of Civil Procedure section

5    1021.5, or as otherwise provided by law; and

6    22.    For such other and further relief as the Court may deem equitable and

7    appropriate.

8                          **As to the Fourth Cause of Action**

9    23.    That the Court declare, adjudge and decree that Defendants violated California

10   Labor Code sections 226.7 and 1198 and applicable IWC Wage Orders by willfully failing to

11   authorize and permit Plaintiff and class members to take all rest periods;

12   24.    That the Court make an award to the Plaintiff and class members of one (1) hour

13   of pay at each employee's regular rate of pay for each workday that a rest period was not

14   authorized and permitted;

15   25.    For all actual, consequential, and incidental losses and damages, according to

16   proof;

17   26.    For premiums pursuant to California Labor Code section 226.7(b);

18   27.    For pre-judgment interest on any unpaid rest period premiums from the date

19   such amounts were due, or as otherwise provided by law;

20   28.    For attorneys' fees pursuant to California Code of Civil Procedure section

21   1021.5, or as otherwise provided by law; and

22   29.    For such other and further relief as the Court may deem equitable and

23   appropriate.

24                          **As to the Fifth Cause of Action**

25   30.    That the Court declare, adjudge and decree that Defendants violated California

26   Labor Code section 227.3 by willfully failing to pay Plaintiff and other terminated class

27   members all vested vacation pay';

28   31.    For all actual, consequential and incidental losses and damages, according to

CLASS ACTION COMPLAINT

1   proof;

2          32.    For all unpaid vested vacation pay pursuant to California Labor Code section

3   227.3;

4          33.    For pre-judgment interest on any unpaid compensation from the date such

5   amounts were due, or as otherwise provided by law;

6          34.    For attorneys' fees and costs pursuant to California Labor Code sections 218.5

7   and 1194(a);

8          35.    For such other and further relief as the Court may deem equitable and

9   appropriate.

10

11                          **As to the Sixth Cause of Action**

12         36.    That the Court declare, adjudge and decree that Defendants violated the

13   recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage

14   Orders as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized

15   wage statements thereto;

16         37.    For all actual, consequential and incidental losses and damages, according to

17   proof;

18         38.    For injunctive relief pursuant to California Labor Code section 226(h);

19         39.    For statutory penalties pursuant to California Labor Code section 226(e);

20         40.    For attorneys' fees and costs pursuant to California Labor Code section

21   226(e)(1); and

22         41.    For such other and further relief as the Court may deem equitable and

23   appropriate.

24                          **As to the Seventh Cause of Action**

25         42.    That the Court declare, adjudge and decree that Defendants violated California

26   Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages,

27   and meal and rest period premiums owed at the time of termination of the employment of

28   Plaintiff and other terminated class members;

CLASS ACTION COMPLAINT

1      43.    For all actual, consequential and incidental losses and damages, according to

2    proof;

3      44.    For waiting time penalties according to proof pursuant to California Labor

4    Code section 203 for all employees who have left Defendants' employ;

5      45.    For pre-judgment interest on any unpaid wages from the date such amounts

6    were due, or as otherwise provided by law;

7      46.    For attorneys' fees pursuant to California Code of Civil Procedure section

8    1021.5, or as otherwise provided by law; and

9      47.    For such other and further relief as the Court may deem equitable and

10    appropriate.

11                     **As to the Eighth Cause of Action**

12      48.    That the Court declare, adjudge and decree that Defendants violated California

13    Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

14    related expenses and costs incurred by Plaintiff and class members;

15      49.    For unpaid business-related expenses and such general and special damages as

16    may be appropriate;

17      50.    For pre-judgment interest on any unpaid business-related expenses from the

18    date such amounts were due, or as otherwise provided by law;

19      51.    For all actual, consequential, and incidental losses and damages, according to

20    proof;

21      52.    For attorneys' fees and costs pursuant to California Labor Code

22    section 2802(c), or as otherwise provided by law; and

23      53.    For such other and further relief as the Court may deem equitable and

24    appropriate.

25                     **As to the Ninth Cause of Action**

26      54.    That the Court declare, adjudge and decree that Defendants violated the

27    following California Labor Code provisions as to Plaintiff and/or other aggrieved employees:

28    510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and

1   1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512 and 1198 (by

2   failing to provide all meal periods); 226.7 and 1198 (by failing to authorize and permit all rest

3   periods); 227.3 (failing to pay vacation wages); 226(a), 1174(d) and 1198 (by failing to provide

4   accurate wage statements and maintain accurate payroll records); 201, 202, 203 (by failing

5   timely to pay all earned wages upon termination); 204 (by failing timely to pay all earned wages

6   during employment); 222.5 (by failing to pay the costs of mandatory drug testing and/or

7   physical examinations); 2802 (by failing to reimburse business expenses); and 2810.5 (by

8   failing to provide written notice of material terms of employment);

9        55.    For civil penalties pursuant to California Labor Code sections 210, 226.3, 248.5,

10   256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor Code

11   sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 227.3, 510, 512(a), 1174(d), 1182.12, 1194,

12   1197, 1197.1, 1198, 2802, and 2810.5;

13        56.    For attorneys' fees and costs pursuant to California Labor Code section

14   2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California

15   Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 227.3, 510, 512(a), 1174(d),

16   1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5;

17        57.    For pre-judgment and post-judgment interest as provided by law; and

18        58.    For such other and further relief as the Court may deem equitable and

19   appropriate.

20   **As to the Tenth Cause of Action**

21        59.    That the Court declare, adjudge and decree that Defendants' conduct of failing

22   to provide Plaintiff and class members all overtime wages due to them, failing to provide

23   Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and

24   class members all meal periods, failing to authorize and permit Plaintiff and class members to

25   take all rest periods, failing to pay all vested vacation wages, failing to provide Plaintiff and

26   class members accurate and complete wage statements, failing to maintain accurate payroll

27   records for Plaintiff and class members, failing timely to pay Plaintiff and class members all

28   earned wages during employment, failing to reimburse Plaintiff and class members for the

costs of mandatory drug testing and/or physical examinations, failing to reimburse Plaintiff and class members for business-related expenses, and failing to provide written notice of information material to employment, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

60.     For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

61.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200 *et seq.*;

62.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

63.     For such other and further relief as the Court may deem equitable and appropriate.

### As to the Eleventh Cause of Action

64.     That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

65.     For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

66.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200 *et seq.*;

67.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

1    68.    For pre-judgment and post-judgment interest as provided by law; and

2    69.    For such other and further relief as the Court may deem equitable and

3 appropriate.

4

5 Dated: July 22, 2019                                    Respectfully submitted,

6                                                         Capstone Law APC

7

8                                                By: _____

9                                                        Arnab Banerjee
                                                         Brandon Brouillette
10                                                       Ariel Harman-Holmes

11                                                       Attorneys for Plaintiff Richard Trujillo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

BROOKE WALDROP
310.712.8033 Direct
Brooke.Waldrop@capstonelawyers.com

May 15, 2019

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/207)

Subject:     *Richard Trujillo v. Chefs' Warehouse West Coast, LLC, The, et al.*

Dear PAGA Administrator:

This office represents Richard Trujillo in connection with his claims under the California Labor
Code.  Mr. Trujillo was an employee of CHEFS' WAREHOUSE WEST COAST, LLC, THE; THE
CHEF'S WAREHOUSE, INC.; DEL MONTE CAPITOL MEAT COMPANY, LLC; QZINA
SPECIALITY FOODS, INC.; and/or QZINA SPECIALTY FOODS (AMBASSADOR), INC.
(collectively, "CHEFS").

The employers may be contacted directly at the addresses below:

CHEFS' WAREHOUSE WEST COAST, LLC, THE
100 EAST RIDGE ROAD
RIDGEFIELD, CT 06877

THE CHEFS' WAREHOUSE, INC.
100 EAST RIDGE ROAD
RIDGEFIELD, CT 06877

DEL MONTE CAPITOL MEAT COMPANY, LLC
100 EAST RIDGE ROAD
RIDGEFIELD, CT 06877

QZINA SPECIALITY FOODS, INC.
100 EAST RIDGE ROAD
RIDGEFIELD, CT 06877

QZINA SPECIALITY FOODS, INC.
1670 ROLLINS ROAD
BURLINGAME, CA 94101

1

QZINA SPECIALTY FOODS (AMBASSADOR), INC.
100 EAST RIDGE ROAD
RIDGEFIELD, CT 06877

QZINA SPECIALTY FOODS (AMBASSADOR), INC.
11939 WOODRUFF AVENUE
DOWNEY, CA 90241

Mr. Trujillo intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Trujillo seeks relief on behalf of himself, the State of California, and other persons who were employed by CHEFS in California as a non-exempt, hourly-paid employee ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

CHEFS employed Mr. Trujillo as an hourly-paid, non-exempt employee from approximately March 2016 through July 7, 2018. Mr. Trujillo worked for CHEFS at their warehouse/distribution center location in City of Industry, California. Mr. Trujillo was hired as a Warehouse Worker, promoted to Order Selector in July 2016, and then promoted to Will Call Dispatcher, where he remained until the end of his employment. Mr. Trujillo worked approximately eight (8) to ten (10) hours per day, five (5) days per week, and forty (40) to fifty (50) hours per week. At the time Mr. Trujillo's employment with CHEFS ended, he earned approximately $13.50 per hour. His job duties as a Will Call Dispatcher included reviewing orders, verifying that orders were fulfilled properly, printing order tickets, picking orders, counting pallets, monitoring transfers and pick-ups of pallets, and maintaining a clean work area.

CHEFS committed one or more of the following Labor Code violations against Mr. Trujillo, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c). [1] Mr. Trujillo's relevant claims are as follows:

**CHEFS's Company-Wide and Uniform Payroll and HR Practices**

CHEFS is a specialty food distributor delivering ingredients to restaurants and other food preparation vendors in 26 states, including California. In California, CHEFS operates approximately nine (9) warehouse/distribution center locations associated with the following brands and subsidiaries: Chefs' Warehouse, Del Monte Meat Company, Qzina, and Ports Seafood. CHEFS' WAREHOUSE WEST COAST, LLC, THE and DEL MONTE CAPITOL MEAT COMPANY, LLC are Delaware limited liability companies, and THE CHEFS' WAREHOUSE, INC. is a Delaware corporation. All have their principal place of business located in Ridgefield, Connecticut. QZINA SPECIALITY FOODS, INC. is a Washington state corporation with its principal place of business in California, and QZINA SPECIALTY FOODS (AMBASSADOR), INC. is a California corporation. Both QZINA

---

[1] These facts, theories, and claims are based on Mr. Trujillo's experience and counsel's review of those records currently available relating to Mr. Trujillo's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Mr. Trujillo reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

SPECIALITY FOODS, INC. and QZINA SPECIALTY FOODS (AMBASSADOR), INC. list the same executive officer located at the same principal place of business in Ridgefield, Connecticut for CHEFS' WAREHOUSE WEST COAST, LLC, THE; THE CHEFS' WAREHOUSE, INC.; and DEL MONTE CAPITOL MEAL COMPANY, LLC.  Upon information and belief, CHEFS maintains a centralized Human Resources (HR) department at their corporate headquarters in Ridgefield, Connecticut, for all non-exempt, hourly-paid employees working for CHEFS in California, including Mr. Trujillo and other aggrieved employees.  At all relevant times, CHEFS issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Mr. Trujillo and other aggrieved employees, regardless of their location or position.

Upon information and belief, CHEFS maintains a centralized Payroll department at their corporate headquarters in Ridgefield, Connecticut, which processes payroll for all non-exempt, hourly paid employees working for CHEFS in California, including Mr. Trujillo and other aggrieved employees. Further, CHEFS issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location, position, or manner in which each employee's employment ended. CHEFS's centralized Payroll department processed payroll for non-exempt, hourly-paid employees in the same manner throughout California.  In other words, CHEFS utilized the same methods and formulas when calculating wages due to Mr. Trujillo and other aggrieved employees in California.

### Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

CHEFS willfully failed to pay all overtime wages owed to Mr. Trujillo and other aggrieved employees.  During the relevant time period, Mr. Trujillo and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, CHEFS had, and continues to have, a company-wide policy of understaffing their locations, including warehouses/distribution centers, resulting in a failure to provide Mr. Trujillo and other aggrieved employees with adequate meal period coverage, because there were too few employees on duty to handle the workload and attend to the demands of supervisors and customers in the retail area.  As a result of this lack of meal period coverage, Mr. Trujillo and other aggrieved employees had their meal periods interrupted and cut short by work to meet supervisor and customer demands.  For example, once or twice a week, Mr. Trujillo would work between 5-8 minutes answering questions from a supervisor or helping a customer, while clocked out for his meal period.  Other aggrieved employees also had their meal periods interrupted to attend to customers and respond to supervisor requests.  To the extent these hours worked qualified for

overtime, CHEFS did not pay Mr. Trujillo and other aggrieved employees for the time they continued to perform tasks during their meal periods.

Second, CHEFS has, and continues to have, a company-wide policy and/or practice of discouraging accrual of overtime hours by employees. Because CHEFS discouraged overtime accrual by, among other things, requiring employees to obtain pre-approval of overtime hours from CHEFS's supervisors, Mr. Trujillo and other aggrieved employees would complete assigned tasks outside of their scheduled shifts without being compensated for their work. For example, two or three days a week, Mr. Trujillo would clock out at the end of his shift and then spend 5-10 minutes walking over to the racks and verifying all outgoing packages were picked up. At all times, Mr. Trujillo and other aggrieved employees remained under CHEFS's control. This off-the-clock work could have been recorded by CHEFS, but they refused to do so to avoid payment of additional wages to Mr. Trujillo and other aggrieved employees.

Third, CHEFS also had a company-wide practice and/or policy of requiring all employees, including Mr. Trujillo and other aggrieved employees, to carry radios so that other employees and management could communicate with them as needed. CHEFS knew or should have known that other aggrieved employees were being made to communicate with other employees and/or supervisors while clocked out for meal periods to meet CHEFS's expectations, but failed to compensate them for this off-the-clock work.

CHEFS knew or should have known that as a result of these company-wide practices, Mr. Trujillo and other aggrieved employees were working during meal periods and after their scheduled shifts, and were suffered or permitted to perform work for which they were not paid. CHEFS also knew, or should have known, that it did not compensate Mr. Trujillo and other aggrieved employees for this off-the-clock work. Because Mr. Trujillo and other aggrieved employees regularly worked shifts of eight (8) hours a day or more, twelve (12) hours a day or more, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Mr. Trujillo and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked. CHEFS's failure to pay Mr. Trujillo and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, CHEFS did not pay other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, CHEFS paid other aggrieved employees shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration. However, in violation of the California Labor Code, CHEFS failed to incorporate all remunerations, including shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received these other forms of pay, CHEFS failed to pay all overtime wages by paying a lower overtime rate than required.

Mr. Trujillo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

4

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid
Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay
employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so
fixed is unlawful. Compensable work time is defined in Wage Order No. 7 as "the time during which
an employee is subject to the control of an employer, and includes all the time the employee is
suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, §
11070(2)(G) (defining "Hours Worked").

As set forth above, due to CHEFS's uniform policy and/or practice of understaffing and resultant
lack of meal period coverage, Mr. Trujillo and other aggrieved employees were impeded from taking
all uninterrupted meal periods to which they were entitled and resulted in them working off-the-
clock. Additionally, CHEFS required Mr. Trujillo and other aggrieved employees to carry radios
during meal periods, but did not pay other aggrieved employees for the time they spent responding
calls on their radios and continuing to perform work-related tasks while clocked out. Moreover, as
stated above, CHEFS systematically failed to pay Mr. Trujillo and other aggrieved employees for
actual hours worked during their meal periods and after scheduled shifts because CHEFS
discouraged employees from accruing overtime hours and thus, these hours were not always
correctly recorded.

Further, CHEFS maintained and implemented a company-wide policy of requiring all employees to
travel to a medical clinic on their own time and using their own personal vehicles to undergo
mandatory drug testing and/or physical examinations. However, CHEFS did not compensate Mr.
Trujillo and other aggrieved employees for the time they spent traveling to and from the medical
facilities or for the time they spent undergoing testing and/or physical examinations. At all times,
CHEFS was in control of scheduling the date and time for the testing and/or physical examinations,
selecting the provider or facility where the testing and/or physical examinations was to take place,
and determining the scope of the testing and/or physical examinations. Mr. Trujillo followed
CHEFS's instructions and traveled to a medical facility designated by CHEFS. Mr. Trujillo spent
approximately one (1) hour and 35 minutes traveling to and from the medical facility and undergoing
mandatory drug testing. CHEFS did not compensate Mr. Trujillo and other aggrieved employees for
the time they spent traveling to and undergoing the mandatory drug testing and/or physical
examinations.

Thus, CHEFS did not pay at least minimum wages for off-the-clock hours that qualified for overtime
premium payment. To the extent that these off-the-clock hours did not qualify for overtime premium
payment, CHEFS did not pay at least minimum wages for those hours worked off-the-clock in
violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly,
CHEFS regularly failed to pay at least minimum wages to Mr. Trujillo and other aggrieved
employees for all of the hours they worked in violation of California Labor Code sections 1182.12,
1194, 1197, 1197.1, and 1198.

Mr. Trujillo and other aggrieved employees are therefore entitled to recover civil penalties, attorney's
fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest breaks and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, as stated, CHEFS has, and continues to have, a company-wide policy and/or practice of understaffing its locations, including warehouse and distribution centers, which resulted in a lack of meal break coverage and impeded Mr. Trujillo and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. Mr. Trujillo and other aggrieved employees had their meal periods cut short or interrupted to return to work and/or waited extended periods of time before taking meal periods in order to address customer demand in the retail area or respond to supervisors' questions.

Second, as stated, CHEFS had a company-wide policy and/or practice of requiring that Mr. Trujillo and other aggrieved employees carry radios on their persons so that other employees and management could communicate with them. As a result of CHEFS's policy and/or practice that employees carry and respond to radios at all times, other aggrieved employees were compelled to perform work-related duties during their unpaid meal periods.

In addition, CHEFS did not schedule second meal periods and had no policy for permitting Mr. Trujillo and other aggrieved employees to take second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. Mr. Trujillo and other aggrieved employees did not receive second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. For example, when Mr. Trujillo worked in excess of ten (10) hours in a day, CHEFS did not schedule him to take a second meal period and did not provide him with the opportunity to take a second meal period. Instead, Mr. Trujillo continued to work until he clocked out for the day. Mr. Trujillo and other aggrieved employees did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties.

Moreover, CHEFS had a company-wide policy of requiring all newly-hired employees to sign blanket Meal Period Waivers at or near their time of hire. CHEFS took the position that non-exempt, hourly-paid employees had waived their rights to first and second meal periods for the entirety of their employment and on that basis did not provide them with all meal periods to which they were entitled. Specifically, CHEFS's "Meal Period Waiver" form provides that the waiver remains in

effect until the employee provides one day's advance warning in writing of his or her decision to revoke. *Excerpt below*:

> "I also understand that I may revoke this waiver at any time by providing at least one day's advance written notice to my supervisor. This waiver will remain in effect until I revoke it."

CHEFS's company-wide use of blanket meal waivers signed at or near the time of hire and imposition of the burden on employees to revoke the waivers in writing, discouraged and impeded Mr. Trujillo and other aggrieved employees from taking all meal periods to which they were entitled. And, CHEFS's presumption that second meal periods would not be provided for shifts in excess of ten (10) hours but less than twelve (12) hours due to blanket second meal period waivers discouraged Mr. Trujillo and other aggrieved employees from taking second meal periods.

What's more, an employer's obligation to provide a meal break is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay. *Id.* (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).

Further, under Labor Code section 512(a) and the applicable IWC Wage Order, employees may waive their second meal breaks only if they took their first meal break. CHEFS's Meal Waiver is facially invalid insofar as it fails to state that the second meal period can only be waived if first meal period is provided. And, the fact that CHEFS requires aggrieved employees to sign Meal Waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because CHEFS's obligation to provide Mr. Trujillo and other aggrieved employees with meal breaks did not arise until it had employed them for a full five (5) hours.

CHEFS knew or should have known that as a result of its policies, Mr. Trujillo and other aggrieved employees were not actually relieved of all duties to take timely, uninterrupted meal periods. CHEFS further knew or should have known that they did not pay Mr. Trujillo and other aggrieved employees meal period premium wages when they were missed, late, short, and/or interrupted. As a result, Mr. Trujillo and other aggrieved employees worked through some or all of their meal periods, had their meal periods interrupted to return to work, and/or waited extended periods of time before taking meal periods.

CHEFS also has engaged in a company-wide practice and/or policy of not paying meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Mr. Trujillo and other aggrieved employees have not received premium pay for missed meal periods. Alternatively, to the extent that CHEFS did pay meal rest period premium wages to other aggrieved employees, it did so at the incorrect rates. Because CHEFS did not properly calculate other aggrieved employees' regular rates of pay by including all remunerations, such as shift differential

7

pay, nondiscretionary bonuses, and/or incentive pay, any premiums paid for meal period violations were also paid at an incorrect rate and resulted in an underpayment of meal period premium wages.

Accordingly, CHEFS failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), and 1198. Mr. Trujillo and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7 and 1198 – Failure to Authorize and Permit Rest Periods**

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

As with meal periods, CHEFS's company-wide policy and practice of understaffing prevented Mr. Trujillo and other aggrieved employees from being relieved of all duty to take compliant rest periods. Moreover, its policy and/or practice of requiring Mr. Trujillo and other aggrieved employees to carry radios and respond to radio calls also prevented other aggrieved employees from being relieved of all duty to take compliant rest periods. Furthermore, CHEFS had no policy of scheduling rest periods for employees, which further impeded Mr. Trujillo and other aggrieved employees from taking compliant rest periods. As a result, Mr. Trujillo and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of six (6) hours, and/or in excess of ten (10) hours without receiving all uninterrupted ten (10) minute rest periods to which they were entitled. For example, Mr. Trujillo never received a third rest break when working shifts over eight (8) hours.

Additionally, CHEFS maintained and implemented a company-wide practice and/or policy requiring that Mr. Trujillo and other aggrieved employees remain on premises during their rest breaks. Because Mr. Trujillo and other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes. Thus, CHEFS effectively maintained control over Mr. Trujillo and other aggrieved employees during rest periods, and, as a result of this rest period policy, CHEFS did not relinquish control over Mr. Trujillo and other aggrieved employees during rest periods.

CHEFS also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized or permitted. Because of this practice and/or policy, Mr. Trujillo and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that CHEFS did pay rest period premium wages to other aggrieved employees, it did so at the incorrect rates. Because CHEFS did not

07/24/2019

properly calculate other aggrieved employees' regular rates of pay by including all forms of compensation, such as shift differential pay, nondiscretionary bonuses, and/or incentive pay, any premiums paid for rest period violations were also paid at an incorrect rate and resulted in an underpayment of rest period premium wages.

Accordingly, CHEFS failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7 and 1198. Mr. Trujillo and other aggrieved employees are entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (g).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. CHEFS has not provided Mr. Trujillo and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in an subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, CHEFS has knowingly and intentionally provided Mr. Trujillo and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, CHEFS issued uniform wage statements to Mr. Trujillo and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, CHEFS violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9). Because CHEFS did not record the time Mr. Trujillo and other aggrieved employees spent working off-the-clock, CHEFS did not list the correct amount of gross wages and net wages earned by Mr. Trujillo and other aggrieved employees in compliance with section 226(a)(1) and 226(a)(5), respectively. For the same reason, CHEFS failed to accurately list the total number of the hours worked by Mr. Trujillo and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Additionally, because CHEFS did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime, CHEFS did not list the correct amount of gross wages earned by other aggrieved employees in compliance with section 226(a)(1). For the same reason, CHEFS failed to list the correct amount of net wages earned by other aggrieved employees in violation of section 226(a)(5). CHEFS also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to

list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the correct name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), CHEFS willfully failed to maintain accurate payroll records for Mr. Trujillo and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, CHEFS failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Mr. Trujillo and other aggrieved employees, in violation of section 1198. Furthermore, in light of CHEFS's failure to provide Mr. Trujillo and other aggrieved employees with second 30-minute meal periods to which they were entitled, CHEFS kept no records of meal start and end times for second meal periods.

Because CHEFS failed to provide the accurate number of total hours worked on wage statements, Mr. Trujillo and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Mr. Trujillo and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Trujillo and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of

10

the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, CHEFS failed to pay Mr. Trujillo and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Mr. Trujillo and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

CHEFS willfully failed to pay Mr. Trujillo and other aggrieved employees who are no longer employed by CHEFS all their earned wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving CHEFS's employ in violation of California Labor Code sections 201, 202, and 203.

Mr. Trujillo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, CHEFS implemented, on a company-wide basis, an employer-imposed requirement that Mr. Trujillo and other aggrieved employees undergo a mandatory drug test and/or physical examination, but required them to do so at their own expense. As stated, CHEFS had a company-wide policy requiring that all employees, including Mr. Trujillo and other aggrieved employees, travel to a specified medical clinic on their own time and use their own means of transportation to undergo drug testing and/or physical examinations. At all times, CHEFS was in control of scheduling the date and time for the drug testing and/or physical examination, selecting the provider/facility where the drug testing and/or physical examination was to take place, and determining the scope of the drug test and/or physical examination.

For example, Mr. Trujillo was instructed by CHEFS to travel to a specific medical clinic two (2) miles from the warehouse/distribution center in City of Industry, California, and obtain a drug test. Mr.

11

Trujillo followed CHEFS's instructions, traveled approximately 6 to 7 miles roundtrip, and underwent the required drug test.  Mr. Trujillo spent approximately one (1) hour and 35 minutes traveling to and from the medical facility and taking the required drug test.

However, CHEFS did not compensate Mr. Trujillo and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and examination, or reimburse them for the travel expenses they incurred getting to and from the medical clinic.  CHEFS's policy and/or practice of not paying for all costs Mr. Trujillo and other aggrieved employees incurred obtaining mandatory drug tests and/or physical examinations violates California Labor Code section 222.5.

Mr. Trujillo and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, as stated, CHEFS had a company-wide policy of requiring Mr. Trujillo and other aggrieved employees to travel in their own personal vehicles to medical clinics to undergo mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  For example, as described above, Mr. Trujillo drove for approximately one (1) hour and 35 minutes roundtrip to obtain a mandatory drug test and/or physical examination per CHEFS's instructions, but was not reimbursed for his mileage to and from the medical clinic.

Second, during the relevant time period, CHEFS, on a company-wide basis, required that Mr. Trujillo and other aggrieved employees utilize their own personal cellular phones and/or cellular phone data to carry out their job duties, but failed to reimburse them for the costs of their cellular phone and/or data plans.  For example, Mr. Trujillo was required to use his personal cellular phone to perform his work, such as calling FedEx and UPS to discuss order pick-ups and deliveries.  Although CHEFS required Mr. Trujillo and other aggrieved employees to regularly utilize his personal cellular phone to carry out work-related responsibilities, CHEFS failed to reimburse them for this cost.

CHEFS had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.  CHEFS could have provided Mr. Trujillo and other aggrieved employees with the actual tools for use on the job, including company phones and company vehicles to be used for fulfilling work-related tasks, or reimbursed employees for their cellular phone usage, mileage, and travel expenses, but instead, CHEFS passed these operating costs off onto Mr. Trujillo and other aggrieved employees.  At all relevant times, Mr. Trujillo did not earn at least two (2) times the minimum wage.

12

CHEFS's policy and/or practice of passing its operating costs on to Mr. Trujillo and other aggrieved employees is in violation of California Labor Code section 2802. Mr. Trujillo and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(f)-(g).

## Violation of California Labor Code § 2810.5(a)(1)(A)-(C)

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claimed as part of the minimum wage, including meal or lodging allowances. Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must also include a statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

CHEFS failed to provide Mr. Trujillo and other aggrieved employees written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C). CHEFS's failure to provide Mr. Trujillo and other aggrieved employees with written notice of basic information regarding their employment with CHEFS is in violation of Labor Code section 2810.5. Mr. Trujillo and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

## California Labor Code § 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." CHEFS, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Trujillo's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Trujillo seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Trujillo, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against CHEFS for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 510, 512(a),

13

1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

Therefore, on behalf of all aggrieved employees, Mr. Trujillo seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Brooke Waldrop
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 712-8033

Best Regards,

Brooke Waldrop

Copy: CHEFS' WAREHOUSE WEST COAST, LLC, THE (via U.S. Certified Mail); THE CHEFS' WAREHOUSE, INC. (via U.S. Certified Mail); DEL MONTE CAPITOL MEAT COMPANY, LLC (via U.S. Certified Mail); QZINA SPECIALITY FOODS, INC. (via U.S. Certified Mail); QZINA SPECIALTY FOODS (AMBASSADOR), INC. (via U.S. Certified Mail)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Arnab Banerjee (SBN 252618); Brandon Brouillette (SBN 273156)<br>Capstone Law APC<br>1875 Century Park East, Suite 1000<br>Los Angeles, CA 90067<br>TELEPHONE NO.: (310) 556-4811  FAX NO.: (310) 943-0396<br>ATTORNEY FOR (Name): Plaintiff Tricia Suhartono | **FILE**<br>LOS ANGELES SUPERIOR COURT<br><br>JUL 2 2 2019<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Joya Herrera _____, Deputy<br>Tanya Herrera |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 North Hill Street, Los Angeles |
| MAILING ADDRESS: 111 North Hill Street, Los Angeles, CA 90012 |
| CITY AND ZIP CODE: Los Angeles, 90012 |
| BRANCH NAME: Stanley Mosk Courthouse |

| CASE NAME: |
|---|
| Richard Trujillo v. The Chefs' Warehouse West Coast, LLC, et al |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **19STCV25377**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [✓] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [✓] Substantial amount of documentary evidence
   - d. [✓] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): Eleven (11)
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 22, 2019

Brandon Brouillette
_____
(TYPE OR PRINT NAME)  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

BY FAX

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

SHORT TITLE: Richard Trujillo v. The Chefs' Warehouse West Coast, LLC, et al

STC 25377
19 V

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ✓ YES   CLASS ACTION? ✓ YES   LIMITED CASE? YES   TIME ESTIMATED FOR TRIAL _15-20_   HOURS/ ✓ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
| --- |

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**BY FAX**

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
| --- | --- | --- | --- |
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1 , 2 , 4 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1 , 2 , 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1 , 2 , 3 , 4. , 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1 , 4 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1 , 4 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1 , 4 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1 , 4 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1 , 3 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1 , 4 |

LACIV 109 (Rev 3/15)
LASC Approved C3-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| | SHORT TITLE: | Richard Trujillo v. The Chefs' Warehouse West Coast, LLC, et al | CASE NUMBER | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1 , 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1 , 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1 , 2., 3. |
| | Other Employment (15) | ☑ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1 , 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

Richard Trujillo v. The Chefs' Warehouse West Coast, LLC, et al

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑ 1   2   3   4   5   6   7.   8.   9   10.   11 | ADDRESS<br>The Chefs Warehouse West Coast, LLC<br>16633 E. Gale Avenue<br>City of Industry, CA 91745 |
|---|---|
| **CITY**<br>City of Industry | **STATE**<br>CA | **ZIP CODE**<br>91745 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Stanley Mosk__ courthouse in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd.(a).

Dated: __July 22, 2019__

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/22/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _Tanya Herrera_ Deputy<br>Tanya Herrera |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>19STCV25377 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Ann I. Jones | 11 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on _07/22/2019_
(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By _Tanya Herrera_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>08/05/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Dejane Wortham _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Richard Trujillo | |
| DEFENDANT/RESPONDENT:<br>The Chef's Warehouse West Coast, LLC et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>19STCV25377 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order) of 08/05/2019, Initial Status Conference Order  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Arnab  Banerjee
Capstone Law, APC
1875 Century Park E
Suite 1000
Los Angeles, CA  90067

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 08/5/2019

By:  Dejane Wortham
    Deputy Clerk

**CERTIFICATE OF MAILING**

FILED
Superior Court of California
County of Los Angeles

AUG 0 5 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By _____, Deputy
Dejane Wortham

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| RICHARD TRUJILLO, et al., | Case No. 19STCV25377 |
| Plaintiff, | INITIAL STATUS CONFERENCE ORDER (COMPLEX LITIGATION PROGRAM) |
| v. | Case Assigned for All Purposes to Judge Ann I. Jones |
| THE CHEFS' WAREHOUSE WEST COAST, LLC, et al. | |
| Defendant. | Department: SS11 Date: October 25, 2019 Time: 9:00 AM |

This case has been assigned for all purposes to Judge Ann I. Jones in the Complex Litigation Program. An Initial Status Conference is set for October 25, 2019 at 9:00 AM in Department SS11 located in the Spring Street Superior Courthouse at 312 N. Spring Street, Los Angeles, California 90012. Counsel for all parties are ordered to attend.

The court orders counsel to prepare for the Initial Status Conference by identifying and discussing the central legal and factual issues in the case. Counsel for plaintiff is ordered to initiate contact with counsel for defense to begin this process. Counsel then must negotiate and agree, as much as possible, on a case management plan. To this end, counsel must file a Joint Initial Status Conference Class Action Response Statement five court days before the Initial Status Conference. The Joint Response Statement must be filed on line-numbered pleading paper and must specifically answer each of the below-numbered questions. Do not use the Judicial Council Form CM-110 (Case Management

Statement).

1. **PARTIES AND COUNSEL:** Please list all presently-named class representatives and presently-named defendants, together with all counsel of record, including counsel's contact and email information.

2. **STATUS OF PLEADINGS:** Please indicate whether defendant has filed a Notice of Appearance or an Answer to the Complaint, and, if so, indicate the filing date(s).

3. **POTENTIAL ADDITIONAL PARTIES:** Indicate whether any plaintiff presently intends to add additional class representatives, and, if so, the name(s) and date by which these class representatives will be added. Indicate whether any plaintiff presently intends to name additional defendants, and, if so, the name(s) and date by which the defendant(s) will be added. Indicate whether any appearing defendant presently intends to file a cross-complaint and, if so, the names of cross-defendants and the date by which the cross-complaint will be filed.

4. **IMPROPERLY NAMED DEFENDANT(S):** If the complaint names the wrong person or entity, please explain why the named defendant is improperly named and the proposed procedure to correct this error.

5. **ADEQUACY OF PROPOSED CLASS REPRESENTATIVE(S):** If any party believes one or more named plaintiffs might not be an adequate class representative, including reasons of conflict of interest as described in Apple Computer v. The Superior Court of Los Angeles County (2005) 126 Cal.App.4th 1253, please explain. No prejudice will attach to these responses.

6. **ESTIMATED CLASS SIZE:** Please discuss and indicate the estimated class size.

7. **OTHER ACTIONS WITH OVERLAPPING CLASS DEFINITIONS:** Please list other cases with overlapping class definitions. Please identify the court, the short caption title, the docket number, and the case status.

8. **POTENTIALLY RELEVANT ARBITRATION AND/OR CLASS ACTION WAIVER**

**CLAUSES:**  Please state whether arbitration is an issue in this case and attach a sample of any relevant clause of this sort.   Opposing parties must summarize their views on this issue.

9. **POTENTIAL EARLY CRUCIAL MOTIONS:**  Opposing counsel should identify and describe the significant core issues in the case, and then identify efficient ways to resolve those issues, including one or more of the following:

- Motion to Compel Arbitration,

- Early motions in limine,

- Early motions about particular jury instructions and verdict forms,

- Demurrers,

- Motions to strike,

- Motions for judgment on the pleadings, and

- Motions for summary judgment and summary adjudication.

10. **CLASS CONTACT INFORMATION:**  Counsel should discuss whether obtaining class contact information from defendant' s records is necessary in this case and, if so,  whether the parties consent to an "opt-out" notice process (as approved in *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 561).  Counsel should address timing and procedure, including allocation of cost and the necessity of a third party administrator.

11. **PROTECTIVE ORDERS:**  Parties considering an order to protect confidential information from general disclosure should begin with the model protective orders found on the Los Angeles Superior Court Website under "Civil Tools for Litigators."

12. **DISCOVERY:**  Please discuss a discovery plan.  If the parties cannot agree on a plan,  summarize each side's views on discovery.  The court generally allows discovery on matters relevant to class certification, which (depending on circumstances) may include factual issues also touching the merits.  The court generally does not permit extensive or expensive discovery relevant only to the

3

merits (for example, detailed damages discovery) at the initial stage unless a persuasive showing establishes early need.  If any party seeks discovery from absent class members, please estimate how many, and also state the kind of discovery you propose[1].

**13. INSURANCE COVERAGE:**  Please state if (1) there is insurance for indemnity or reimbursement, and (2) whether there are any insurance coverage issues which might affect settlement.

**14. ALTERNATIVE DISPUTE RESOLUTION:**  Please discuss ADR and state each party's position about it.  If pertinent, how can the court help identify the correct neutral and prepare the case for a successful settlement negotiation?

**15. TIMELINE FOR CASE MANAGEMENT:**  Please recommend dates and times for the following:

- The next status conference,
- A schedule for alternative dispute resolution, if it is relevant,
- A filing deadline for the motion for class certification, and
- Filing deadlines and descriptions for other anticipated non-discovery motions.

**16. ELECTRONIC SERVICE OF PAPERS:**  For efficiency the complex program requires the parties in every new case to use a third-party cloud service.  Please agree on one and submit the parties' choice when filing the Joint Initial Status Conference Class Action Response Statement.  If there is agreement, please identify the vendor. If parties cannot agree, the court will select the vendor at the Initial Status Conference.  Electronic service is not the same as electronic filing.  Only traditional methods of filing by physical delivery of original papers or by fax filing are presently acceptable.

**Reminder When Seeking To Dismiss Or To Obtain Settlement Approval:**

"A dismissal of an entire class action, or of any party or cause of action in a class action, requires court approval. . . .  Requests for dismissal must be accompanied by a declaration setting forth the facts

---

[1] See California Rule of Court, Rule 3.768.

on which the party relies. The declaration must clearly state whether consideration, direct or indirect, is being given for the dismissal and must describe the consideration in detail."[2] If the parties have settled the class action, that too will require judicial approval based on a noticed motion (although it may be possible to shorten time by consent for good cause shown).

**Reminder When Seeking Approval of a Settlement:**

Plaintiff(s) must address the issue of any fee splitting agreement in their motion for preliminary approval and demonstrate compliance with California Rule of Court  3.769, and the Rules of Professional Conduct 2-200(a) as required by Mark v. Spencer (2008) 166 Cal.App. 4th 219.

**Stay of Proceedings:**

Pending further order of this Court, and except as otherwise provided in this Initial Status Conference Order, ***these proceedings are stayed in their entirety***. This stay precludes the filing of any answer, demurrer, motion to strike, or motions challenging the jurisdiction of the Court; however, any defendant may file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance is without prejudice to any challenge to the jurisdiction of the Court, substantive or procedural challenges to the Complaint, without prejudice to any affirmative defense, and without prejudice to the filing of any cross-complaint in this action. This stay is issued to assist the Court and the parties in managing this "complex" case through the development of an orderly schedule for briefing and hearings on procedural and substantive challenges to the complaint and other issues that may assist in the orderly management of these cases.  This stay does not preclude the parties from informally exchanging documents that may assist in their initial evaluation of the issues presented in this case, however it stays all outstanding discovery requests.

---

[2] California Rule of Court, Rule 3.770(a)

**Service of this Order:**

Plaintiff's counsel is directed to serve a copy of this Initial Status Conference Order along with a copy of the attached Guidelines for Motions for Preliminary and Final Approval of Class Settlement on counsel for all parties, or if counsel has not been identified, on all parties, within five (5) days of service of this order. If any defendant has not been served in this action, service is to be completed within twenty (20) days of the date of this order.

If all parties have been served, have conducted the required meet and confer, and are ready to fully participate in the status conference prior to the assigned date, counsel may contact the clerk of Department SS11 and request an earlier date for the Initial Status Conference.

Dated:  August 05, 2019

RAFAEL A. ONGKEKO

Rafael A. Ongkeko
Judge of the Los Angeles Superior Court

6

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 11

19STCV25377                                                          August 5, 2019
**RICHARD TRUJILLO, et al. vs THE CHEFS' WAREHOUSE**                       3:22 PM
**WEST COAST, LLC, et al.**

Judge: Honorable Rafael A. Ongkeko          CSR: None
Judicial Assistant: D. Wortham              ERM: None
Courtroom Assistant: None                   Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order

Judge Rafael A. Ongkeko is sitting temporarily for Judge Ann I. Jones, who is temporarily
assigned to the Court of Appeal.

By this order, the Court determines this case to be Complex according to Rule 3.400 of the
California Rules of Court. The Clerk's Office has randomly assigned this case to this department
for all purposes.

By this order, the Court stays the case, except for service of the Summons and Complaint. The
stay continues at least until the Initial Status Conference. Initial Status Conference is set for
10/25/2019 at 09:00 AM in this department. At least 10 days prior to the Initial Status
Conference, counsel for all parties must discuss the issues set forth in the Initial Status
Conference Order issued this date. The Initial Status Conference Order is to help the Court and
the parties manage this complex case by developing an orderly schedule for briefing, discovery,
and court hearings. The parties are informally encouraged to exchange documents and
information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice
of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of
Appearance shall not constitute a waiver of any substantive or procedural challenge to the
Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to
Code of Civil Procedure Section 170.6.

Counsel are directed to access the following link for information on procedures in the Complex
litigation Program courtrooms:  http://www.lacourt.org/division/civil/CI0037.aspx

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 11

**19STCV25377**                                                    August 5, 2019
**RICHARD TRUJILLO, et al. vs THE CHEFS' WAREHOUSE**                3:22 PM
**WEST COAST, LLC, et al.**


Judge: Honorable Rafael A. Ongkeko          CSR: None
Judicial Assistant: D. Wortham              ERM: None
Courtroom Assistant: None                   Deputy Sheriff: None

thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within 10 days of service of this order.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within 7 days of service.

Certificate of Mailing is attached.