Mark A. Ozzello (SBN #116595)
Mark.Ozzello@capstonelawyers.com
Brandon Brouillette (SBN #273156)
Brandon.Brouillette@capstonelawyers.com
Brooke Waldrop (SBN #314486)
Brooke.Waldrop@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff Richard Trujillo

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TRUJILLO, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act (PAGA),<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; QZINA SPECIALTY FOODS, INC., a Washington corporation; and/or QZINA SPECIALTY FOODS (AMBASSADOR), INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.:  2:19-cv-08370 DSF (MAAx)<br><br>Hon. Dale S. Fischer<br>Hon. Maria A. Audero<br><br>**JOINT STIPULATION RE: DISCOVERY DISPUTE AS TO PLAINTIFF'S MOTION TO COMPEL**<br><br><u>Hearing</u><br>Date: October 13, 2020<br>Time: 10:00 a.m.<br>Courtroom: 690<br>Judge: Maria A. Audero<br><br>Discovery Cut-Off:   April 15, 2021<br>Pretrial Conference: September 13, 2021<br>Trial:   October 12, 2021 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

    A.    Summary of Dispute........................................................... 1

    B.    Plaintiff's Position............................................................ 2

    C.    Defendant's Position ......................................................... 3

II.   FACTS AND PROCEDURE ....................................................... 3

    A.    Joint Statement Regarding The Procedural Background ................. 3

III.  ARGUMENT .......................................................................... 5

    A.    Plaintiff's Position............................................................ 5

        1.    The Scope of Discovery Should Include All
Warehouse Workers and both CWWC Warehouse
locations in California ............................................. 5

            (a)    Evidence Collected by Plaintiff to date
Demonstrates Plaintiff's Claims Expand
Beyond His Warehouse Location and Day-
time Shift........................................................ 7

            (b)    Discovery Pertaining to Plaintiff PAGA
Claims Should Not be Limited to a Single
Location or Employee Sub-group............................. 11

            (c)    Defendant's Release Agreements Have No
Impact on the Inclusion of Aggrieved
Employees in this Discovery order or this
Action........................................................... 13

        2.    Plaintiff's Special Interrogatory No. 1 ................................. 16

        3.    Plaintiff's Requests for Production of Documents,
Nos. 5, 6, and 30................................................... 19

|  |  | (a) | Plaintiff is Entitled to Timekeeping Data | 22 |
|  |  | (b) | Plaintiff is Entitled to Payroll Data and |  |
|  |  |  | Wage Statements | 23 |
|  | B. | Defendant's Position |  | 25 |
|  |  | 1. | The Scope of Discovery Is Properly Limited to |  |
|  |  |  | Day Warehouse Workers at CWWC's City of |  |
|  |  |  | Industry Location | 25 |
|  |  | (a) | Plaintiff Is Not Entitled To Discovery |  |
|  |  |  | Beyond the Facility Where He Worked | 26 |
|  |  | (b) | Plaintiff Is Only Entitled to Discovery As |  |
|  |  |  | To Day Warehouse Workers | 30 |
|  |  | 2. | Plaintiff's PAGA Claim Does Not Entitle Him to |  |
|  |  |  | Broader Discovery As PAGA Claims in Federal |  |
|  |  |  | Court Must Meet the Requirements of Rule 23. | 32 |
|  |  | 3. | The Scope of Discovery Should Exclude Putative |  |
|  |  |  | Class Members Who Signed Settlement |  |
|  |  |  | Agreements | 33 |
|  |  | 4. | The Scope of Discovery Should Exclude Putative |  |
|  |  |  | Class Members Who Signed Arbitration |  |
|  |  |  | Agreements With Class Action Waivers | 36 |
|  |  | 5. | Plaintiff Is Not Entitled to Contact Information |  |
|  |  |  | for the Entire Putative Class | 36 |
|  |  | 6. | Plaintiff Is Not Entitled to Timekeeping Data | 39 |
|  |  | 7. | Plaintiff Is Not Entitled to Payroll Data or Wage |  |
|  |  |  | Statements | 39 |
| IV. | CONCLUSION |  |  | 40 |
|  | A. | Plaintiff's Statement |  | 40 |

B.    Defendant's Statement ................................................................. 40

# I.  INTRODUCTION

## A.  Summary of Dispute

Plaintiff Richard Trujillo, who filed a putative class action and PAGA enforcement action, seeks an order compelling Defendant The Chefs Warehouse West Coast, LLC ("CWWC" or "Defendant") to provide further responses to:

- Special Interrogatory No. 1 (employee names and contact information); and,
- Requests for Production, Nos. 5 (employee payroll data), 6 (employee timekeeping data), and 30 (employee wage statements)[1].

The disputes between the parties center, to a large degree, on the scope of discovery that should be permitted, and whether Plaintiff's right to discovery should be limited to a subgroup of the CWWC's employees at issue, as defined by Plaintiff's Complaint and set forth in Plaintiff's discovery (reference in the various discovery requests as "Covered Employees").  As such each party's portion of this Joint Statement is segregated into three parts. First, the scope of the Covered Employees will be discussed. Necessary to this discussion will be a

---

[1]The Parties have agreed to that CWWC will provide supplemental responses and responsive documentation to the following RFPs by using an ESI protocol: RFP 2, RFP 3, RFP 20, RFPs 22-24, RFP 37, RFP 38, RFP 47, RFP 48, RFP 57, RFP 58 (Set Two), RFP 60, and RFP 63.  CWWC will provide supplemental responses and responsive documentation to the following RFPs concerning disputes or concerns submitted by Covered Employees by searching for complaints that were escalated to the Human Resources department or where received on the Whistle Blower Hotline: RFPs 22-24, RFP 37, RFP 38, RFP 57, RFP 58 (Set Two), RFP 60, and RFP 63.  CWWC will provide supplemental responses and responsive documentation to the following under the following conditions: RFP 8 (CWWC will provide a Day and Night Warehouse Worker job description); RFP 27 (CWWC will provide a supplemental response that there is only one English version of the Release Agreement, which is currently in Plaintiff's possession); RFP 60 (CWWC will provide responsive documentation limited to documentation concerning business expenses and hours worked); SROGs 2-7 (CWWC will provide supplemental responses subject to the scope Magistrate Audero orders); SROGs 6-7 (CWWC will provide supplemental responses they indicated they had previously produced); SROG 10 (Within the class list, CWWC will identify who signed a Release Agreement on the class because it will be a subset of the class)

determination as to whether the Release executed by some of the Covered Employees will operate as a bar to those employees being included in at least a sub-section of "Aggrieved Employees" for purposes of the claims brought under PAGA. Second, by way of Plaintiff's Special Interrogatory No. 1, Plaintiff seeks the names, contact information, and employment dates of the Covered Employees. Third, and by way of Plaintiff's Requests For Production of Documents, Plaintiff seeks the timekeeping data, payroll data, and wage statements of the Covered Employees.

On August 19, 2020, the Honorable Maria A. Audero presided over an Informal Discovery Conference ("IDC"), during which she indicated that the scope of permissible discovery should initially be limited to a subgroup of "Day Warehouse Workers employed at the CWWC, City of Industry location" with no distinction between Plaintiff's class claims and PAGA claims. Despite this initial guidance, Plaintiff seeks to further address these issues with the Court by way of the instant motion.

## B.    Plaintiff's Position

Plaintiff contends the scope of permissible discovery should include a representative sample taken from ALL Warehouse Workers at both of CWWC's warehouse facilities located in California. This initial determination will then emanate through the various requests and be a determinative factor as to what information is provided and what documents will be produced. However, to the extent discovery related to Plaintiff's class claims is ultimately limited to a sub-group of CWWC employees—a position that Plaintiff contends amounts to an abuse of discretion—discovery related to Plaintiff's PAGA claims should not be so limited in accordance with the prevailing authority governing PAGA actions.[2]

---

[2] Pursuant to Local Rule 37-2.1 hereto attached as Exhibit "D" is a true and correct of copy of the court's 02/13/2020 Order Re Jury Trial.

### C.   Defendant's Position

Discovery in this matter should be limited to Day Warehouse Workers who worked at the City of Industry location who did not sign a settlement agreement or arbitration agreement. Plaintiff held only one position (Day Warehouse Worker) and at only one location during his entire employment with CWWC (City of Industry). Plaintiff has not shown that he is entitled to pre-certification discovery for positions which he never held and locations where he never worked. Plaintiff has failed to show a *prima facie* case for class relief under Rule 23. Likewise, Plaintiff fails to meet his burden to show that his requested discovery measures are likely to produce persuasive information substantiating the class allegations. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). The fact that Plaintiff brings a PAGA claim does not entitle him to more expansive discovery.

## II.   FACTS AND PROCEDURE

### A.   Joint Statement Regarding The Procedural Background

Defendant CWWC is a subsidiary of co-defendant The Chefs' Warehouse, Inc. In California, CWWC operates two warehouse/distribution center locations: one in Union City, and one in the City of Industry. Plaintiff worked as a Day Warehouse Worker exclusively at the City of Industry location.  On July 22, 2019, Plaintiff filed this hybrid class and PAGA representative action in San Bernardino County Superior Court on behalf of a putative class of all non-exempt hourly employees of Defendants in California (excluding Drivers and Driver Trainers) and, as to the PAGA representative claims, on behalf of the State of California and all other aggrieved employees who worked as non-exempt hourly employees for Defendant in California (excluding Drivers and Driver Trainers). On September 27, 2019, Defendants removed this case to Federal court.

After various calendaring changes to accommodate a settlement

conference, the Parties provided the Court with a Shortened IDC Statement on June 29, 2020, which outlined the Parties' positions concerning the SROGs and RFPs which remained in dispute.  These included: SROG Nos. 1-7, and 10; and, RFPs Nos. 1-3, 5, 6, 8, 20, 22-24, 27, 28, 30, 33, 35-39, 47-50, 57, 58, 60, and 63.  At the IDC, the Court suggested the Parties participate in a settlement conference.

After an unsuccessful settlement conference, the Parties participated in a further IDC on August 19, 2020. At the August 19, 2020 IDC, the Court stated that she recommended defining the scope of discovery to include only those people employed by CWWC in the job position "Day Warehouse Worker" at the City of Industry, California.  The also Court advised that her recommendation was to include within the scope of discovery those employees who signed Release Agreements pursuant to a Pick-Up Stix campaign and those who had executed arbitration agreements on the grounds that Plaintiff needed that information based on his contention that those agreements were invalid. The time period covered for the inclusive class list, as set forth above would be from July 22, 2015, to the present.[3]  The Parties could not agree to the scope of discovery, as to both the putative class claims and PAGA claims.  The Court is fully aware of the extensive meet and confer efforts made by counsel, via written correspondence, telephonic conferences, and the IDCs.

---

[3]The Court made no differentiation as to the scope of the PAGA aggrieved employees except that the parties are in agreement that the PAGA period is from May 13, 2018 to the present.

III.   **ARGUMENT**

    A.   **Plaintiff's Position**

        1.   **The Scope of Discovery Should Include All Warehouse Workers and both CWWC Warehouse locations in California**

Plaintiff's Complaint alleges that Defendant's uniform and systematic policies and practices resulted in, *inter alia*, Defendant's failure to provide meal and rest periods, failure to provide vacation pay time, failure to pay for all hours worked, and failure to timely pay wages owed upon termination and/or resignation. Accordingly, Plaintiff requires access to all Warehouse Workers at both facilities and, for purposes of class certification, a representative sample of their relevant timekeeping, payroll and wage statements.

All Warehouse Workers have relevant information likely to support Plaintiff's theories on which he will move for class certification and which will assist Plaintiff in properly defining a class and any potential subclasses. As court after court has determined, there is the distinct probability that these employees will have evidence that either supports certification or rebuts Defendant's anticipated defenses. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's . . . defense"). Plaintiff anticipates that at the time of certification, Plaintiff will seek to certify a class which is comprised of all CWWC Warehouse workers, regardless of shift and regardless of location. It is anticipated that CWWC, like other multi-location companies that do business in California, will oppose certification by arguing that the practices and procedures vary by location such that there can be no commonality or predominance of fact or law.

As Plaintiff has the initial burden in demonstrating the requirements for class certification are met, the only effective way to provide him an opportunity to do so is to allow him equal access to discovery so that he may interview all

prospective class members and analyze their timekeeping data, payroll data, and wage statements.  This ensures a level playing field because Defendant and its counsel have the employee contact information, wage statements, payroll data and timekeeping data for the entire universe of employees.  *Campbell v. Wood,* 18 F.3d 662, 723 (9th Cir. 1994) ("We ordinarily understand that the truth is most readily uncovered when each party has equal access to the evidence….").

Numerous courts have rejected Defendant's contention that before a plaintiff is entitled to discovery regarding the class allegations, a plaintiff must essentially prove them. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304 at 1313 (9th Cir. 1977) ("[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, *especially when the information is within the sole possession of the defendant.*); see also *Edwards v. First Am. Corp.,* 385 Fed. Appx. 629, 631 (9th Cir. 2010) ("The district court abused its discretion in denying nationwide discovery. Plaintiff must be given an opportunity to present evidence as to whether a class action is maintainable, and such an opportunity requires enough discovery to obtain the material."); *Talavera v. Sun Maid Growers of California*, 2017 WL 495635 at *3 (E.D. Cal. Feb. 6, 2017) (Finding that "the allegations in the complaint are sufficient to state a prima facie case for class relief under Rule 23;" and granting a motion to compel a sampling of time and pay records); *Kress v. Price Waterhouse Coopers*, No. CIV S-08- 0965, 2011 WL 3501003, at *4 (E.D. Cal. Aug. 9, 2011) ("[T]he proposed discovery is necessary to confirm questions of commonality and typicality, and finally whether this action may be maintained as a class action."); *Romo v. GMRI, Inc.*, No. EDCV-12-0715-JLQ, 2013 WL 11310656 at *5 (C.D. Cal., Jan. 25, 2013) (ordering production of time and payroll records based on the allegations in the complaint).

(a)    **Evidence Collected by Plaintiff to date Demonstrates Plaintiff's Claims Expand Beyond His Warehouse Location and Day-time Shift**

Defendant has produced documentation that clearly establishes the existence of common, company-wide policies concerning Plaintiff's claims, regardless of shift or location.  This documentation demonstrates that company-wide CWWC policies, including meal period, rest period, payroll, and timekeeping policies, were not implemented or enforced in a different manner for CWWC employees working at different locations, during different shifts, or even in different job positions.

For instance, Defendant provided timekeeping records and instruction manuals that identifies Ms. Nadina Maliver as the Payroll Director at co-defendant Chef Warehouse, Inc.'s corporate office, as well as the person responsible for producing Plaintiff's timekeeping records in response to Plaintiff's discovery requests. As both payroll records and timekeeping records are centrally managed by the same office purported to serve both CWWC locations, Defendant has itself established that it maintains uniform company-wide practices and policies that apply to *all* of Defendant's employees at *all* of Defendant's locations in California.

By way of further example, Plaintiff's timekeeping records evidence on their face that Defendant has a company-wide practice of failing to provide meal period premiums. Plaintiff's records undeniably demonstrate that Plaintiff was consistently not provided with meal periods until after the fifth hour of work. These records show consistent violations throughout his term of employment. Notably, however, Plaintiff's wage statements do not show *any* meal period premium payments for these violations. Moreover, Defendant has recently confirmed that "there were no meal and rest premiums paid to day warehouse workers who did not sign a release or arbitration agreement." Considering that

Defendant's payroll department is centralized, and that these violations were not isolated or sporadic, Plaintiff has evidence of a company-wide policy that Defendant disregarded its obligation to pay meal and rest premiums when required.  *See e.g. Safeway, Inc. v. Superior Court of Los Angeles Cty. (Esparza)*, 238 Cal. App. 4th 1138, 1153 (2015) (recognizing that the total failure to pay any meal periods is indicative of a systematic failure to comply with employer's obligation under the law).

Moreover, "The Chefs' Warehouse – California Employee Handbook" ("Handbook") sets forth policies applicable to *all* hourly paid, non-exempt employees in California, with no differentiation as to a job position, shift, or facility.  For example, under the section "Employee Classifications," the Handbook represents that "[f]or the purposes of this handbook, all employees fall within one of the classifications below" and then lists the following five classifications that do not indicate position, shift, or facility:  "Regular Full-Time Employees," "Regular Part-Time Employees," "Temporary Employees," "Non-exempt Employees," and "Exempt Employees."

The Handbook also lends credibility to Plaintiff's claim that Defendant fails to authorize duty-free rest periods.  For example, the Handbook explicitly states the right of employees to leave the premises during meal periods ("Employees are free to leave the Company's premises during their meal periods."); however, the Handbook remains silent regarding rest periods, creating a *de facto* on-premises rest period policy.[4]  Considering Plaintiff's

---

[4] Rest Break Policy from Section 2-6, "Meal and Rest Period Policy," follows in full: "Rest Breaks: Employees are also authorized and permitted to take one paid 10-minute rest break during each four hours or major fraction of four hours that they work.  The only exception applies if an employee's total daily work is less than three and one-half hours, in which case no rest break need be permitted.  Employees who work more than six hours in a day are permitted to take two paid 10-minute rest breaks, and employees who work more than 10 hours in a day are permitted to take three paid 10-minute rest breaks.  Rest breaks shall be permitted in the middle of each four-hour work period insofar as that is practicable.  Rest breaks may not be combined with each other or added to

testimony that his manager precluded him from taking rest periods by assigning tasks during his rest period,[567] Defendant's rest period policy is non-compliant. Again, as with the missed or late meal periods, Plaintiff's wage statements fail to show a single rest period premium payment despite the violations. Because the Handbook was distributed company-wide, regardless of location, Plaintiff can demonstrate uniform and common company-wide policies and practices.[8]

Plaintiff's deposition testimony further demonstrates that discovery should not be limited to employees at Plaintiff's location only and/or those scheduled during his shift.  Despite the representations of CWWC's counsel at the August 19, 2020 IDC that they had no knowledge of a Warehouse Worker job description *that did not* indicate either 'Day' or 'Night' shift, that same counsel presented Plaintiff at his deposition with a generic job description entitled

---

an employee's meal period."

[5] "Q: Yeah. What were the circumstances? What would happen that you were precluded from taking your ten-minute break?

A: I would tell him that I needed to finish my break and he would say, like I said earlier, that the customer is really important, to help him out."

[6] "Q: What were the circumstances where Dennis prevented you from taking your ten-minute rest break?

A: " 'That the customers were really important,' as well, that – usually, if it was my rest breaks and let's say a customer comes in and they don't have an order that's been picked, 'to go pick it – go pick it for the customer.'"

[7] "Q: Okay. Did you ever tell Dennis that you're on your break and you'll get to it when you're done?

A: Yes.

Q: What did he say?

A: Just to 'get to – get to picking the order first.'"

[8] As the Ninth Circuit recently concluded: "[A]n employer may restrict an employee from traveling more than five minutes away from the worksite during a ten-minute break because if she does, she will be unable to return to the worksite before the break ends." *Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1078 (2020).  But an employer cannot legally "'direct[], command[] or restrain[] an employee from leaving the work place [entirely] and thus prevent[] the employee from using the time effectively for his or her own purposes,'" because in that circumstance the "employee remains subject to the employer's control.'" *Ridgeway*, 946 F.3d at 1079 (quoting *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal.4th 833, 340 P.3d 355, 360 (2015).)

"Warehouse Worker."[9] The job description made no distinction between a 'Day' or 'Night' shift.  This job description, which was discussed at the August 19, 2020 IDC, lists tasks performed by a variety positions in the Warehouse and does not list any specific tasks which would be determined by time of day, or by facility location.[10]  In fact, when asked which tasks Plaintiff performed on the job description, Plaintiff testified that he performed several tasks listed in the job description while holding multiple positions within the Warehouse (including forklift driver, shipper, and item picker).  Plaintiff also testified as to his knowledge of tasks assigned and performed by other varied positions such as 'Receivers', 'Sales Representatives' and 'Inventory.' Each of these positions similarly had generic tasks which were listed on the 'Warehouse Worker' job description.

Declarations from other workers interviewed by Plaintiff demonstrate that Warehouse Workers from the day[11] and night[12]  shifts at the Union City facility performed the same duties performed by Plaintiff. Despite working in different job positions, their declarations substantiate that they performed the same tasks that Plaintiff testified to performing, and which are listed in the generic Warehouse Worker job description. A sample of these tasks include (non-exhaustive):

---

[9] "Q: Okay. So looking at Exhibit 1, it says, "Job title, warehouse worker." Do you see that?

A: Yes."

[10] Despite counsel's insistence that CWWC has always maintained separate job descriptions for 'Day' and 'Night' shifts, CWWC did not provide Plaintiff with separate Day or Night Warehouse Worker job description, either in discovery or at Plaintiff's deposition, even though it would be responsive to Plaintiff's discovery and Plaintiff was asked about the night shift duties during his deposition.

[11] True and correct copy of the Declaration of Mr. Bryce Tuttle is attached hereto as Exhibit "B."

[12] True and correct copy of the Declaration of Mr. Raymond Pinkston is attached hereto as Exhibit "C."

- "[r]eads customer order to determine items to be moved, gathered, or distributed";
- "[c]onveys materials and items from receiving areas to storage or to other designated areas";
- "[s]orts and places materials or items on racks, shelves, or in bins according to predetermined sequence or bar code";
- "[s]orts perishable goods in refrigerated rooms";
- "[a]ssembles customer orders from stock and places orders on pallets";
- "[s]weeps and cleans warehouse area";
- "[e]nsure[s] outbound shipments are accurate and free of damage;"
- "[r]eport[s] quality variances to supervisor"; and,
- "repair[s] pallets when necessary."

As such, Plaintiff's job duties were, and are not, as isolated or dissimilar as CWWC has indicated to this Court.  Instead, tasks Plaintiff performed in the course of his employment were universal to CWWC's Warehouse Workers -- all shifts and all locations in California. However, as described herein, notwithstanding any difference in job duties, evidence collected to date suggests that Defendant's companywide policies and practices resulted in, *inter alia*, the failure to pay meal period premiums, provide duty free rest periods, pay all vested vacation pay, and timely pay all wages owed upon resignation and/or termination of employment.

### (b)   Discovery Pertaining to Plaintiff PAGA Claims Should Not be Limited to a Single Location or Employee Sub-group

Unlike Rule 23(a), PAGA contains *no* requirements of numerosity, commonality, or typicality. *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117,1122-23 (9th Cir. 2014)(emphasis added). Thus, even where class action treatment is inappropriate, the same claims may proceed on a representative

basis under PAGA. *See, e.g., Rix v. Lockheed Martin Corp.*, No. 09cv2063
MMA (NLS), 2012 WL 13724, *4 (S.D. Cal. Jan. 4, 2012) (denying class
certification but allowing PAGA claims to proceed given the reasonable
possibility that plaintiff could litigate a PAGA claim); *Jordan v. NCI Group,
Inc.*, No. EDCV 16-1701 JVS (SPx), 2017 WL 1821122, *5 (C.D. Cal. March
22, 2017) (denying motion for class certification, but refusing to dismiss PAGA
claims because there is no manageability requirement in PAGA cases).

Further, and as discussed by the Court in *Huff v. Securitas Security
Services USA*, 23 Cal.App.5th 745, 755-56 (2018), PAGA affords a Plaintiff
standing to pursue penalties for Labor Code violations he or she has not
personally suffered, explaining:

> The proposition that PAGA allows an employee to pursue penalties
> only for the type of violation he or she has suffered is directly at odds
> with the provision that an action may be brought by an employee
> against whom 'one or more' of the alleged violations was
> committed…. Had the Legislature intended to limit the recovery of a
> PAGA plaintiff suing in a representative capacity to only the penalties
> for employees affected by the same Labor Code violation as the
> plaintiff, it would have said so in the statute. Indeed, the Legislature
> did make such a distinction in section 2699, subdivision (h), which
> prohibits an employee from bringing a PAGA claim when state
> authorities have already taken action against an employer for the same
> violation…We find it significant that the Legislature did not use
> similar limiting language regarding what violations can be pursued
> by an aggrieved employee when, as in this case, state authorities do
> not take enforcement action.

*Id.* at 755-56 (emphasis added).[13]   In this regard, Defendant's rationale for

_____

[13] A majority of courts prior to *Huff*, have also held that PAGA requires
only that "at least one [of the alleged] violations have been committed against
the representative PAGA plaintiff." *Rope v. Auto-Chlor System of Washington,
Inc.*, 220 Cal.App.4th 635, 651 n.7 (2013) (superseded by statute on another
ground) ("PAGA requires that the representative plaintiff establish that the
employer has committed the Labor Code violations for which recovery is sought
against the aggrieved employees. At least one violation must have been
committed against the representative plaintiff.") (emphasis added); *Holak v. K
Mart Corp.*, No. 1:12-cv-00304-AWI-MJS, 2015 WL 2384895, at *5 (E.D. Cal.
May 19, 2015) ("By the plain language of the statute, an aggrieved employee
need only suffer one of the Labor Code violations alleged against his or her
employer to be able to bring a PAGA claim on behalf of himself or herself and
current or former employees who suffered any Labor Code violation at the hands
of the employer. Plaintiff need not have actually suffered all of the Labor Code

1  limiting the scope of discovery to a single location and/or shift is unavailing and

2  any parallel limitation on the scope of discovery related to Plaintiff's PAGA

3  claims during the PAGA period (May 13, 2018 to the present) lacks legal

4  justification.

5        (c)    **Defendant's Release Agreements Have No Impact**

6              **on the Inclusion of Aggrieved Employees in this**

7              **Discovery order or this Action**

8        Defendant has sought to limit Plaintiff's discovery to exclude those

9  employees who purportedly signed releases despite the fact that the releases are

10  not before the Court and have not been put into evidence. Indeed, CWWC has

11  refused to provide any information or documentation concerning employees who

12  have purportedly signed its Release Agreement, regardless if the employee was

13  included in this action as a non-party Aggrieved Employee under Plaintiff's

14  PAGA claims.  CWWC has instead insisted that its Release Agreements provide

15  a blanket shield from all liability for all of Plaintiff's claims, including PAGA.

16  Defendant CWWC is wrong.

17        Recently in *Kim v. Reins Int'l California, Inc.*, 9 Cal.5th 73

18  (2020)("*Reins*"), the California Supreme Court specifically rejected the notion

19  that employers could reduce their aggregated liabilities under PAGA by settling

20  with individual employees, stating:

21        Section 2699, subdivision (f)(2) calculates the amount of civil
      penalties based on the number of violations per pay period "for each

22        aggrieved employee." If plaintiffs who settle individual claims are no
      longer considered "aggrieved employees," as Reins asserts, violations

23        against them would no longer be included in this calculation. As a
      result, the state's recovery in future PAGA suits, or through its own

24        suit, would be diminished. ***Employers could potentially avoid paying***
      ***any penalties to the state simply by settling with the individual***

25        ***employees. And these individual settlements would not be subject to***
      ***the safeguards of PAGA settlements, which require notice to the***

26

27  _____

28  violations that she alleges to have taken place for purposes of seeking PAGA
penalties.") (emphasis added).

**LWDA and court oversight.** (See § 2699, subd. (l)(2).)

> Additionally, because section 2699, subdivision (i) provides that 25 percent of civil penalties recovered are to be distributed to "aggrieved employees," plaintiffs who settle individual claims would not be eligible to receive a share of penalties, even if their settlements specifically excluded compensation for civil penalties that would otherwise be due. Thus, beyond considerations of standing, Reins's interpretation would allow employers to reduce their liability for civil penalties, without state oversight and contrary to PAGA's goal of strengthening Labor Code enforcement.

*Id.* at 88 (citing *Arias v. Superior* Court, 46 Cal.4th 969, 980 (2009)) (emphasis added). The California Supreme Court maintained that granting employers, like Defendant CWWC, to privately and individually reduce their aggregate amount of civil penalties, would undermine PAGA's explicit goal of strengthening Labor Code enforcement.

Defendant CWWC is incorrectly taking the position that it can and has avoided any civil penalties due for any Labor Code violations with regard to any Aggrieved Employee that signed its Release Agreement.  To enforce these Release Agreements in that manner however would be contrary to California law and would directly undermine PAGA's explicit goal of deterring Labor Code violations through the imposition of civil penalties. The Legislature intended for PAGA's civil penalties to be "significant enough to deter violations." *Iskanian v. CLS Tranportation Los Angeles LLC,* 59 Cal.4th 348, 379 (2014) (*quoting* Sen. Judiciary Com., Analysis of Sn. Bill No. 796 (Reg.Sess.2003-2004) as amended Apr. 22, 2003, p.5.)  To further that end, PAGA even imposes civil penalties for Labor Code violations for which no penalty was previously provided. Labor Code §2699, subd. (f)(2).) If Defendant has committed *any* violations against *any* Aggrieved Employee that signed a Release Agreement, those violations must be counted and aggregated with other violations in order for the imposition of civil penalties to have any deterrent effect.

Furthermore, allowing Defendant to avoid liability, or here discovery, for those Aggrieved Employees who signed Release Agreements would also directly

violate PAGA itself by circumventing the statute-provided governmental oversight of PAGA settlements.  As the California Supreme Court acknowledged in *Reins*, PAGA has specific settlement requirements. *Reins, supra*, 9 Cal.5th at 88.  First and foremost, only individuals who have been deputized by the State of California to prosecute claims under the PAGA have the authority (i.e. standing) to settle the asserted claims.  Labor Code § 2699.3; *see also Williams v. Super. Ct.*, 3 Cal.5th 531, 545-546 (2017) [to pursue a PAGA claim a plaintiff must first exhaust the administrative remedies specified in Labor Code § 2699.3]; *Correia v. B.B. Baker, Electric, Inc.*, 32 Cal.App.5th 602-621-622 (2019) [if notice is never provided to the California Labor and Workforce Development an individual never acquires standing]; *Caliber Body Works, Inc. v. Super. Ct.*, 134 Cal.App.4th 365, 376 [same]. Here, the only individual who has been granted authority to settle claims on behalf of the State of California as against CWWC is Plaintiff Richard Trujillo.  As established by the *Reins* court, the statute requires that any settlement of claims under PAGA be submitted to the LWDA, be approved by the court, and that a portion of the settlement be shared with the LWDA and other aggrieved employees. Labor Code §§ 2699(i), 2699(l)(2); *Reins, supra*, 9 Cal.5th at 88. Here, although the Release Agreements purport to settle the representative claims of each Aggrieved Employee, none of the individual release agreements have been submitted to the LWDA, been approved by a Court, nor do they provide that any portion of the settlement be shared with the LWDA.

In light of *Reins*, as well as the plain language of the statute, Defendant's individual Release Agreements will not shield CWWC from liability under PAGA. Rather, the individual Release Agreements only serve to demonstrate that Defendant is fully aware of the significant liability it faces in regards to Plaintiff's PAGA claims.

2.    **Plaintiff's Special Interrogatory No. 1**

Plaintiff seeks an order compelling a full response to Interrogatory No. 1:

Set forth the full name, employment position(s), last known home address, and last known telephone numbers, including but not limited to, home telephone numbers and cellular telephone numbers, of each and every COVERED EMPLOYEE who was employed by DEFENDANT during the RELEVANT TIME PERIOD.[14]

CWWC's Objections to No. 1:

Defendant incorporates by reference the Preliminary Statement and General Objections stated above as though fully stated herein. Defendant objects that this Interrogatory is overly broad with respect to the defined term "DEFENDANT." Defendant construes "DEFENDANT" to solely mean CWWC, which was Plaintiff's employer. Defendant further objects that this Interrogatory is overly broad with respect to the defined term "COVERED EMPLOYEES." Defendant construes "COVERED EMPLOYEES" to mean all of CWWC's non-exempt hourly paid employees (excluding Drivers and Driver Trainers) who were employed in the same position as Plaintiff in the City of Industry, California from July 22, 2015 to the present. Defendant further objects to this Interrogatory on the grounds that it seeks information protect by the constitutional right of privacy set forth at Article I, Section I of the California Constitution to the extent it seeks private information about persons other than Plaintiff. Defendant further objects that this Interrogatory is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on the ground that it is premature because Plaintiff has not provided putative aggrieved employees with a judicially approved written notice that informs such employees that they have the right to opt-out from having their information disclosed. Defendant further objects to this Interrogatory as unduly burdensome, oppressive, and harassing, including by purporting to seek information regarding all non-exempt hourly-paid employees of Defendant (excluding Drivers and Driver Trainers) who work or worked in California.    Defendant further objects that this Interrogatory is overly broad, unduly burdensome, oppressive, and harassing in light of the burden of obtaining the information and value of the information sought.    Defendant further objects to this Interrogatory to the extent Plaintiff seeks information regarding individuals who have released their claims against Defendant or who have signed class action waivers.

Plaintiff is entitled to contact information for the **entire** class as alleged in

---

[14] As discussed the August 19, 2020 IDC, Plaintiff will be propounding a revised version of SROG No. 1 to Defendant.  Plaintiff's revised version will retain the same language but add a request for employment dates pursuant to a compromise regarding RFP No. 28.

the operative complaint-and which by concession has now been limited to
CWWC warehouse workers in California. Among other things, the names and
contact information of the prospective class members is discoverable pre-
certification, because "[contact with prospective class members] could lead to
the discovery of admissible evidence relevant to the class certification issue."
*Babbitt v. Albertson's, Inc*., No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS
19091, at *16-17 (N.D. Cal. Dec. 1, 1992) (granting motion to compel identities
of 40,000 prospective class members in employment discrimination class action).

Particularly in wage and hour class actions such as this one, federal courts
have consistently recognized that prospective class members are essential
witnesses. *See, e.g., Ho v. Ernst & Young, LLP*, No. C05-04867 JF (HRL), 2007
U.S. Dist. LEXIS 37700, *3 (N.D. Cal. May 9, 2007) ("contact information is
relevant to both the merits and class certification"); *Wiegele v. FedEx Ground
Package Sys*., No. 06-CV-0130-JM (POR), 2007 U.S. Dist. LEXIS 9444 at *5
(S.D. Cal. Feb. 8, 2007) ("the Magistrate Judge [properly] determined that
putative class members possess relevant discoverable information concerning
issues dealing with Plaintiff's wage and hour claims, as well as class certification
issues"); *Sanbrook v. Office Depot*, No. C 07-5938 RMW (PVT), 2009 U.S. Dist.
LEXIS 30852, *2 (N.D. Cal. Mar. 30, 2009); *Jimenez v. Domino's Pizza, LLC*,
No. SACV 04-1107-JVS (RCx), 2006 U.S. Dist. LEXIS 66510 (C.D. Cal. Jan.
13, 2006); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 565 (C.D. Cal. 2007); *York v.
Starbucks Corp*., No. CV 08-7919-GAF (PJWx), 2009 U.S. Dist. LEXIS 92274,
*2-*5 (C.D. Cal. Jun. 30, 2009).

Likewise, the California state courts, including the state's Supreme Court
– and despite Defendant's claims of non-relevance – have universally held that
putative class member contact information is essential for supporting class
certification motions and is thus indisputably discoverable. "We recognize that
in a particular case there may be special reason to limit or postpone a

representative plaintiff's access to contact information for those he or she seeks to represent, but the default position is that such information is within the proper scope of discovery, an essential first step to prosecution of any representative action." *Williams v. Superior Court*, 3 Cal. 5th 531, 543-44 (2017) (opining on representative PAGA actions, but referencing class action principles) (citing *Puerto v. Superior Court*, 158 Cal. App. 4th 1242 (2008); *see also Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 373 (2007) (in class actions, "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case"); *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554, 562 (2007) ("The current and former employees are potential percipient witnesses to Belaire-West's employment and wage practices, and as such their identities and locations are properly discoverable."); *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1249 (2008) ("Central to the discovery process is the identification of potential witnesses").

The California Second Appellate District took even a stronger position that disclosure of contact information despite objections from class members is necessary for litigating class actions. *Alch v. Superior Court*, 165 Cal. App. 4th 1412 (2008). *Alch* provided that in addition to the contact information at issue in *Pioneer*, *Belaire-West*, and *Puerto* litigants were also entitled to the identity of specific employers, job titles, periods of employment, credits, and awards. *Alch*, 165 Cal. App. 4th at 1433.

Due to the overwhelming and prevailing authority on this issue, it remains the position of Plaintiff that if the Court adopts its stated position regarding the scope of the 'class', a more expansive contact information list will still be required for the aggrieved employees who would be subject to Plaintiff's claims under PAGA.

In addition, it matters not to Plaintiff whether the production of the

1   contact information is obtained through either a *Belaire-West* notice or pursuant

2   to the Parties' already filed and signed Stipulated Protective Order.  *Belaire-West*

3   *Landscape, Inc. v. Superior Court,* 149 Cal.App.4th 554 (2007). However, if

4   CWWC insists that a *Belaire-West* notice be sent out to all putative class

5   members when such a notice is not required by applicable precedent[15], then

6   CWWC must be ordered to split the cost associated with the dissemination of the

7   notice, as is common practice in both class action and PAGA enforcement

8   litigation.[16]

9           **3.      Plaintiff's Requests for Production of Documents, Nos. 5,**

10                 **6, and 30**

11          Plaintiff also seeks an order compelling a supplemental response and the

12   production of responsive documents to Request for Production No. 5:

> TIMEKEEPING DATA for all COVERED EMPLOYEES during the
> RELEVANT TIME PERIOD.   [This Request does not seek the
> identity of any COVERED EMPLOYEE or information linking the
> identity of any COVERED EMPLOYEE to the time data requested
> (such information may be redacted).  However, PLAINTIFF does not
> waive his right to seek such information at a later date.  This Request
> specifically seeks TIMEKEEPING DATA in an Excel-readable and
> searchable database, or another electronic searchable database or
> native format. Producing the TIMEKEEPING DATA in searchable
> PDFs is not an acceptable format.  Although this Request does not
> seek the identities of COVERED EMPLOYEES, it does seek
> sufficient identification information (e.g. employee identification

---

[15] *Crab-Addison v. Superior Court*, 169 Cal. App. 4th 958, 974-75 (2008)(trial court acted appropriately when compelling class list in wage-and-hour action without notice being sent); *Bell v. Delta Air Lines, Inc.*, 2014 WL 985829 at *4 (N.D. Cal. 2014) ("The court also finds that a standard protective order should be sufficient to protect the Proposed Class members' privacy rights in their contact information. An opt-out procedure is not necessary in this context.") (citing *Benedict v. Hewlett-Packard Co.*, 2013 WL 3215186 at *2-3 (N.D. Cal. 2013)); *Putnam v. Eli Lilly and Co*, 508 F. Supp. 2d 812, 814 ("a protective order can strike the appropriate balance between the need for information and privacy concerns."); *Wiegele v. FedEx Ground Package Sys.*, 2007 WL 628041 at *4 (contact information ordered produced subject to protective order).

[16] In *Williams v. Superior Court*, 3 Cal. 5th 531, 555 (2017), the California Supreme Court specifically found that the employer's objection based a serious invasion of privacy was absent where the Plaintiff "was willing to accept as a condition of disclosure, and **share the costs of**, a *Belaire-West* notice[.]"

number, etc.) to correlate the clock-in and clock-out times with the corresponding PAYROLL DATA produced in response to these requests.]

Plaintiff also seeks an order compelling a supplemental response and the production of responsive documents to Request for Production No. 6:

PAYROLL DATA for all COVERED EMPLOYEES during the RELEVANT TIME PERIOD. [This Request does not seek the identity of any COVERED EMPLOYEE or information linking the identity of any COVERED EMPLOYEE to the payroll data requested (such information may be redacted). However, PLAINTIFF does not waive his right to seek such information at a later date. This Request specifically seeks PAYROLL DATA in an Excel-readable and searchable database, or another electronic searchable database or native format. Producing the PAYROLL DATA in searchable PDFs is not an acceptable format. Although this Request does not seek the identities of COVERED EMPLOYEES, it does seek sufficient identification information (e.g. employee identification number, etc.) to correlate the payroll data with the corresponding clock-in and clock-out times and TIMEKEEPING DATA produced in response to these requests.]

Plaintiff also seeks an order compelling a supplemental response and the production of responsive documents to Request for Production No. 30:

All itemized WAGE STATEMENTS for COVERED EMPLOYEES during the period of time commencing one (1) year prior to the filing of the COMPLAINT to the present. [This Request does not seek the identity of any COVERED EMPLOYEE or information linking the identity of any COVERED EMPLOYEE to the WAGE STATEMENT requested (such information may be redacted). However, PLAINTIFF does not waive his right to seek such information at a later date. Although this Request does not seek the identities of COVERED EMPLOYEES, it does seek sufficient identification information (e.g. employee identification number, etc.) to correlate the WAGE STATEMENTS with the corresponding TIMEKEEPING DATA and PAYROLL DATA produced in response to Plaintiff Richard Trujillo's Requests For Production of Documents to Defendant The Chefs' Warehouse, Inc., Set One.]

Defendant's objections to RFP No. 5, No. 6 and RFP No. 30 are as follows:

No. 5:

Defendant incorporates by reference the Preliminary Statement and General Objections stated above as though fully stated herein. Defendant objects that this Request is overly broad with respect to the defined term "COVERED EMPLOYEES." Defendant construes "COVERED EMPLOYEES" to mean all of CWWC's non-exempt hourly paid employees (excluding Drivers and Driver Trainers) who were employed in the same position as Plaintiff in the City of Industry, California from July 22, 2015 to the present. Defendant

further objects on the ground that the Request is unduly burdensome and oppressive, including to the extent that it exceeds the permissible scope of discovery by seeking electronically stored information from a source that is not accessible because of undue burden or expense. Defendant further objects to this Request to the extent it calls for the production of confidential or proprietary information absent entry of a mutually agreeable protective order.  Defendant further objects to this Request on the grounds that it seeks information protected by the constitutional right of privacy set forth at Article I, Section I of the California Constitution to the extent it seeks private information about persons other than Plaintiff.  Defendant further objects to this Request as unduly burdensome, oppressive, and harassing, including by purporting to seek information regarding all non-exempt hourly-paid employees (excluding Drivers and Driver Trainers) of Defendant who worked or worked in California.  Defendant further objects to this Request to the extent Plaintiff seeks information regarding individuals who have released their claims against Defendant or who have signed class action waivers.

Subject to and without waiving the foregoing objections and limiting this Request to Plaintiff, Defendant responds as follows: Defendant will produce its time records for Plaintiff during the relevant time period.

No. 6:

Defendant incorporates by reference the Preliminary Statement and General Objections stated above as though fully stated herein. Defendant objects that this Request is overly broad with respect to the defined term "COVERED EMPLOYEES." Defendant construes "COVERED EMPLOYEES" to mean all of CWWC's non-exempt hourly paid employees (excluding Drivers and Driver Trainers) who were employed in the same position as Plaintiff in the City of Industry, California from July 22, 2015 to the present.  Defendant further objects on the ground that the Request is unduly burdensome and oppressive, including to the extent that it exceeds the permissible scope of discovery by seeking electronically stored information from a source that is not accessible because of undue burden or expense. Defendant further objects to this Request to the extent it calls for the production of confidential or proprietary information absent entry of a mutually agreeable protective order.  Defendant further objects to this Request on the grounds that it seeks information protected by the constitutional right of privacy set forth at Article I, Section I of the California Constitution to the extent it seeks private information about persons other than Plaintiff.  Defendant further objects to this Request as unduly burdensome, oppressive, and harassing, including by purporting to seek information regarding all non-exempt hourly-paid employees (excluding Drivers and Driver Trainers) of Defendant who worked or worked in California.  Defendant further objects to this Request to the extent Plaintiff seeks information regarding individuals who have released their claims against Defendant or who have signed class action waivers  Subject to and without waiving the foregoing objections and limiting this Request to Plaintiff, Defendant responds as follows: Defendant will produce its wage statements/payroll records to the extent they are in Excel or an

otherwise searchable format for Plaintiff

No. 30:

Defendant incorporates by reference the Preliminary Statement and General Objections stated above as though fully stated herein. Defendant objects that this Request is overly broad with respect to the defined term "COVERED EMPLOYEES." Defendant construes "COVERED EMPLOYEES" to mean all of The Chefs' Warehouse West Coast, LLC's ("CWWC") non-exempt hourly paid employees (excluding Drivers and Driver Trainers) who were employed in the same position as Plaintiff in the City of Industry, California from July 22, 2015 to the present. Defendant further objects on the ground that the Request is unduly burdensome and oppressive, including to the extent that it exceeds the permissible scope of discovery by seeking electronically stored information from a source that is not accessible because of undue burden or expense. Defendant further objects to this Request to the extent it calls for the production of confidential or proprietary information absent entry of a mutually agreeable protective order. Defendant further objects to this Request on the ground that the undefined phrase "sufficient identification information (e.g. employee identification number, etc.) to correlate the WAGE STATEMENTS with the corresponding TIMEKEEPING DATA and PAYROLL DATA" is vague and ambiguous. Defendant further objects to this Request on the grounds that it seeks information protected by the constitutional right of privacy set forth at Article I, Section I of the California Constitution to the extent it seeks private information about persons other than Plaintiff. Defendant further objects to this Request as unduly burdensome, oppressive, and harassing, including by purporting to seek information regarding all non-exempt hourly-paid employees (excluding Drivers and Driver Trainers) of Defendant who worked or worked in California. Defendant further objects to this Request to the extent Plaintiff seeks information regarding individuals who have released their claims against Defendant or who have signed class action waivers.

Subject to and without waiving the foregoing objections and limiting this Request to Plaintiff, Defendant responds as follows: Defendant will produce its wage statements/payroll records.

### (a)    Plaintiff is Entitled to Timekeeping Data

Class-wide timekeeping data is routinely held discoverable in wage and hour labor litigation prior to certification. See *Romo*, *supra*, 2013 WL 11310656 at *5 (C.D. Cal., Jan. 25, 2013) ("Perhaps the most critical information Plaintiff seeks are wage (wage statements)/payroll and time (daily time sheets) records"); *Ho v. Ernst & Young, LLP,* No. C05-04867, 2007 WL 1394007 at *1 (N.D. Cal. May 9, 2007) (ordering production of all time and activity records pre-certification as relevant to plaintiff's class claims); *Arredondo v. Southwestern &*

*Pacific Specialty Finance, Inc.*, 2019 WL 6128657 at *7 (E.D. Cal. 2019)(compelling pre-certification discovery for "timekeeping, payroll, and wage information" as relevant to numerosity, commonality, and typicality); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal 2007)(finding wage, time, and break records would "certainly" assist in showing numerosity and commonality in case for unpaid overtime and meal and rest break wages).

Timekeeping data is essential to Plaintiff's evaluation and preparation of his Motion for Class Certification as well as to substantiation of the claims under PAGA. Timekeeping allows the Plaintiff to analyze the number and frequency of violations for the employees as a whole. This information will establish commonality, preponderance and typicality. Class-wide timekeeping data will provide substantial evidence that Plaintiff was not the only employee to incur various violations. This information will also assist Plaintiff in rebutting CWWC's anticipated arguments concerning Plaintiff's typicality—most notably due to his scheduled hours and assigned tasks.

### (b)    Plaintiff is Entitled to Payroll Data and Wage Statements

Class-wide payroll data and wage statements are both routinely held discoverable in wage and hour labor litigation prior to certification. *Romo*, *supra*, 2013 WL 11310656 at *5; *Ho, supra,* 2007 WL 1394007 at *1; *Arredondo.*, *supra,* 2019 WL 6128657 at *7 (compelling both payroll data and wage statements); *Hill*, *supra,* 242 F.R.D. at 562.

Payroll data and wage statements are both essential to Plaintiff's Motion for Class Certification. Payroll data will be used to establish commonality and typicality of Plaintiff's meal, rest, and compensation claims. Plaintiff's experts will use CWWC's payroll data in concert with CWWC's timekeeping data to establish the number and frequency of compensation violations across the class. To this end, Plaintiff's experts require a Microsoft Excel-friendly document to

accurately and effectively assess the violations without incurring overwhelming litigation costs. Producing this information in any other format other than a Microsoft Excel-friendly document, renders the payroll information useless to Plaintiff's experts.  When, on the rare occasion that a defendant has been unable to produce payroll data in a Microsoft Excel-friendly document, Plaintiff's counsel has been required to pay thousands in costs and fees to create a Microsoft Excel document.  Plaintiff's counsel has previously had to hire companies and commit time from support staff to review thousands of documents and input the relevant information into Microsoft Excel-friendly files to eventually be combined into one document.  However, this undue burden is easily remedied if CWWC exports and produces this documentation in a Microsoft Excel-friend format that either it or ADP currently possesses.  For example, Plaintiff's counsel has encountered ADP as a defendant's payroll service before, and ADP has been able to export payroll data into a Excel-friendly format.

In contrast, yet equally important, are the wage statements. Wage statements serve a distinctly different purposes than payroll data  based upon the information gleaned from each.  Plaintiff will be using CWWC's wage statements to determine compliance with Cal. Labor Code section 226, and to demonstrate whether the employee vested vacation pay was properly paid at the time of termination.  Payroll data, typically, does not report the number of accrued vested vacation hours earned in each pay period.  CWWC's wage statements, on the other hand, not only report the amount of vested vacation hours earned each pay period, but also display the balance or total amount accrued or remaining (if hours were used) as of that pay period.  Plaintiff alleges that, when an employee left CWWC, CWWC only paid the amount of vested vacation accrued as of the pay period prior to the employee's final paycheck, and not the amount of vested vacation actually accrued through the employee's final

1   day.  As such, Plaintiff requires the second-to-last and the last wage statement of

2   each former Covered Employee in order to establish the commonality and

3   typicality of CWWC's failure to pay all earned vested vacation wages.

4   **B.   Defendant's Position**

5   **1.   The Scope of Discovery Is Properly Limited to Day**

6   **Warehouse Workers at CWWC's City of Industry**

7   **Location**

8   Plaintiff advocates for the application of a general relevancy standard, but

9   this standard does **not** apply to the pre-certification, class-wide discovery he

10  seeks.  In interpreting Rule 23, the Ninth Circuit has held that pre-class

11  certification discovery on a class-wide basis is not permissible **unless** the

12  plaintiff can show that the discovery is likely to substantiate class allegations.

13  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("[P]laintiff bears the

14  burden of advancing a prima facie showing that that class action requirement of

15  Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce

16  substantiation of the class allegations").  Here, Plaintiff fails to make a prima

17  facie showing of class action requirements, and Plaintiff's conclusory argument

18  that discovery is likely to substantiate the class allegations is unconvincing. *See*

19  *Dittmar v. Costco Wholesale Corp.*, No. 14-CV-1156 LAB (JLB), 2016 WL

20  7188231, at *2 (S.D. Cal. Dec. 12, 2016) ("Absent some factual basis for a

21  plaintiff's claims that a defendant's allegations are class-wide, plaintiffs are not

22  entitled to class-wide discovery, and the plaintiff cannot rely on the bare

23  allegations of the complaint to support class-wide discovery").

24  The cases cited by Plaintiff do not support Plaintiff's assertion that the

25  scope of discovery should extend beyond Day Warehouse Workers at the City of

26  Industry location or that Plaintiff is not required to make an initial showing of

27  proof to support his class allegations.

28

- *Doninger v. Pacific Northwest Bell, Inc.* upheld the trial court's denial of class certification. The *Doninger* court held that the lower court's denial of discovery was not an abuse of discretion because, like here, the plaintiff failed to make a *prima facie* showing of Rule 23's prerequisites to obtain discovery.

- *Edwards v. The First Am. Corp.* was a class action by a homeowner against a title insurance company and its parent company which alleged that the defendants engaged in a national scheme to receive exclusive referral agreements. *Edwards* is not a wage and hour case and no such scheme is at issue here (nor is nationwide discovery sought).

- *Talavera v. Sun Maid Growers of California* involved allegations that employees were not properly compensated for donning and doffing, which may be more amenable to class certification than Plaintiff's highly individualized claims that his breaks were interrupted by his supervisor because his supervisor wanted him to help customers.

- *Kress v. Price Waterhouse Coopers* was an unpublished decision in the Eastern District, and is thus not binding authority in this matter. Further, it involved a single special interrogatory request for the contact information of a single specific group of employees (senior associates) from the single entity that formerly employed plaintiffs. The plaintiff did not seek contact information of employees who did not hold her same position.

Plaintiff's motion to compel should be denied as disproportionate to the needs of the case at this time. *See* Fed. R. Civ. P. 26(b)(1).

### (a)   Plaintiff Is Not Entitled To Discovery Beyond the Facility Where He Worked

Plaintiff is not entitled to discovery beyond the City of Industry location where he worked. During his deposition, he testified that he **never** worked at the Northern California location. Trujillo Depo., p. 129:7-9. He also confirmed that he never even spoke to any employees at the Northern California location. Trujillo Depo., p. 129:10-13.  Therefore, Plaintiff has absolutely no knowledge of any of the wage and hour practices as to any employees outside of City of Industry.

Plaintiff essentially assumes that because he allegedly took meal breaks late or performed work after he clocked out, the same practices must have occurred at CWWC's other California facilities.  This is pure speculation and is insufficient to meet Plaintiff's burden to show that he is entitled to discovery

beyond the location where he worked.  Plaintiff also incorrectly argues that the mere existence of common policies entitles him to discovery at both of CWWC's California locations.  The fact that CWWC had company-wide policies does not entitle Plaintiff to discovery at locations outside of the one he worked.  Rather, Plaintiff must show that company-wide *violations* exist.  Courts have held in similar cases that limitations on location are appropriate. *See Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) ("Because Plaintiff has failed to produce any evidence of company-wide violations, and Defendant admittedly has produced contrary evidence showing company-wide policies consistent with California law, there is no basis at this time to require discovery beyond the Irvine facility where Plaintiff worked"); *Franco v. Bank of America*, 2009 U.S. Dist. LEXIS 111873 (S.D. Cal. Dec. 1, 2009); *Martinet v. Spherion Atl. Enters., LLC.*, 2008 WL 2557490 (S.D. Cal. June 20, 2008) (limiting discovery to offices where plaintiff worked due to plaintiff's failure to provide evidence of company-wide violations); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D.Col.1998) (denying plaintiff's request for discovery from other offices where evidence did not substantiate plaintiff's allegations that class extended beyond the local office; stating "[c]lass plaintiffs are not permitted to send notices to prospective members of a class if the only evidence of a class action consists of the bare allegations of the complaint, or of counsel"); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *9 (S.D. Cal. June 12, 2013) (determining that discovery beyond the locations where plaintiff worked was not permissible due to lack of company-wide violations where she testified that she was instructed by her supervisor to work off the clock).

The supposed evidence that Plaintiff has provided does not support his argument for expansive discovery beyond the location where he worked. As to the policies that have been produced, these are **legally compliant**, and counsel for Plaintiff (Mr. Ozzello, specifically) expressly admitted this during the

Parties' August 19, 2020 IDC.  In a desperate attempt to create non-compliance where none exists, Plaintiff constructs a weak argument that has no basis in law by arguing that CWWC's rest period policy fails to authorize a duty free rest period because it does not explicitly state that employees can take rest breaks off premises.  Plaintiff fails to cite to any case law to support this argument (because there is none), and instead cites case law for the proposition that an employer cannot command or restrain an employee from leaving the workplace.  However, as is made apparent from the policy that Plaintiff quotes, there is no such restraint mentioned in the rest break provision. Moreover, Plaintiff has not alleged that he was unable to leave the warehouse during his rest breaks.

Moreover, the declarations that Plaintiff submits do not demonstrate that any company-wide violations exist. Both Raymond Pinkston's[17] and Bryce Tuttle's[18] declarations[19] state that they took their meal breaks after the fifth hour of work, but they do not indicate that they were required by CWWC to do so, and they do not otherwise suggest that the ability to take a meal period prior to the fifth hour was not provided to them.  As for their claims that their meal or rest periods were interrupted, they indicate that an individual supervisor at the Union City location caused the interruptions, but they do not provide any context for how or why the breaks were interrupted.  Richard Trujillo, by contrast, was only ever supervised by Denis Corea and Jesus Huerta, and he alleges that they were the only two individuals who interrupted his breaks. Trujillo Depo., p. 99:3-106:23. He alleges that they interrupted him because customers needed assistance with their orders. Mr. Corea and Mr. Huerta were employed solely in

---

[17] Mr. Pinkston is a Night Warehouse Worker at the Union City location.

[18] Mr. Tuttle is a Day Warehouse Worker at the Union City location.

[19] Neither Mr. Pinkston nor Mr. Tuttle were disclosed as percipient witnesses in Plaintiff's Initial Disclosures; thus, their declarations should be disregarded.

the City of Industry location. Neither Mr. Trujillo, Mr. Corea, nor Mr. Huerta reported to anyone in Union City.

Similarly, although the declarants do not recall taking a second meal period on days where they worked over ten hours, they do not state that CWWC did not provide them with an opportunity to take their meal periods. This is woefully insufficient to show the existence of a company-wide violation.

Mr. Pinkston's declaration also fails to disclose the fact that he has filed a separate action in Alameda County Superior Court[20] alleging the exact same violations that Richard Trujillo alleges in the Complaint at issue here via a single cause of action under PAGA. He is represented in his action by the same counsel who represent Mr. Trujillo in this action. By filing a separate action on behalf of a Night Warehouse Worker at the Union City facility, Plaintiff's counsel concedes that the Union City facility and Night Warehouse Workers should be treated separate and apart from this action. Thus, only Mr. Tuttle's declaration should be considered, and the declaration of a single employee at a different facility is insufficient to show the discovery sought will substantiate Plaintiff's class claims. *See Halloway v. 3M Co*., 2019 WL 7172600, at *6 (C.D. Cal. Oct. 31, 2019) ("[A] declaration of a former employee at a single other facility, whose personal experience is not consistent with the policies at that facility, does not satisfy Plaintiff's burden to provide *persuasive* evidence that further discovery is *likely* to substantiate his class-wide allegations.")

Lastly, the Northern California and Southern California facilities have separate management teams that determine shift modules and break schedules. Aguirre Dec., ¶ 5. Each facility has unique practices that are suited to its operations, but both facilities follow applicable wage and hour law. Notably, the

---

[20] *Raymond Pinkston v. The Chefs' Warehouse West Coast, LLC, et al*., Alameda County Superior Court Case No. RG20061278 (May 11, 2020).

City of Industry facility is much larger in terms of the volume of product that is handled, and it handles more will call orders than the Union City location because it is easier for customers to get to. *Id.* ¶ 6. As such, it employs more personnel. At the Union City location, by contrast, sales people more frequently pick up will call orders and deliver them to customers rather than the customers coming to pick up orders themselves.

**(b)      Plaintiff Is Only Entitled to Discovery As To Day Warehouse Workers**

There are two different types of Warehouse Workers: those who work on the day shift (Day Warehouse Workers), and those who work on the night shift (Night Warehouse Workers). [21] See Declaration of Rodney Aguirre ("Aguirre Dec."), ¶¶ 4, 7. The job duties of Day and Night Warehouse Workers differ in several significant respects. Unlike Day Warehouse Workers, Night Warehouse Workers do not have any interactions with third party logistics companies such as FedEx or UPS, nor do they have any interaction with customers. *Id.* ¶ 11. Day Warehouse Workers also perform different job duties depending on their experience, preferences, and company need. For example, some Day Warehouse Workers are tasked with order selecting, which involves filling same-day orders through the will-call process. One Day Warehouse Worker is assigned to will call on a long term basis. *Id.* ¶ 8. Thus, the same Day Warehouse Worker works in will call from day to day, and it generally does not change. The Day Warehouse Worker who is assigned to will call is the only Day Warehouse Worker who interacts with customers or handles FedEx or UPS package pickup. *Id.* ¶ 10. Will call at the City of Industry closes down completely at 12:00 p.m.

---

[21] Plaintiff has only presented "evidence" from Day Warehouse Workers, and has not presented any argument about any other positions. As such, Plaintiff has not met his burden of proof as to any putative class members who hold or hold a position other than Day Warehouse Worker.

1   every day so that the will call department can take a 30 minute break without

2   interruption. Then, will call closes completely for the rest of the day around 1:00

3   p.m. or 2:00 p.m. *Id.* ¶ 12.

4          During his deposition, Plaintiff confirmed that he never worked the night

5   shift and never worked as a Night Warehouse Worker. Trujillo Depo., p. 133:7-

6   20. He further testified that his managers interrupted his meal and rest breaks and

7   asked him to go help customers "because that was what [his] position required.

8   Trujillo Depo, p. 79:22-81:15; 99:7-101:12; 101:24-103:20. Apart from

9   interruption from customers, there were **no** other reasons why he was not

10  provided with an uninterrupted meal break. Trujillo Depo, p. 86: 4-9. He further

11  claims that he was required to work off the clock because he had to help

12  customers before he left after he had clocked out, or check on UPS or FedEx

13  packages. Trujillo Depo., p. 142:5-22. Given Plaintiff's own undisputed

14  testimony, the inclusion of Night Warehouse Workers within the scope of

15  discovery is inappropriate.  Night Warehouse Workers did not encounter any of

16  the same customer- or carrier-driven issues.

17         Defendant has produced the job descriptions for Day Warehouse Worker

18  and Night Warehouse Worker. Thus, Plaintiff's argument that only a single

19  "Warehouse Worker" description exists is moot. Even if that were the case,

20  common sense dictates that the bases for the alleged violations to which Plaintiff

21  testified do not apply to the Night Warehouse Workers because they are not

22  subject to interruptions from customers (customers do not come to the warehouse

23  after normal business hours). Likewise, UPS and FedEx do not come to the

24  warehouse in the middle of the night either, so Night Warehouse workers are not

25  required to check for packages.

26         The declarations that Plaintiff submits likewise do not support his

27  assertion that Night Warehouse Workers should be included within the scope of

28  discovery. Mr. Pinkston is a Night Warehouse Worker, but he has filed a

1   separate lawsuit in Alademda County Superior Court. The only declaration that

2   should be considered is Mr. Tuttle's, but he is a Day Warehouse Worker.

3          **2.      Plaintiff's PAGA Claim Does Not Entitle Him to Broader**

4                   **Discovery As PAGA Claims in Federal Court Must Meet**

5                   **the Requirements of Rule 23.**

6          The fact that Plaintiff brings a PAGA claim does not entitle him to

7   premature class discovery. PAGA does not address discovery issues, and in any

8   event, this federal court action is governed by federal court discovery rules under

9   the Federal Rules of Civil Procedure, and as interpreted by the Ninth Circuit.

10  *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct.

11  1431,1444 (2010). California federal district courts "have stricken PAGA claims

12  ruling that the third-party representative nature of PAGA claims warrants

13  conformity to the procedural requirements of Rule 23." *Bowers v. First Student,*

14  *Inc.,* 2015 WL 1862914, at *5 (C.D. Cal. Apr. 23, 2015); *see Ivey v. Apogen*

15  *Techs., Inc.*, 2011 WL 3515936, at *3 (S.D. Cal. Aug. 10, 2011) (holding that

16  PAGA "contravenes federal procedural requirements" by not conforming to Rule

17  23); *Fields v. QSP, Inc.*, 2012 WL 2049528, at *5 (C.D. Cal. June 4, 2012)

18  ("PAGA specifically permits recovery for unnamed nonparties.  []  As such, it is

19  a procedural mechanism by which litigants may recover for absent plaintiffs,

20  akin to a class action").

21         This Court should follow the "numerous rulings . . . holding that PAGA

22  claims must comply with Rule 23 guidelines . . . ." *Raphael*, 2015 WL 5680310

23  at *2; *see, e.g., Medlock v. Taco Bell Corp.*, No. 1:07-cv-01314-SAB, 2014 WL

24  4319510, at *8 (E.D. Cal. Aug. 29, 2014) ("Having determined that Rule 23

25  applies to Plaintiffs' PAGA claims, the Court finds that the only PAGA claims

26  that are amenable to class treatment are the PAGA claims arising from the late

27  meal breaks under the California Labor Code.  The Court's order denying

28  certification as to all other classes determined that Plaintiffs' remaining claims

are not suitable for class treatment, and the same reasoning would apply to Plaintiffs' PAGA claims premised upon the same conduct."); *Thompson v. APM Terminals Pac. Ltd.*, No. C 10-00677 JSW, 2010 WL 6309364, at *2 (N.D. Cal. Aug. 26, 2010) ("To the extent Plaintiff here seeks to bring a representative PAGA action on behalf of other non-party, unnamed aggrieved employees in federal court, such a claim must meet the requirements of Rule 23"). Thus, Plaintiff is not entitled to broader discovery by virtue of his PAGA claim.

### 3. The Scope of Discovery Should Exclude Putative Class Members Who Signed Settlement Agreements

Plaintiff argues that because he brings a PAGA claim, the settlement agreements are invalid. Like here, the Plaintiffs in *Robinson v. Chefs' Warehouse West Coast, LLC*, Case No. 3:15-cv-05421-RS, attempted to argue that members of the putative class could not release their PAGA claims via the individual settlements that were entered into with CW. The court rejected that argument and held that the releases that the putative class members executed were effective to extinguish their respective PAGA rights. In particular, since they received settlement payments, these individuals were no longer "aggrieved" such that there would be no basis in law or equity to permit recovery" on their behalf. *See* Dkt. No. 298. Indeed, the law is well-settled that putative class members can release their PAGA claims in exchange for monetary consideration, and no court approval is required. *See Waisbein v. UBS Financial Services, Inc.*, No. C-07-2328 MMC, 2007 WL 4287334, at *3 (C.D. Cal. Dec. 5, 2007); *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562, 589-90 (2010); *Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635, at *3-4 (C.D. Cal. Aug. 10, 2016).

Plaintiff cites to *Kim v. Reins Int'l California, Inc*., 9 Cal.5th 73 (2020) in support of his argument, but cites only to dicta, and in turn obfuscates the Court's actual holding. The issue in *Kim* was whether a plaintiff who settles or

abandons his claim for recovery for Labor Code violations, either brought individually or as a class action under Code of Civil Procedure 382, has standing to litigate a PAGA claim as a representative of the state and pursue penalties on the state's behalf. *Id.* at 80-81. In *Kim*, the plaintiff brought a hybrid class action/PAGA claim. *Id.* at 82-83. His individual claims were submitted to arbitration, and the class claims were dismissed. *Id.* During the arbitration, the employer and plaintiff settled the individual claims through an offer of judgment, not a traditional settlement and release. *Id.* The employer then moved to dismiss the PAGA claims on the grounds that he was no longer an "aggrieved employee" under PAGA because he settled his underlying Labor Code claims. *Id.* The Court's holding was tied to the issue of standing and whether a right to sue exists, and it determined that plaintiff's settlement of his underlying Labor Code claims did not divest him of standing to pursue a PAGA claim. *Id.* at 93. The Court made no determination regarding whether a traditional settlement and release was effective to waive PAGA claims; indeed, PAGA claims were expressly excluded from the offer of judgment at issue in *Kim*. *Id.* at 82-83.

To date, no state or federal court has used the dicta in *Kim* to which Plaintiff cites to invalidate an otherwise properly executed settlement and release of a potential claimant's PAGA claim, and this Court should decline to be the first to do so.

Plaintiff's flawed interpretation of PAGA's statutory scheme and "statute-provided governmental oversight of PAGA settlements makes clear that Plaintiffs' arguments erroneously put the cart before the horse. "To be subject to the [Private Attorneys' General] Act, the employee's cause of action must allege a violation of one of the provisions listed in section 2699.5 (§ 2699.3, subd. (a)) and seek recovery of a 'civil penalty' assessable by the LWDA (§ 2699, subds. (a) & (f))." *Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal. App. 4th 365, 378 (2005), *disapproved on other grounds by ZB, N.A. v. Super. Ct. of San Diego*

1   *Cty.*, 8 Cal. 5th 175 (2019)); *see, e.g.,*  Cal. Lab. Code § 2699.3(a) ("A **civil**

2   **action** by an aggrieved employee [for a PAGA violation] . . . shall commence

3   only after," *inter alia*, notice is provided to the LWDA and the LWDA provides

4   notice of its intent not to investigate or the expiration of the waiting period.)

5   (Emphasis added.); Cal. Lab. Code § 2699(l)(2) ("The superior court shall

6   review and approve any **settlement of any civil action** filed pursuant to this

7   part.") (Emphasis added.).  Here, the Releasors are **not** subject to PAGA notice

8   or settlement requirements because they never filed a civil action alleging a

9   violation of PAGA nor sought "to stand in the shoes of the LWDA and recover

10   civil penalties for labor code violations 'on behalf of himself or herself and other

11   current and former employees.'"  *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184,

12   1192 (E.D. Cal. 2017).

13       The Releasors certainly had the ability to negotiate a settlement of their

14   own respective portions of any potential PAGA claims; that Plaintiff filed a

15   PAGA claim on their behalf does not extinguish this ability. Here in particular,

16   as to the putative class members who signed the *Pick Up Stix* agreement, they

17   made the following acknowledgment:

18       [B]y signing this agreement, you confirm that the Company provided
19       you with all meal and rest periods in accordance with their written
    policy, reimbursed all of your business expenses (including cell
20       phone and mileage expenses), paid you all wages that you earned
    (including overtime and vacation), timely paid you all earned wages
21       upon termination, provided you with accurate wage
    statements/payroll records, and maintained accurate payroll records.
22       You also confirm that you are not an aggrieved employee under
    PAGA.

23       Based on this acknowledgment, those individuals should not be permitted

24   to proceed as aggrieved employees under PAGA. Defendant has complied with

25   its discovery obligations and produced all of the information that Plaintiff needs

26   to make his arguments regarding the validity of the settlement agreements and

27   arbitration agreements by providing the exemplar forms that the Releasors

28   signed.

### 4.   The Scope of Discovery Should Exclude Putative Class Members Who Signed Arbitration Agreements With Class Action Waivers

Plaintiff's motion fails to address the fact that CWWC has provided its employees with the opportunity to sign valid arbitration agreements with class action waivers, and the class action waiver provides the employee with the ability to opt-out. The scope of discovery should exclude those putative class members who did sign such agreements because Plaintiff's claims are not typical of the claims of those individuals, nor is Plaintiff an adequate representative of those individuals. *Avilez v. Pinkerton Government Services, Inc.*, 596 Fed.Appx 579 (9th Cir. 2015) ("[T]hose who signed such waivers have potential defenses that [the named plaintiffs] would be unable to argue on their behalf.") To the extent that Plaintiff argues that the arbitration agreements with class action waiver are unenforceable, Defendant has produced the exemplar of the agreements. As such, Plaintiff has all that he needs to make that argument, and further discovery should not be required.

### 5.   Plaintiff Is Not Entitled to Contact Information for the Entire Putative Class

The scope of Plaintiff's request for contact information of employees at the Defendant's Northern California location is inappropriate for the reasons previously discussed. In addition, Defendant opposes Plaintiff's request for contact information of *any* putative class members. Discovery on the merits in a putative class action is deferred until it is certain that the case will be allowed to proceed as a class action. *In Re Rail Freight Fuel Surcharge Antitrust Litig.* (D DC 2009) 258 FRD 167, 170. In federal court, "discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F3d 1318, 1327 (Fed. Cir. 1990).

Multiple courts in this Circuit have denied pre-certification discovery seeking putative class member identities and contact information. *See*, *e.g.*, *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (upholding district court decision to deny appellants' attempt to obtain production of the names of putative class members); *Palmer v. Stassinos*, 2005 WL 3868003, at *4 (N.D. Cal. May 18, 2005) (denying motion to compel to disclose the identification of and other information regarding putative class members); *Mandrigues v. World Sav., Inc.*, 2008 WL 11388759, at *1–2 (N.D. Cal. June 20, 2008) (similar); *Bradbury v. T-Mobile USA, Inc.*, 2009 WL 3388163, at *2 (N.D. Cal. Oct. 20, 2009) (similar); *Krzesniak v. Cendant Corp.*, 2007 WL 756905, at *1 (N.D. Cal. Mar. 8, 2007) ("[C]ompelling the production of contact information prior to class certification may result in 'court-initiated notice to potential claimants,' which would be inappropriate.").

Plaintiff's efforts to obtain the personal and private information about hundreds of individuals without any support for his claims is merits based discovery that violates the holding in *Mirco Motion, supra*. Plaintiff has failed to identify any reason why this information is necessary or even discoverable at this time. Plaintiff does not need to contact current and former employees to ask whether the employees suffered Labor Code violations.  If CWWC's policies are unlawful (they are not), then Plaintiff should already should have all that he needs to move for class certification.

Courts have refused to permit similar statewide discovery in PAGA actions.  *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 439 (9th Cir. 2015); *Rix v. Lockheed Martin Corp.*, No. 09CV2063 MMA NLS, 2012 WL 13724, at *4 (S.D. Cal. Jan. 4, 2012) (denying a PAGA plaintiff's request for other employees' contact information and records).  Plaintiff is not allowed to engage in what is essentially a fishing expedition or "mass mailing" advertisement for his counsel at the expense of employees' privacy rights. This is

1   particularly true since Plaintiff has yet to demonstrate even a prima facie case

2   that he has suffered a Labor Code violation or that he has knowledge of any

3   other employee who suffered the same Labor Code violation.

4          Furthermore, CWWC's employees have a protectable privacy interest in

5   their private contact, personnel and home address information under both state

6   and federal law.  Private information about third parties is not discoverable

7   without a compelling need, and Plaintiff has not shown that here. *Davis v. Leal*,

8   43 F.Supp.2d 1102, 1110 (E.D. Cal. 1999).  The residential privacy interest is

9   well established, as the home "is accorded special consideration in our [federal]

10  Constitution, laws, and traditions."  *U.S. Dep't of Defense v. Fed. Labor*

11  *Relations Auth.*, 510 U.S. 487, 501 (1994) (citations omitted). The residential

12  privacy interest includes an individual's right not be disturbed in his or her home

13  by unwanted advertising or solicitation by mail. *Rowan v. U.S. Post Office Dep't*,

14  397 U.S. 728, 737 (1970).  And California courts have repeatedly recognized

15  that "individuals have a substantial interest in the privacy of their home," and

16  that the disclosure of names, home addresses, and telephone numbers implicates

17  this privacy interest.  *Planned Parenthood Golden Gate v. Superior Court*, 83

18  Cal. App. 4th 347, 359-360 (2000); *see also Britt v. Superior Court*, 20 Cal.3d

19  844, 857-62 (1978) (overturning order compelling plaintiff to produce names of

20  percipient witnesses who attended meetings concerning airport noise).

21         For the reasons discussed herein, the needs of this case simply do not

22  justify allowing Plaintiff to invade the privacy interests of CWWC's non-party

23  employees on a statewide basis in light of the nonexistent probative value of the

24  discovery sought. Moreover, in light of CWWC's corporate policies concerning

25  reporting time pay, meal periods, rest breaks, and off-the-clock work, which are

26  fully compliant with California law, CWWC does not believe Plaintiff has

27  grounds to obtain contact information for putative class member employees.

28         In the event that the Court disagrees, Defendant requests that Plaintiff be

1  required to provide a *Belaire-West* notice and pay all related costs.

2  ### 6.    Plaintiff Is Not Entitled to Timekeeping Data

3  As discussed previously, the basis for Plaintiff's claims is that he was

4  required to perform work **off the clock**. Such alleged off the clock work would

5  not be reflected in any timekeeping data. As such, Plaintiff's request is not

6  proportional to the needs of the case. Moreover, since Plaintiff has not

7  established a prima facie case, he is not entitled to go on a fishing expedition into

8  the timekeeping data of other employees to hunt for violations. The Ninth Circuit

9  has upheld district court decisions refusing to allow pre-certification discovery

10  where the plaintiff failed to show either a prima facie case for class relief under

11  Rule 23, or that discovery was likely to produce substantiation of the class

12  allegations, as opposed to simply using discovery in hopes of contriving a claim

13  – as Plaintiff is attempting to do here. *Doninger v. Pacific Northwest Bell, Inc*.,

14  564 F.2d 1304 (9th Cir. 1977); *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir.

15  1985).

16  If the Court is inclined to grant such discovery, Defendant proposes a

17  random sampling of no more than 10% of Day Warehouse Workers at the City of

18  Industry location who did not sign a settlement agreement or an arbitration

19  agreement with a class action waiver. *See Talavera v. Sun Maid Growers of*

20  *California*, 2017 WL 495635, at *4 (E.D. Cal. Feb. 6, 2017) (determining that a

21  10% sample size was appropriate); *Brum v. MarketSource, Inc*., 2018 WL

22  3861558 (E.D. Cal. Aug. 14, 2018) (same).

23  ### 7.    Plaintiff Is Not Entitled to Payroll Data or Wage
24  ### Statements

25  Plaintiff is not entitled to Payroll Data or Wage Statements for the same

26  reasons that he is not entitled to timekeeping data. Defendant has already

27  produced Plaintiff's wage statements, and any violation of Labor Code section

28  226 should be apparent from the documents already produced.

1    If the Court is inclined to grant such discovery, Defendant proposes a

2  random sampling of no more than 10% of Day Warehouse Workers at the City of

3  Industry location who did not sign a settlement agreement or an arbitration

4  agreement with a class action waiver. *See Talavera v. Sun Maid Growers of*

5  *California*, 2017 WL 495635, at *4 (E.D. Cal. Feb. 6, 2017) (determining that a

6  10% sample size was appropriate); *Brum v. MarketSource, Inc.*, 2018 WL

7  3861558 (E.D. Cal. Aug. 14, 2018) (same).

8  **IV.    CONCLUSION**

9      **A.    Plaintiff's Statement**

10    For the foregoing reasons, Plaintiff respectfully requests that the Court

11  grant his Motion to Compel Production of class member contact information and

12  timekeeping data, payroll data, and wage statements as to all Warehouse

13  Workers in all facilities in California.

14      **B.    Defendant's Statement**

15    Defendant respectfully requests that the Court deny Plaintiff's Motion to

16  Compel in its entirety.

17

18  Dated: September 15, 2020              Capstone Law APC

19

20                      By: /s/ Mark A. Ozzello

21                          Mark A. Ozzello
                            Brandon Brouillette
22                          Brooke W. Waldrop

23                          Attorneys for Plaintiff Richard Trujillo

24

25

26

27

28

Dated: September 15, 2020

HUNTON ANDREWS KURTH LLP

By: /s/ Katherine Sandberg
Michele J. Beilke
Julie Y. Trankiem
Katherine Sandberg
Rafael N. Tumanyan

Attorneys for Defendants

---

## Certification of Compliance with C.D. Cal. L.R. 5-4.3.4(a)(2)(i)

Pursuant to Local Rule 5-4.3.4 (a)(2)(i), I, Mark A. Ozzello, hereby attest that I have obtained concurrence in the filing of this document from all other signatories to this document.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.  Executed on September 15, 2020, in Los Angeles, California.

By: /s/ Mark A. Ozzello
Mark A. Ozzello
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 556-4811
Facsimile:  (310) 943-0396