# EXHIBIT B

# DECLARATION OF BRYCE TUTTLE

I, Bryce Tuttle, declare:

1. I am over eighteen years old, and, unless the context indicates otherwise, I have personal knowledge of the following facts. If called as a witness, I could and would testify competently to them. I make this declaration of my own free will.

2. I am a former employee of The Chefs' Warehouse West Coast, LLC ("Chefs' Warehouse"). I worked for Chefs' Warehouse at its facility in Union City, California, and my employment ended in August 2017. I worked as an hourly-paid Warehouse Worker in the Receiver position during the day shift. I usually worked approximately 45-50 hours per week. My typical shifts were for approximately eight (8) to ten (10) hours from approximately 6:00 a.m. to 3:30 p.m., and I worked five (5) days per week.

3. I reviewed the Warehouse Worker Job Description as produced by Chefs' Warehouse in the *Trujillo v. Chefs' Warehouse West Coast, LLC, et al.* action (Bates No. CW 000235)

4. As a Warehouse Worker scheduled during the day shift in Union City, California, I performed the same duties that are apparently performed at the City of Industry location and which are also listed in the Warehouse Worker Job Description :

   a. Conveys materials and items from received areas to storage or other designated areas;
   b. Sorts perishable goods in refrigerated rooms;
   c. Sweeps and cleans warehouse area;
   d. Sorts, scans, and prepares shipments, ensuring that the exact number of products is loaded and shipped.
   e. Performs sorting duties in an efficient manner that meets customer service standards.

  f. Moves and stages product and materials using a hand pallet or other equipment;

  g. Operates all equipment in a safe and efficient manner following prescribed work methods;

5. On average, my meal periods began after my fifth hour of work five (5) times per week. Every day, my meal periods began either at noon or 12:30 p.m., or after six (6) hours of work. I do not recall ever receiving a meal period premium for any day I began my meal period after my fifth hour of work.

6. On average, my meal periods were interrupted two (2) to three (3) times per month with work. My supervisor would instruct me to return to work to assist unloading several trucks that arrived during our meal period. I would spend at least five (5) minutes during my meal period unloading these trucks as my supervisor instructed. I do not recall ever receiving a meal period premium for any day I worked during my meal period.

7. On average, I worked over ten (10) hours at least once a month. I do not recall receiving a second meal period on those days. I do not recall signing an agreement to waive my right to my second meal periods. I do not recall ever receiving a meal period premium for any day I did not receive a second meal period.

8. On average, my rest periods were interrupted two (2) to three (3) times per month with work. My supervisor would instruct me return to work to help unload several trucks that arrived during my rest period. I do not recall ever receiving a rest period premium for any day my rest period was interrupted with work.

9. According to my wage statements issued to me by Chefs' Warehouse, I accrued 0.77 hours of vacation for every week I was employed by Chefs' Warehouse. I was employed by Chefs' Warehouse for 10 weeks, from June 4, 2017 to August 7, 2020 when I voluntarily terminated my employment.

On my final wage statement, I was paid vested vacation wages for only 6.90 hours of vacation. This payment did not include either 0.03 hours of vacation I accrued from nine (9) weeks of employment or the 0.77 hours listed on my final wage statement as accrued for my final pay period. As of the signing of this declaration, I have not received any additional vested vacation wages from Chefs' Warehouse.

10. Based on my conversations with other Chefs' Warehouse employees, as well as my own day-to-day observations of Chefs' Warehouse employees where I worked, I believe that other Chefs' Warehouse employees had similar experiences.

11. I prefer to proceed with my claims as part of this proposed class action, rather than filing my own individual case against Chefs' Warehouse.

12. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 9/4/2020, at Boise, Idaho.

DocuSigned by:

F7B63610EAC6449...

Bryce Tuttle