1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9  | RICHARD TRUJILLO, individually,
10 | and on behalf of other members of
   | the general public similarly situated,
11 | and as an aggrieved employee
   | pursuant to the Private Attorneys
12 | General Act (PAGA),
13 |
14 |                       Plaintiff,
15 |     v.
16 |
17 | THE CHEF²S' WAREHOUSE
   | WEST COAST LLC et al.,
18 |
19 |                       Defendants.

Case No. 2:19-cv-08370 DSF (MAAx)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES
PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 37(a)(5)
AGAINST DEFENDANT THE
CHEFS' WAREHOUSE WEST
COAST, LLC (ECF NO. 67)**

Telephonic Hearing:
Date:   April 6, 2021
Time:  10:00 a.m.
Judge:  Maria A. Audero

20
21 **I.    INTRODUCTION**
22        Before the Court is Plaintiff Richard Trujillo's ("Plaintiff") Motion for
23 Attorneys' Fees Pursuant to Federal Rule of Civil Procedure 37(a)(5) Against
24 Defendant The Chefs' Warehouse West Coast, LLC, filed February 12, 2021 ("Fees
25 Motion").  (Fees Mot., ECF No. 67.)  Through the Fees Motion, Plaintiff seeks an
26 order requiring Defendant The Chefs' Warehouse West Coast, LLC ("Defendant")
27 to pay his reasonable expenses, including attorneys' fees, incurred in (1) the
28 bringing of his successful motion to compel Defendant to produce supplemental

discovery responses and responsive documents, and (2) his successful opposition to Defendants' motion for review of this Magistrate Judge's order granting Plaintiff's motion to compel.  The Fees Motion is based on the following documents: Plaintiff's Notice of Motion accompanied by his Memorandum of Points and Authorities; the Declaration of Mark A. Ozzello and its Exhibit A detailing Plaintiff's billings ("Ozzello Declaration") (Ozzello Decl., ECF No. 67-1); and this Court's October 19, 2020 Order ("Discovery Order") (Discovery Order, ECF No. 47).

On March 3, 2021, Defendant filed Defendant The Chefs' Warehouse West Coast, LLC's Opposition to Plaintiff's Motion for Attorneys' Fees ("Fees Opposition").  (Fees Opp'n, ECF No. 78.)  In support of the Fees Opposition, Defendant filed a Request for Judicial Notice in Opposition to Plaintiff's Motion for Attorneys' Fees, which asks the Court to judicially notice three documents filed in a Central District of California class action entitled *Nicholas Wylie v. Hyundai Motor America*, Case No. 8:16-cv-02102-DOC-JCG ("*Wylie* Matter"), as follows: (1) the plaintiff's motion for attorneys' fees, costs, and class representative incentive award; (2) an attorney declaration in support of that motion; and (3) the Court's order granting that motion ("Request for Judicial Notice").  (Req. Jud. Notice, ECF Nos. 78-1 through 78-4.)

On March 9, 2021, Plaintiff filed Plaintiff's Reply to the Opposition to the Motion ("Fees Reply").  (Fees Reply, ECF No. 79.)

The Court has read and considered the papers presented by, and oral argument of, the Parties, as well as the transcript of this Court's related informal discovery conference.  The Court takes judicial notice of the documents presented by Defendant.  For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Fees Motion.

///

///

## II.   RELEVANT BACKGROUND

On September 15, 2020, Plaintiff filed a discovery motion through which he sought an order compelling Defendant to provide supplemental responses to his Interrogatory No. 1 which sought class contact information ("ROG No. 1"), and to produce responsive documents to his Requests for Production of Documents Nos. 5 which sought timekeeping data ("RFP No. 5"), 6 which sought payroll data ("RFP No. 6"), and 30 which sought wage statements ("RFP No. 30") ("Discovery Motion").  (Discovery Mot., ECF No. 44.)  Plaintiff filed the Discovery Motion "only after 'extensive meet and confer efforts,'" which this Court considered "'laudable and productive'" in narrowing the differences between the parties." (Fees Mot. 3[1] (quoting Discovery Order 5).)  On October 19, 2020, the Court granted Plaintiff's Discovery Motion in its entirety.  (*See generally* Discovery Order.)  In the Discovery Order, the Court noted that, given Plaintiff's success in the Discovery Motion, he could apply for reasonable expenses incurred in the making of the motion, including his attorneys' fees, pursuant to Federal Rule of Civil Procedure[2] 37(a)(5).  (*Id.* at 65.)

On November 2, 2020, Defendant filed a motion pursuant to Rule 72 asking the Honorable Dale S. Fischer, the District Judge assigned to the case, to review this Court's Discovery Order ("Review Motion").  (Review Mot., ECF No. 52.)  In its Review Motion, Defendant argued that "[t]he entirety of the [Discovery] Order [was] clearly erroneous and contrary to law, and as such, the [Discovery] Order should be vacated."  (Review Mot. 3.)  On November 9, 2020, Plaintiff filed an opposition to the Review Motion.  (ECF No. 55.)  On November 24, 2020, Judge

---

[1] Pinpoint citations of page numbers in docketed documents refer to the page numbers in the ECF-generated headers.

[2] Unless otherwise stated, all further references to "Rule" are to the Federal Rules of Civil Procedure.

1   Fischer denied Defendant's Review Motion ("Review Order").  (Review Order,

2   ECF No. 59.)

3        Plaintiff now moves for an order awarding him the attorneys' fees he

4   incurred in the making of the Discovery Motion and defending its results at the

5   Review Motion, in the amount of $36,059.  (Fees Mot. 3.)  He first contends that he

6   is entitled to the entirety of the fee "since he prevailed on all issues and Defendant

7   cannot establish that its objections to Plaintiff's discovery were reasonably

8   justified."  (*Id.*)  In support, he raises three arguments:  (1) he satisfied his burden of

9   making a *prima facie* showing of his entitlement to pre-certification discovery and

10  of demonstrating that the discovery he sought was "likely to produce persuasive

11  information substantiating the class allegations";  (2) the Court overruled all of

12  Defendant's objections as to scope of discovery; and (3) the Court rejected

13  Defendant's objections to class contact information, timekeeping and payroll data,

14  and wage statements.  (*Id*. at 4–6.)  Plaintiff next contends that the fees he seeks are

15  reasonable in that they represent the time required to bring the Discovery Motion

16  and to defend its result at the Review Motion, but not the time spent on the parties'

17  extensive meet-and-confer efforts (*id.* at 6–7), and that the hourly rates for the

18  attorneys who worked on the Discovery Motion and in opposing the Review

19  Motion are reasonable in that they repeatedly have been approved by courts in this

20  and other districts and are consistent with rates charged by comparable attorneys

21  doing comparable work (*id.* at 8–11).

22       Defendant opposes an award of attorneys' fees.  (*See generally* Fees Opp'n.)

23  Defendant first raises the procedural argument that the Fees Motion should be

24  denied because Plaintiff failed to comply with his Central District of California

25  Local Civil Rule[3] 7-3 pre-motion meet-and-confer obligation.  (*Id.* at 8–9.)

26

27  _____

28  [3] Unless otherwise stated, all further references to "Local Rule" are to the Central
    District of California Local Civil Rules.

4

Defendant next argues substantively that the positions it asserted in resisting the discovery in the first instance and then seeking review of the Discovery Order were substantially justified.  (*Id.* at 9–12.)  Defendant finally argues that, even if the Court were inclined to award fees to Plaintiff, the amount he seeks is unreasonable because the number of hours sought is excessive (*id.* 13–18), and the hourly rate for one of the attorneys on the case, Brandon Brouillette, is $40.00 too high (*id.* at 18).

Plaintiff replies that Defendant has failed to meet its burden of establishing each of its arguments above.  (*See generally* Reply.)

In providing the Rule 37(a)(5)(A)-required opportunity to be heard on the Fees Motion, the Court held a telephonic hearing on April 6, 2021.  (ECF No. 85.)  In addition, the Court has reviewed the briefing provided by the parties as well as the Court's record, including the transcript of the August 19, 2020 informal discovery conference ("IDC") ("IDC Transcript").  (Tr., ECF No. 83).  For the reasons set forth below, the Court concludes that an expense award pursuant to Rule 37(a)(5)(A) is warranted here and awards Plaintiff his reasonable attorneys' fees in the sum of $24,291.50.

## III.    DISCUSSION

### A.    Plaintiff's Fees Motion Is Not Procedurally Improper.

Defendant argues that the Court should decline to hear Plaintiff's Fees Motion because he failed to satisfy his obligation under Local Rule 7-3 to meet and confer with Defendant prior to its filing.  (Fees Opp'n 8–9.)  Defendant is wrong.  Discovery motions, such as the Fees Motion brought here, are expressly excluded from the province of Local Rule 7-3.  It states:

> In all cases not listed as exempt in L.R. 16-12, and *except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4)* and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first

5

1
2

> contact opposing counsel to discuss thoroughly,
> preferably in person, the substance of the contemplated
> motion and any potential resolution.

3    C.D. Cal. L.R. 7-3 (emphasis added).

4         Defendant offers no authority in support of its contention that a party seeking

5    an award of attorneys' fees—permitted by Rule 37(a)(5)(A) and invited by a court's

6    discovery order—must comply with Local Rule 7-3 before filing a motion with

7    such a request (*see generally* Fees Opp'n), and the Court is aware of none.  On this

8    basis, the Court will consider and rule upon Plaintiff's Fees Motion on its merits.

9

10        **B.    Defendant's Objections to Plaintiff's Discovery Requests Were Not**

11             **Substantially Justified.**

12        Defendant argues that its objections to Plaintiff's discovery requests for class

13   contact information, timekeeping data, payroll data, and wage statements were

14   substantially justified for three reasons.  *First*, Defendant argues that Judge

15   Fischer's comment in her Review Order (that its position was defensible and might

16   have carried the day before another judge, and that this Magistrate Judge could

17   have imposed the discovery restrictions it requested), and this Magistrate Judge's

18   comment ("applaud[ing] the parties' 'laudible [sic] and productive efforts' with

19   respect to meeting and conferring"), establish Defendant's substantial justification.

20   (Fees Opp'n 10.)  *Second*, Defendant contends that it not only presented substantial

21   case law supporting its position that Plaintiff was not entitled to pre-certification

22   discovery, but also distinguished Plaintiff's case law to the contrary.  (*Id.*)  *Third*,

23   Defendant posits that this Magistrate Judge's instruction to the parties to brief the

24   scope of discovery is indicative that Defendant's discovery position was

25   substantially justified.  (*Id.* at 10–11.)

26        Defendant also argues that it was "substantially justified in exercising its

27   right to a review" of this Magistrate Judge's Discovery Order for three reasons.  (*Id.*

28

at 12.)  *First*, Defendant argues it was substantially justified in arguing that this

Magistrate Judge clearly erred in broadening the scope of discovery into locations

and shifts that Plaintiff never worked by improperly relying on the declarations of

Raymond Pinkston and Bryce Tuttle.  (*Id.* at 11.)  *Second*, Defendant contends that,

even if this Magistrate Judge did not clearly err in relying on the two declarations,

Defendant was substantially justified in arguing that this Magistrate Judge clearly

erred in the conclusion she drew from the two declarations.  (*Id.*)  *Third*, Defendant

posits that it was substantially justified in arguing that this Magistrate Judge clearly

erred in not analyzing Defendant's undue burden and oppression argument in light

of the declaration of its Chief Human Resources Officer "that it would take

approximately 726 hours and cost $18,198.00 to comply with the Magistrate's

Order." (*Id.* at 11–12.)

### 1.    Legal Standard

Pursuant to Rule 37(a)(5)(A), if a discovery motion is granted, "the court

must, after giving an opportunity to be heard, require the party or deponent whose

conduct necessitated the motion, the party of the attorney advising that conduct, or

both to pay the movant's reasonable expenses incurred in making the motion,

including the attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  However, Rule

37(a)(5)(A) also provides that "the court must not order this payment if:  (i) the

movant filed the motion before attempting in good faith to obtain the disclosure or

discovery without court action; (ii) the opposing party's nondisclosure, response,

or objection was substantially justified; or (iii) other circumstances make an award

of expenses unjust."  *Id.*  The party contesting the discovery sanction under Rule 37

bears the burden of establishing substantial justification or that other circumstances

make an award of expenses unjust. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

Both the Ninth Circuit and the Supreme Court have offered guidance regarding the standard for establishing "substantial justification" sufficient to avoid a discovery sanction. In *Hyde*, the Ninth Circuit stated that "a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification . . . .'" *Hyde*, 24 F.3d at 1171 (citation omitted). The Supreme Court has explained that the standard is "satisfied if there is a 'genuine dispute'. . . or 'if reasonable people could differ as to the appropriateness of the contested action.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1998) (citations and alterations omitted).

With this legal framework in mind, the Court addresses each of Defendant's substantial justification arguments in turn and finds each without merit.

2.    The Court's Comments Do Not Establish that Defendant's Objections to Plaintiff's Discovery Were Substantially Justified.

Defendant argues that Judge Fischer's statement in the Review Order—that Defendant's discovery position was defensible, might have carried the day before another judge, and could have resulted in the imposition of the restrictions Defendant sought—confirms Defendant's "substantial justification" in resisting Plaintiff's discovery. (Fees Opp'n 10 (citing Review Order 2.)) This argument misses the mark. As Plaintiff aptly notes, Judge Fischer ruled on one issue only: whether this Magistrate Judge clearly erred in her Discovery Order. (Reply 9; *see also* Review Order.) The inquiry for such error is whether the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1). As stated above, the inquiry for Defendant's substantial justification in resisting discovery, on the other hand, is whether the resisting party's position raises an issue about which reasonable people could differ. Defendant provides no authority, and the Court is aware of none, for the apparent proposition that Judge Fischer's comments in the context of the

8

"clearly erroneous" analysis of 28 U.S.C. § 636(b)(1)(A) translate into a finding that Defendant was substantially justified in resisting discovery under Rule 37(a)(5)(A).

In any event, even if *another* judge might have ruled differently, Defendant does not explain how it could conclude that its discovery positions could be considered substantially justified by *this* Magistrate Judge when *this* Magistrate Judge repeatedly advised Defendant that she likely would compel the discovery it was resisting.  For example, at the August 19, 2020 IDC, in discussing the relevance of discovery into locations and shifts that Plaintiff has never worked, the Court noted initially that it was leaning toward limiting the scope of discovery to day shift warehouse workers at Plaintiff's work location (City of Industry) who signed Pick-Up Stix releases and arbitration agreements, but made clear that this was based solely on the information before the Court and that:

> [I]f [Plaintiff] can convince me in [his] briefing that the class should be – that he can – that he has enough knowledge even about what the other positions do and what their life is like during the day for this employer . . . I could be convinced to go beyond "day warehouse worker."

(Tr. at 11:8-12.)  Defendant thereafter resisted Plaintiff's requests for a job description of the night warehouse worker position, which Plaintiff explained he needed to determine whether that position belongs in the class, regarding which the Court admonished Defendant:

> If you don't – if you stand in the way of that – if you block that information, I have to be honest with you, Ms. Trankiem, I'm going to put them in the class.  At least – and – for discovery purposes.  I don't control class certification; right?  Again, I repeat myself on that, but, you know, for discovery purposes [give him] – let's give him – give Mr. Ozello the information, then you folks

9

1    can fight the fight at class certification.  We know very
2    well that discovery is broader than merits.
      ***
3    [I]f I don't have enough information to make an educated
4    decision, I'm letting them in for purposes of discovery.
      That's where I'm leaning.
5

6  (*Id.* at 59:6–22.)  As Defendant continued to resist producing the night shift

7  warehouse worker job description, the Court noted:

8          I don't understand this pushback.  I really don't.  It's one
9          document – or, according to you, it's one document, and,
           quite frankly, it might work in your favor, but most
10         importantly, I think that if I'm Mr. Ozzello – or let's put
11         you in Mr. Ozzello's shoes.  I'm not going to depose
           someone to find – or you shouldn't depose somebody to
12         find out – to get information about the "night worker"
13         position without having a job description in front of you.

14  (*Id.* at 60:10–17.)

15        In answering Defendant's question if it was the Court's position that

16  employees who signed *Pick Up Stix* releases and arbitration agreements should be

17  included in the class, the Court stated:

18         Yes, That is what I said because – and I'll repeat my
19         reasoning.  Not because I agree with [Plaintiff] that they
           – that [Defendant's] *Pick Up Stix* campaign was faulty or
20         can be overturned or because [Defendant's] arbitration
21         agreements are [im]properly written, but simply because
           they are arguing that they – neither the campaign nor the
22         class-action waiver in the arbitration agreement is . . .
23         valid, and so they get discovery to establish that.
           ***
24         What happens at the end of the discovery is a merits
25         discussion as to the validity of [Defendant's] *Pick Up*
           *Stix* campaign and [Defendant's] "arb" agreements, and
26         you'll resolve that at class certification.  But under their
27         allegation that [Defendant's] campaign is faulty and

28

[Defendant's] "arb" agreements are not valid, he gets
discovery.

(*Id.* at 46:6–21.)

Likewise, in discussing the discoverability of class contact information, the
Court stated:

> I have to tell you I am inclined to grant class contact
> information.  I think the law is pretty clear.  It's
> discoverable pre-cert.  It's relevant and necessary to
> develop the class-cert arguments.  The only question in
> my mind is *Belaire-West* notice or protective order and –
> two questions:  *Belaire-West* notice and protective order,
> and for how many people within the class.

(*Id.* at 9:14–20.)  In summarizing its position regarding the production of class

contact information, Defendant noted that no agreement had been reached on

disclosure of class contact information, that Defendant would not agree "to provide

it voluntarily," and that if Plaintiff wanted it, he "still would have to move to

compel." (*Id.* 116:19–21; 120:10–15; 120:21–23.)  The Court summarized to

Plaintiff's counsel as follows:

> [Defendant's] position is "We don't want to give it to
> you."  Your only recourse, Mr. Ozello, is to file a motion
> to compel.  We're sitting here today, and I am telling you
> I am very likely going to give it to you.  That's
> information for [Defendants] to decide whether they want
> to fight this issue or not – right? – spend their money
> doing it and risk sanctions for doing something that is so
> obvious to everybody, but the only way that you get this,
> Mr. Ozello, is either they agree to give it you, or you
> have to file a motion to compel . . . .

(*Id.* 118:16–25.)  Plaintiff then stated that he would bring a motion to compel the

production of class contact information and that he would seek sanctions.  (*Id.* at

121:11–12.)  On this, the Court further cautioned Defendant:

11

1
2
3
4
5
6
7

> I think the point that Mr. Ozzello is making is, you know, "Judge Audero has pretty much told you where she's going with this, and, you know, if you force me to do this, I will do it, but I'm going to ask for sanctions, and Judge Audero has also" – I think I said it with respect to this is, you know, I'm not sure I'm going to be able to find substantial justification after our discussion, but knock yourself out if that's what, if that's what you want to do.

8   (*Id.* at 121:19–122:2.)  The Court then reiterated its admonition to Defendant that

9   Mr. Ozzello would move to compel the class contact information and "also move

10  for sanctions." (*Id.* at 123:23–124:2.)

11      Similarly, in discussing the production of timekeeping data, the Court stated

12  to Plaintiff's counsel:

13
14
15
16
17
18
19

> I have to tell you that – you know, timekeeping data is relevant to class certification so – and on top of it, you know, there's discussion about accepting anonymized data to address any privacy concerns.
> ***
> But I will tell you that I would be very likely to compel the production of timekeeping data as to the class limitations that I would impose.  So that's where I fall on that one.

20  (*Id.* at 47:18–48:7.)

21      Likewise, in discussing the production of payroll data, after Plaintiff

22  confirmed he was not seeking private information that could be found within

23  payroll records (*id.* 48:8–25), the Court stated:

24
25
26
27
28

> I probably wouldn't have a problem with anonymizing the data.  I just want to make sure that we're not going overboard and trampling on people's privacy.  So I understand – now I can see that there is a discussion about anonymizing the data.  So I likely would compel

12

1    this if it's anonymized, and it sounds like [P]laintiff is
2    willing to agree to that.

3    (*Id.* at 49:1–7.)  The Court also confirmed that, as part of "payroll data," it would

4    compel production of the information that Defendant sends to its payroll provider

5    for the preparation of wage statements.  (*Id*. at 50:15–25.)[4]

6    In discussing the production of itemized wage statements, Defendant agreed

7    to produce them subject to the scope of the positions that would be found relevant

8    for discovery purposes and the Court's determination of whether a sampling would

9    be in order.  (*Id.* at 88:20–89:11.)   With respect to the production of the last two

10    itemized wage statements for former employees, the Court stated:  "I have to say on

11    that theory I think I would be inclined to compel that."  (*Id.* at 90:12–91:6; 91:21–

12    22.)  It is unclear to the Court why Defendant did an about-face and ultimately

13    objected to the production of wage statements in the Discovery Motion.

14    Indeed, while another judge might have imposed the discovery restrictions

15    Defendant sought, what was clear after the three-and-one-half-hour IDC was that

16    this Magistrate Judge, in exercising her substantial discretion under *Doninger v.*

17    *Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312–13 (9th Cir. 1977), likely would

18    decline to impose such restrictions absent evidence controverting Plaintiff's facts

19    and arguments.  Defendant offered no such evidence in opposing the Discovery

20    Motion and nonetheless insisted on arguing the same objections already rejected by

21    the Court during the IDC.  (*See generally* Discovery Mot.)

22    Similarly, Defendant's reliance on this Magistrate Judge's comment that the

23    parties had engaged in "laudible [sic] and productive efforts" with respect to

24    meeting and conferring (Fees Opp'n 10) also is misplaced.  To begin with, the

25
26    _____

[4] There then followed a lengthy exchange regarding the relevance of payroll data, resulting in the agreement that Defendant would provide to Plaintiff the data dictionary for the data transmitted to its payroll provider and that Plaintiff would brief the issue after reviewing it, if necessary after the parties further met and conferred.  (*Id.* at 51:6–54:21.)

13

comment is misinterpreted.  The Court praised the parties for their "laudable and productive efforts to *narrow their differences*."  (Discovery Order 5 (emphasis added).)  And indeed, much was accomplished by the parties' efforts both before and after the IDC and the filing of the Discovery Motion; what began at the IDC as disputes over thirty-five discovery requests[5] ultimately was narrowed to the four discovery requests that became the subject of the Discovery Motion—ROG No. 1, and RFP Nos. 5, 6, and 30.  However, those four remaining disputes were not the subject of the Court's praise, as the parties had neither resolved nor narrowed them.  Strikingly, despite the three-and-one-half-hours of this Court's guidance and additional meet-and-confer efforts by the parties, Defendant admitted at the hearing on the Fees Motion that, after the IDC, it still failed to produce the contact information and data for even the limited group of persons it conceded properly made up the putative class.  Indeed, in the Discovery Motion that followed the IDC, Defendant continued to press its argument that Plaintiff was not entitled to any of the requested discovery except as to the named Plaintiff.  (Discovery Mot. 40–42 (not entitled to class contact information); *id.* at 43–44 (not entitled to timekeeping data, payroll data, or wage statements).

Moreover, Defendant ignores the Court's admonitions during the IDC that its discovery conduct could result in sanctions.  In addition to those detailed above, in one instance addressing Defendant's refusal to produce a job description that had the potential of resolving the dispute regarding whether the putative class should include night warehouse workers, the Court noted to Defendant:

> So I don't understand this digging in your heels.  I don't understand it.  I don't think it's going to serve you well, but certainly you are following directions of your client, but I have to let you know that it's not going to work out well.

---

[5] RFP Nos. 1, 2, 3, 5, 6, 8, 20, 22, 23, 24, 27, 28, 30, 33, 35, 36, 37, 38, 39, 47, 48, 49, 50, 57, 58, 60, 63; and ROG Nos. 1, 2, 3, 4, 5, 6, 7, 10.

(Tr. 59:15–19.)  Ultimately, Defendant did not provide a copy of the night warehouse worker position to the Court in opposing the Discovery Motion, making it even more difficult, if not impossible, for the Court to reach a conclusion favorable to Defendant's position that the scope of discovery should not include night shift warehouse workers.  (*See* Discovery Order 28–30.)

In addition, when Defendant insisted that it would object to an interrogatory regarding the dates of employment of the putative class (offered by Plaintiff to assuage Defendant's concern that RFP No. 28[6] was too burdensome), which Plaintiff explained he needed to determine whether subclasses might be necessary (Tr. 83:21–84:15), the Court cautioned Defendant:

> I have to tell you, Ms. Trankiem, my patience is wearing thin.  I don't understand why you would object to very basic class-certification discovery – very basic.  Mr. Ozzello is, you know, bending over backwards to make this work.  He needs information.  Playing games in discovery is not going to bode well for [D]efendant.  I promise you.  It's just – it looks bad.  It doesn't show good faith.  It creates all sorts of perceptions that I don't think your client wants.
>
> So I'm here to tell you this is very, very basic information.  If you can't give me a representation that your client, if asked by an interrogatory, will answer the question – you can interpose all objections you want as long as you answer the question, and then you folks can fight the fight when you're trying to admit the evidence, but if you're not willing to answer those questions, then I'm going to have no choice but to find another way to give Mr. Ozzello what he's entitled to, which may include giving him exactly what he asks for in RFP 28.  I'm trying to find a painless way for [D]efendant to

---

[6] RFP No. 28 sought documents sufficient to identify covered employees who were employed during the relevant period and their dates of employment.  (*Id.* at 81:17–19.)

1    provide [P]laintiff with what he needs.  If you don't want
2    to cooperate, I'm good with that.  We'll just –
     ***
3    . . . go a different way.

4    (*Id.* at 85:20–86:17.)

5        In light of this Court's repeated cautionary words regarding how it likely

6    would rule on the disputed issues, no reasonable person could conclude that

7    continued resistance to Plaintiff's discovery was appropriate.  Thus, Defendant's

8    discovery positions were not substantially justified.

9

10        3.    Defendant's Objections to Pre-Certification Discovery Were

11              Not Substantially Justified.

12        Defendant contends that its discovery position—that Plaintiff was not

13   entitled to any pre-certification discovery—was substantially justified in that it

14   presented substantial case law in its favor and distinguished Plaintiff's case law to

15   the contrary.  (Fees Opp'n 10.)  Plaintiff disagrees and instead notes that the Court

16   rejected Defendant's arguments premised on that case law.  (Reply 10–12.)  The

17   Court agrees with Plaintiff and addresses each discovery issue in turn.

18        With respect to whether Plaintiff was entitled to pre-certification discovery in

19   the first instance, Defendant's argument was not substantially justified.  Indeed, in

20   pressing its position that Plaintiff was not entitled to any pre-certification discovery

21   because he failed to make a Rule 23 *prima facie* showing, Defendant neglected to

22   account for the fact that Plaintiff could prevail in his quest for this discovery by

23   demonstrating that his discovery measures were "likely to produce persuasive

24   information substantiating the class action allegations."  (Discovery Order 12

25   (quoting *Doninger*, 564 F.2d at 1313).)  In addition, Defendant's sole authority in

26   support of its objection—*Dittmar v. Costco Wholesale Corp.,* No. 14-cv-1156 LAB

27   (JLB), 2016 U.S. Dist. LEXIS 172404, at *10–11 (S.D. Cal. Dec. 12, 2016)—was

28   inapposite and, ultimately, supported Plaintiff's position.  (*Id*. at 13.)  Finally,

16

1  Defendant's efforts to distinguish Plaintiff's four authorities failed in that

2  Defendant misinterpreted their holdings at every turn. (*Id.* at 13–15.)

3       With respect to whether pre-certification discovery should be permitted for a

4  location and shift not worked by Plaintiff, Defendant's position was not

5  substantially justified. As a starting point, Defendant's authorities were inapposite

6  in that those courts limited the reach of discovery to only the plaintiffs' work

7  locations for reasons not present here, including a lack of evidence about, or

8  speculative assertions regarding, the defendants' non-compliance in other locations.

9  (Discovery Order 25 (referencing a discussion of Defendant's authorities at 18–

10  20).) Unlike the plaintiffs in Defendant's authorities, Plaintiff here did not come to

11  the table empty-handed or with purely speculative arguments. Instead, Plaintiff

12  offered sworn testimony of two employees—Raymond Pinkston and Bryce

13  Tuttle—who testified to Defendant's non-compliance at its second location and

14  during the night shift. (Discovery Mot. 14, nn.11, 12 (citing Exs. B (Declaration of

15  Bryce Tuttle) and C (Declaration of Raymond Pinkston)).)

16       Moreover, Defendant's argument that it was substantially justified in

17  resisting this discovery on the ground that the Court should not have considered the

18  Pinkston and Tuttle Declarations because they were not disclosed as witnesses in

19  Plaintiff's Initial Disclosures is without merit for three reasons. *First*, the argument

20  was undeveloped and lacking in legal support. Defendant's solitary and passing

21  statement, found in footnote 19 on page 32 of a 45-page brief, uttered: "Neither

22  Mr. Pinkston nor Mr. Tuttle were disclosed as percipient witnesses in Plaintiff's

23  initial Disclosures; thus their declarations should be disregarded." (*Id*. at 32, n.19.)

24  This does not a legal argument make. "[O]ur adversary system is designed around

25  the premise that the parties know what is best for them, and are responsible for

26  advancing the facts and arguments entitling them to relief." *Greenlaw v. United*

27  *States*, 554 U.S. 237, 244 (2008) (quoting *Castro v. United States*, 540 U.S. 375,

28  386 (2003) (Scalia, J., concurring)). Courts "review only issues which are argued

17

1  specifically and distinctly . . . ."  *Indep. Towers of Wash. v. Washington*, 350 F.3d

2  925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971,

3  977 (9th Cir. 1994)).  Courts have "refused to address claims that were only

4  argue[d] in passing, or that were bare assertion[s] . . . with no supporting

5  argument."  *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483,

6  487 (9th Cir. 2010) (alterations in original) (internal quotation marks and citations

7  omitted).  "Many courts will disregard arguments raised exclusively in

8  footnotes."  *Macdonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 895 (N.D. Cal.

9  2015) (citation omitted); *see also Coal. for a Healthy Cal. v. FCC*, 87 F.3d 383,

10  384 n.2 (9th Cir. 1996) ("[A] perfunctory request, buried amongst the footnotes,

11  does not preserve an argument on appeal."); *Cisneros v. Astrue*, No. CV 10-4940-

12  PJW, 2011 U.S. Dist. LEXIS 110052, at *2 n.1 (C.D. Cal. Sept. 26, 2011)

13  (rejecting an argument in a footnote on "procedural grounds" because "Plaintiff

14  cannot bury an argument in a footnote on page five of a 17-page brief and expect

15  the Court to address it on the merits").

16      *Second*, the purported argument was wholly devoid of evidentiary support at

17  the Discovery Motion.  Defendant presented no competent evidence that Messrs.

18  Pinkston and Tuttle in fact were not disclosed in Plaintiff's Initial Disclosures—not

19  in a sworn declaration, not as an exhibit.  (*See generally* Discovery Mot.)  This

20  violates Local Rule 37-2.1, which requires that discovery motions "contain all

21  issues in dispute and, as to each such issue, the contentions and points and

22  authorities of each party."  C.D. Cal. L.R. 37-2.1.  It also violates Local Rule 7-6,

23  which requires that "[f]actual contentions involved in any motion and opposition to

24  motions shall be presented, heard, and determined upon declarations and other

25  written evidence . . . alone . . . ."  C.D. Cal. L.R. 7-6.

26      *Third*, the Pinkston and Tuttle Declarations contained facts regarding the

27  allegedly non-compliant practices at Defendant's second location and during the

28  night shift that Defendant failed to controvert.  (*See* Discovery Order 25–28.)  At

18

1    best, Defendant offered facts—that each facility had separate management teams

2    that determined scheduling modules, that each facility had unique practices, that the

3    City of Industry facility is larger and handles more will-call orders and employs

4    more personnel—that easily could co-exist with the Pinkston and Tuttle assertions

5    without in any way denigrating the strength of their testimony about Defendant's

6    non-compliance.  (*See id.* at 28.)

7         With respect to whether pre-certification discovery should be permitted for

8    persons who signed settlement agreements or arbitration agreements, Defendant's

9    position was not substantially justified.  Defendant's argument focused solely on

10   the question whether the claims under the California Private Attorneys General Act

11   ("PAGA") could be released such that those who entered into agreements releasing

12   PAGA claims and those who entered into arbitration agreements with class action

13   waivers confirming they were not aggrieved employees under PAGA automatically

14   should be excised from the putative class.  (Discovery Mot. 37–40.)  But in neither

15   argument did Defendant address the discussions during the IDC that a challenge to

16   the enforceability of the settlement and arbitration agreements could open discovery

17   as to persons who participated in either or both.  (*See* Tr. 46:1–21.)  In addition to

18   the passage on this issue quoted above, the Court stated it would include in the

19   scope of discovery:

20
21        those persons who signed *Pick Up Stix* releases and
          arbitration agreements, not [because I agree with] the
22        [P]laintiff that they're not valid, that's not the issue
          before me, but because these – because [P]laintiff is
23        going – has made it clear that [P]laintiff is going to
          challenge the *Pick Up Stix* releases and the arbitration
24        agreement class – class-action waiver, and so these
          people, I believe, would have information relevant to the
25        validity issues.
26
27
28

19

(Tr. 5:22–6:8.)  Defendant's failure to acknowledge, let alone argue against, so dispositive an issue renders its discovery position not substantially justified.[7]

    With respect to whether Plaintiff was entitled to class contact information, Defendant's position was not substantially justified.  Defendant first argued that Plaintiff was not entitled to "contact information of *any* putative class member" because such amounted to impermissible pre-certification merits discovery.  (Discovery Mot. 40–43 (emphasis in original).)  But as the Court explained in detail in its Discovery Order, Defendant's authorities were, one after the other, "not on point," "probative of nothing," and "inapposite."  (Discovery Order 45–47, 50–51.)  Defendant next argued that such discovery would violate the California privacy interest of the putative class members.  (Discovery Mot. 42–43.)  But as the Court explained in detail in its Discovery Order, Defendant ignored the rulings of California and federal courts that contact information is discoverable under either specific notice procedures or protective orders.  (Discovery Order 47–51.)

    With respect to whether Plaintiff was entitled to timekeeping data, payroll data, and wage statements, Defendant's position was not substantially justified.  Defendant argued that Plaintiff was not entitled to timekeeping data because such information would not inform Plaintiff's off-the-clock allegations, which Defendant contended was "the basis for Plaintiff's claims."  (Discovery Mot. 43.)  But, as the Court explained in the Discovery Order, "this argument misses the mark altogether or is devoid of any evidentiary support."  (Discovery Order 56.)  Indeed, other than its bald assertion, Defendant offered no evidence for its position that this data would not inform the claims for overtime, minimum wage, meal period, wage statement, termination wages, and stand-alone claims for meal period, rest break, and vacation pay violations.  (*Id.*)  Moreover, Defendant did not address the

---

[7] It is not lost on the Court that Plaintiff also ignored this issue.  However, because it is *Defendant* that must establish the substantial justification for *its* positions in order to avoid sanctions, the Court need not address Plaintiff's discovery position.

overwhelming case law compelling the production of timekeeping data, payroll data, and wage statements at the pre-certification stage.  (*Id.* at 55–57.)

4.   This Magistrate Judge's Comments at the IDC Regarding the Scope of Discovery Do Not Establish Defendant's Substantial Justification.

Defendant argues that this Court's instruction to the parties at the IDC to brief the scope of discovery establishes that Defendant's discovery position was substantially justified.  (Fees Opp'n 10–11.)  However, this misinterprets the discussions at the IDC.  As the above-cited excerpts from the IDC Transcript reveal, the Court was fully able to make decisions regarding the discovery at issue.  Indeed, it repeatedly stated how it would land with the facts before it.  Excerpts from the IDC Transcript also reveal that briefing was necessitated because the parties themselves could not reach an agreement on the facts.  The Court stated: "[A]s you know, my philosophy is I am not going to issue orders here through an informal discovery conference on things that the parties don't agree on."  (Tr. 118:25–119:2.)  To the extent briefing was necessary, it was due to the disappointing circumstance that, after months of discovery, Defendants still refused to provide basic information or documents that would inform these discovery issues, leaving the parties unable to resolve their disputes.  The Court's instruction to the parties to brief the unresolved issues does not establish justification—let alone substantial justification—for Defendant's generally untenable discovery positions.  Accepting Defendant's apparent argument that a party's discovery obstruction itself provides the "substantial justification" necessary to avoid discovery sanctions would render the Rule 37(a)(5)(A) "substantial justification" inquiry unnecessary and sanctions unavailable.  That is not the intent of Rule 37(a)(5).

///

5.     Defendant's Argument in the Review Motion that This Court
       Clearly Erred in Considering the Pinkston and Tuttle
       Declarations Was Not Substantially Justified.

Defendant argues it was substantially justified in arguing in its Review Motion that this Magistrate Judge clearly erred in broadening the reach of Plaintiff's discovery into a location and shift that Plaintiff never worked by improperly relying on the Pinkston and Tuttle Declarations.  (Fees Opp'n 11–12.) But as noted above, that argument was not properly before this Magistrate Judge in the context of the Discovery Motion for which Defendant sought review.  Other than the comment made in passing in footnote 19, Defendant raised and developed this argument for the first time in the Review Motion.  There, Defendant dedicated an entire page to the argument, offering not only legal authorities but an under-oath declaration of its counsel attesting to Plaintiff's failure to disclose Messrs. Pinkston and Tuttle as its witnesses and providing Plaintiff's Initial Disclosures as evidence. (Review Mot. 14–15 (citing to the Declaration of Katherine Sandberg and its Exhibit C).)  Nevertheless, this belated argument does not create substantial justification for Defendant's discovery position in the Discovery Motion.  Indeed, the district court need not "need not consider new legal arguments and facts that are introduced for the first time while requesting a district judge's review of a magistrate judge's ruling on a nondispositive matter pursuant to Fed. R. Civ. P. 72(a)." *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10cv541-GPC(WVC), 2014 U.S. Dist. LEXIS 171223, at *82–83 (S.D. Cal. June 16, 2014); *see also Hendon v. Baroya*, No. 1:05-cv-01247-AWI-GSA-PC, 2012 U.S. Dist. LEXIS 40158, at *5–6 (E.D. Cal. Mar. 22, 2012) (denying motion for reconsideration of magistrate judge's  nondispositive order to the extent it was based on new arguments and evidence).  "[T]he Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." *Greenhow v. Sec'y of Health & Human Servs.*,

22

863 F.2d 633, 638–639 (9th Cir. 1988) (affirming district court's refusal to consider argument raised for first time in objection to magistrate judge's report and recommendation), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc); *see also Farquhar v. Jones*, 141 Fed. App'x 539, 540 (9th Cir. 2005) (Mem.) (holding that district court properly declined to address issue raised for first time in objections to the magistrate judge's report and recommendation).  Having failed to present this argument in the Discovery Motion, Defendant was not substantially justified in arguing at the Review Motion that this Magistrate Judge clearly erred in not considering it.

        6.      <u>Defendant's Argument in the Review Motion that This Court Clearly Erred in the Conclusion Drawn from the Pinkston and Tuttle Declarations Was Not Substantially Justified</u>.

Defendant contends that, even if this Magistrate Judge did not clearly err in relying on the Pinkston and Tuttle Declarations, Defendant was substantially justified in arguing in its Review Motion that this Magistrate Judge clearly erred in the conclusion she drew from the two declarations.  (Fees Opp'n 11.)  Defendant argues that the case law it offered in the Discovery Motion "showed that the two declarations, even if properly considered, did not provide sufficient evidence to meet [Plaintiff's] burden to show that further discovery would be likely to substantiate the class allegations."  (*Id.*)  In the Discovery Motion, Defendant relied on five purportedly "similar cases" in which the courts concluded it was appropriate to impose location-based limitations on the discovery.  (Discovery Mot. 31.)  But as this Court explained in the Discovery Order (and again above), Defendant's authorities were not "similar cases" to what was before the Court in the Discovery Motion.  (Discovery Order 25.)  While the plaintiffs in Defendant's authorities sought broad discovery based on nothing more than speculation about the wage-and-hour practices in other locations, Plaintiff here presented under-oath

23

1    declarations of two employees, working in a different location and a different shift,

2    each attesting to having suffered the same wage-and-hour violations alleged by

3    Plaintiff.  (*Id.*)  Defendant fails to explain how its authorities—inapposite as they

4    were—properly support an argument that this Magistrate Judge clearly erred in

5    concluding, based on the facts offered by Messrs. Pinkston and Tuttle, that

6    discovery into their location and shifts was warranted.

7

8              7.    Defendant's Argument in the Review Motion that This Court

9                    Clearly Erred in Not Analyzing the Burden This Discovery

10                   Would Create for Defendant Was Not Substantially Justified.

11         Defendant posits that it was substantially justified in arguing in its Review

12   Motion that this Magistrate Judge clearly erred in not analyzing Defendant's undue

13   burden and oppression arguments.  (Fees Opp'n 11–12.)  In support of this position,

14   Defendant notes that it "submitted a declaration of its Chief Human Resources

15   Officer stating that it would take approximately 726 hours and cost $18,198.00 to

16   comply with the Magistrate's Order."  (*Id.*)  But this "burden" argument and these

17   "burden" facts were not presented for this Magistrate Judge's consideration in the

18   Discovery Motion.  (*See generally* Discovery Mot.)  To the contrary, as Judge

19   Fischer observed in rejecting this argument in the Review Order, "the specific

20   burden arguments made by Defendant in [the Review] Motion do not appear to

21   have been raised in Defendant's filings before the Magistrate Judge."  (Review

22   Order 2.)  As explained above, a Review Motion is not intended to give a party an

23   opportunity to try its luck with an argument never presented to the Magistrate

24   Judge.  Having failed to present this argument to the Magistrate Judge, Defendant

25   was not substantially justified in arguing that this Magistrate Judge clearly erred in

26   not considering it.

27                                    * * *

28

1    Fees under Rule 37(a)(5)(A) are mandatory unless an exception applies.  Fed.

2  R. Civ. P. 37(a)(5)(A).  Only three exceptions to this requirement exist:  (i) if the

3  movant did not attempt, in good faith, to obtain resolution of the dispute before

4  filing the motion; (ii) if the resisting party's objection to the discovery is

5  "substantially justified," or (iii) "if other circumstances make an award of expenses

6  unjust."  *Id.*  Unless one of the three enumerated exceptions exists, the court must

7  award fees.

8    The first exception does not apply here.  It is undisputed that the parties met

9  and conferred among themselves, and with the Court, for hours prior to Plaintiff's

10  filing of the Discovery Motion.

11    The second exception also does not apply.  As detailed above, the Court finds

12  that Defendant was not substantially justified in either resisting Plaintiff's discovery

13  or in bringing its Review Motion.

14    The third exception also does not apply.  To begin with, Defendant does not

15  argue that "other circumstances" in this case would "make an award of expenses

16  unjust."  (*See generally* Fees Opp'n.)  Indeed, the singular mention of "unjust" in

17  the Fees Opposition is found in Defendant's citation to Rule 37.  (Fees Opp'n 9.)

18  In any event, the Court is unaware of any circumstance that warrants relieving

19  Defendant from the consequences under the rule.  Indeed, but for Defendant's

20  noncompliance, Plaintiff would not have been forced to file the Discovery Motion

21  and later to defend its results.  And, as detailed above, Defendant cannot credibly

22  assert that it was not forewarned of the sanctions consequences of its continued

23  resistance to what this Court advised was "very basic discovery."

24    Accordingly, the Court concludes that Plaintiff is entitled to an award of the

25  reasonable expenses he incurred in bringing the Discovery Motion and opposing

26  the Review Motion.  On this basis, the Court now turns to the determination of

27  whether Plaintiff is entitled to the $36,059 in attorneys' fees that he seeks through

28  the Fees Motion.

1  **C.    Plaintiff's Request for Reasonable Expenses Pursuant to Rule**
2       **37(a)(5)(A) Is GRANTED In Part and DENIED In Part.**

3           1.    Legal Standard

4       When an award of attorneys' fees is authorized, the court must calculate the
5  proper amount of the award to ensure that it is reasonable. *Hensley v. Eckerhart*,
6  461 U.S. 424, 433–34 (1983). In the Ninth Circuit, the court must perform a two-
7  step process to determine the reasonableness of any fee award. *Fischer v. SJB-*
8  *P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the Court determines the
9  "lodestar figure." *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).
10  "The 'lodestar' is calculated by multiplying the number of hours the prevailing
11  party reasonably expended on the litigation by a reasonable hourly rate." *Camacho*
12  *v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).
13  Second, where appropriate, the Court may adjust the lodestar amount based on
14  several factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*,
15  526 F.2d 67, 70 (9th Cir. 1975), known as the *Kerr* factors:

16
17           (1) the time and labor required, (2) the novelty and
           difficulty of the questions involved, (3) the skill requisite
18           to perform the legal service properly, (4) the preclusion
           of other employment by the attorney due to acceptance of
19           the case, (5) the customary fee, (6) whether the fee is
           fixed or contingent, (7) time limitations imposed by the
20           client or the circumstances, (8) the amount involved and
           the results obtained, (9) the experience, reputation, and
21           ability of the attorneys, (10) the 'undesirability' of the
           case, (11) the nature and length of the professional
22           relationship with the client, and (12) awards in similar
23           cases.
24

25  *Kerr*, 526 F.2d at 70.

26       A strong presumption exists "that the lodestar figure represents a reasonable
27  fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). The
28  Ninth Circuit has made clear that "[o]nly in rare instances should the lodestar figure

be adjusted on the basis of other considerations." *Id.* (citations omitted). "Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law." *Id.* (citation omitted). Some of the *Kerr* factors that are subsumed within the initial lodestar calculation are "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation," "(4) the results obtained," and "(5) the contingent nature of the fee agreement." *Id.* at 364 n.9 (citations omitted). "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable hours or reasonable hourly rate at the first step . . . is a disfavored procedure." *Id.* (citation omitted).

The party seeking the award of fees must submit evidence to support the request. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Specifically, the party must support the request with evidence regarding the "number of hours worked and the rates claimed." *Id.* The party opposing the fee request bears the "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits." *Common Cause v. Jones*, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (quoting *Gates*, 987 F.2d at 1397).

Plaintiff requests $36,059.00 in attorneys' fees based upon the following lodestar calculation:

| Lawyer | Title | CA Bar Yr | Rate | Hours | Fees |
|--------|-------|-----------|------|-------|------|
| Mark Ozello | Sr. Counsel | 1984 | $775 | 18.7 | $14,492.50 |
| Brandon Brouillette | Associate | 2010 | $485 | 35.1 | $17,023.50 |
| Brooke Waldrop | Fmr. Associate | 2017 | $295 | 15.4 | $4,543.00 |
| TOTAL | | | | 69.2 | $36,059.00 |

(Fees Mot. 8.)

Defendant challenges Plaintiff's lodestar in four ways: (1) 21.1 hours are unreasonable and duplicative (Fees Opp'n 13–14); (2) 11.5 hours are impermissibly

vague and block-billed (*id.* at 14–15); (3) 15.1 hours do not pertain to time spent preparing the Discovery Motion or the opposition to the Review Motion (*id.* at 15–18); and (4) the $485.00 hourly rate for Associate Brandon Brouillette is $40.00 too high (*id.* at 18).

As detailed below, with the exception of 4.7 hours to be discounted as impermissibly vague and block-billed and 3.2 hours to be discounted as possibly not related to the work on the Discovery Motion or the opposition to the Review Motion, the Court concludes that Plaintiff's hours are reasonable.  In addition, the Court concludes that Plaintiff's requested hourly rates are not commensurate with the applicable prevailing rates and should be reduced.  Upon a recalculation, the Court finds that the proper lodestar in this matter is $24,291.50.

> 2.    The Hours Billed by Plaintiff Are Comparable to Others Approved In this District.

As a threshold matter, the Court finds that Plaintiff's documented 69.2 hours spent working on the Discovery Motion (35.2 hours) and in opposing the Review Motion (34 hours) are comparable to those awarded in this district.  *See, e.g.,Nguyen v. Regents of the Univ. of Cal.,* No. 8:17-cv-00423-JVS-KESx, 2018 U.S. Dist. LEXIS 226622, at *10–11 (C.D. Cal. May 18, 2018) (approving 36.1 hours for the preparation of a joint stipulation); *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 2:18-cv-9768-FMO (KSx), 2019 U.S. Dist. LEXIS 221869, at *18 (C.D. Cal. Nov. 8, 2019) (approving 32 hours for the preparation of a discovery motion); *Natural-Immunogenics Corp. v. Newport Trial Grp.*, No. 15 CV 02034-JVS (JCGx), 2017 U.S. Dist. LEXIS 225879, at *4–5, 7 (C.D. Cal. Apr. 6, 2017) (approving 56.75 hours for the preparation of a motion to compel discovery, including "corresponding and meeting and conferring with [opposing] counsel, drafting the motion to compel and supporting declarations, appearing at the oral hearing on the motion, and otherwise pursing the motion to compel.")

1

3.    <u>The Hours Billed by Plaintiff for Preparing the Discovery</u>

2

<u>Motion Are Not Unreasonable and Need Not Be Reduced</u>.

3       Defendant challenges seven time entries that total 21.1 hours and contends

4 that those hours are "unreasonable and duplicative" on the following three grounds:

5 (1) the Discovery Motion was a straightforward motion involving only four

6 discovery requests, and there was no need to parse individual requests or address

7 individualized objections; (2) the parties had discussed the legal authorities in their

8 prior meet-and-confer correspondence and IDC statements, and thus the research

9 relevant to Plaintiff's Discovery Motion already had been performed; and (3) it was

10 unreasonable to have two associates and senior counsel drafting the motion at the

11 same time, and often on the same day.  (Fees Opp'n 13–14.)

12       Defendant does not make clear which of the three objections applies to which

13 of the seven entries.  (*See generally id.*)  Assuming *arguendo* that the three

14 objections apply across the board to the seven entries, these objections fail for lack

15 of legal and factual support.  In challenging time entries, a party must do more than

16 assert bald objections; rather, it must support the objections with evidence, "such as

17 the declaration of an attorney-expert who points to specific excessive and

18 unreasonable items in the billings."  *Natural-Immunogenics*, 2017 U.S. Dist.

19 LEXIS 225879, at *5 (citing *Premier Med. Mgm't Systems, Inc. v. California Insur.

20 Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008) ("General arguments that fees

21 claimed are excessive, duplicative, or unrelated do not suffice.").)  Here, Defendant

22 provides no such evidentiary support.

23       In any event, Defendant's arguments are unavailing.  Defendant's first

24 argument—that, in writing the Discovery Motion, Plaintiff should have addressed

25 the four discovery requests as one without addressing individual objections—flies

26 in the face of Local Rule 37-2.1, which requires that the joint stipulation filed in

27 support of the Discovery Motion:

28

> contain all issues in dispute and, *as to each such issue,*
> the contentions and points and authorities of each party. .
> . . For example, if the sufficiency of an answer to an
> interrogatory is at issue, the stipulation must contain,
> verbatim, both the interrogatory and the allegedly
> insufficient answer, *followed by each party's contentions*
> *as to that particular interrogatory*, separately stated.

C.D. Cal. L.R. 37-2.1 (emphasis added).

Defendant's second argument—that Plaintiff already had conducted its research prior to the writing of the Discovery Motion—is not on point because none of the challenged seven entries involve research. (Fees Opp'n 13–14.)  Moreover, Defendant offers no evidentiary support for its contention that Plaintiff, in fact, had conducted this purported research prior to preparing the Discovery Motion and that he did not need to conduct further research after exchanging meet-and-confer positions with Defendant. (*See generally* Fees Opp'n.)

Defendant's third argument—that it was unreasonable to have two associates and one senior counsel drafting the motion at the same time, and often on the same day—raises a colorable overstaffing and/or duplication concern. "Under federal law, the Court has the discretion to reduce the hours if it determines that inefficiency or overstaffing was a problem . . . ." *Jefferson v. Chase Home Fin.,* NO. C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, at *12 (N.D. Cal. July 10, 2009).  However, this argument is without merit for two reasons.  *First*, a district court may not reduce the attorneys' fee based on speculation regarding how another firm might have staffed the case.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).  And here, Defendant offers no persuasive reason why having two associates and one senior counsel perform the challenged task of preparing the Discovery Motion and the opposition to the Review Motion is unreasonable. *Sunstone Behav. Health*, *Inc. v. Alameda Cnty. Med. Ctr.*, No. CIV. 06-2664 FCD DAD, 646 F. Supp. 2d 1206, 1214 (E.D. Cal. Aug. 19, 2019) (holding that merely directing the court to particular billings without offering evidence of duplication is

30

an insufficient basis upon which to reduce hours); *Jefferson*, 2009 U.S. Dist. LEXIS 64607, at *11–12 ("Chase has identified few substantive areas of duplicative effort, and does not make a persuasive case that the case was overstaffed. . . . [B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable.").)  *Second*, Defendant fails to identify just why the requested fee is excessive and, more importantly, by how much.  *Moreno*, 543 F.3d at 1113 ("Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much.")

For these reasons, the Court will not reduce the number of hours claimed for any of the seven time entries Defendant challenges as "unreasonable and duplicative." (Fees Opp'n 13–14.)

4.     <u>Some of the Hours Billed by Plaintiff for Preparing the Discovery Motion Are Impermissibly Vague and Block-Billed and Warrant Reduction</u>.

Defendant contends that "Plaintiff's billing is replete with instances where the time is not adequately described." (Fees Opp'n 14.)  It challenges six time entries that make up 11.5 hours as improperly block-billed and lacking in information regarding whether the time was spent on motion-related work. (*Id.* at 14–15.)

The practice of block billing involves the lumping together of multiple tasks under one hourly billing entry.  *See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, Mo. CV 12-6972 FMO (JEMx), 2015 U.S. Dist. LEXIS 189271, at *135 (C.D. Cal. Dec. 14, 2015).  "Block billing frustrates the ability of a court to evaluate the reasonableness of the time spent on each task." *Id.* (citing *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1128 (9th Cir. 2008).  A district court is authorized to reduce hours that are billed in this manner on the ground that the fee applicant has failed to meet his burden of documenting the hours expended on each task.  *Welch*

1  *v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with

2  the district court's authority to reduce hours that are billed in block format.").  Still,

3  block billing does not always result in a complete reduction of an entire block of

4  billings.  *Mendez*, 540 F.3d at 1128–29.  Courts have discretion to make a fixed

5  percentage reduction to account for billing defects, provided the court explains

6  "how or why . . . the reduction . . . fairly balance[s] those hours that were actually

7  billed in block format."  *Welch*, 480 F.3d at 948  (citation omitted).  For example,

8  in *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971, 973–74 (D.C. Cir.

9  Jan. 13, 2004), the court found numerous billing infirmities, among them "lumped

10  entries," and made an across-the-board reduction of fifty percent as to each of the

11  infirm billing entries, explaining that "a fixed reduction [was] appropriate given the

12  large number of entries that suffer[ed] from one or more of the deficiencies . . .

13  described."

14      Here, Defendant's authorities do not support its argument that the six

15  challenged time entries should be denied or discounted on the basis of block billing.

16  In *Dubose v. County of Los Angeles*, No. CV 09-7832 CAS (AJWx), 2012 U.S.

17  Dist. LEXIS 81362, at *14–18 (C.D. Cal. June 11, 2012), the entries at issue were

18  not block billed.  In fact, the court imposed an across-the-board 20% reduction on

19  the fees for reasons other than those asserted by Defendant here; specifically, the

20  reduction was necessitated because the fees were excessive, not related to the

21  motion, duplicative, and vague in that they failed to describe the subject matter of

22  research.  *Id.*  In *Sandoval v. Yeter*, CV 18-0867-CBM (JPRx), 2019 U.S. Dist.

23  LEXIS 227406, at *9–*10 (C.D. Cal. Oct. 31, 2019), the entries at issue also were

24  not block billed.  Instead, the court discounted time entries on the grounds that they

25  were not for motion-related work and/or did not properly identify the "general

26  subject matter" of the time expenditure.  *Id.  Sandoval*, in fact, favors Plaintiff's

27  position against reducing the six entries based on vagueness.  In *Sandoval*, the court

28  made clear that entries that generally describe the work, as do Plaintiff's time

1  entries here, are proper. *Id.* at *8–*10 (holding the following entries proper and
2  compensable: "Research motion to compel," "Prepare motion to compel,"
3  "Continue preparation of motion to compel," and preparation "of reply brief.")

4  Notwithstanding, the Court's independent review of the six challenged
5  entries reveals some improprieties. With respect to Defendant's vagueness
6  argument, the Court first finds that not all of the six challenged entries suffer from
7  vagueness as Defendant contends. In general, the entries that describe the drafting
8  and revising of the motion to compel (described variably as either "motion to
9  compel further responses" or "motion to compel"), the analysis of job descriptions,
10  and the preparation of declarations (Fees Opp'n 14–15), are not impermissibly
11  vague under *Sandoval*. However, three entries reflecting conferences between and
12  among counsel are impermissibly vague in that they do not reflect that the
13  conference concerned the Discovery Motion or related issues. (*Id*.) However,
14  Defendant's concern was addressed anticipatorily in Plaintiff's moving papers,
15  which plainly state that the attorneys' fees Plaintiff seeks are "in connection with
16  this motion to compel and opposition to the motion for review." (Mot. 7; *see also*
17  Ozzello Dec. ¶ 14.) Notably, Defendant does not offer any evidence to controvert
18  this under-oath statement. Nevertheless, because these entries do not precisely state
19  the purpose of the conference, the Court concludes that a 50% reduction of the three
20  entries is warranted.

21  With respect to block-billing, Defendant is correct that the six challenged
22  entries are block-billed—each entry containing two tasks. This practice prevents
23  this Court from determining the reasonableness of the amount of time spent on each
24  task. Accordingly, the Court concludes that a 20% reduction to all of the block-
25  billed entries also is appropriate. *See Dubose,* 2012 U.S. Dist. LEXIS 81362, at
26  *14–18.
27  ///
28  ///

33

On this basis, the Court reduces the number of hours billed by Mr. Ozzello by 1.1 hours, and the number of hours billed by Ms. Waldrop by 3.6 hours, as detailed in the chart below:

| Attorney Date | Billing Entry | Original Hours | Less 50% | Less 20% | Net Hours (round) |
|---|---|---|---|---|---|
| Waldrop 8/25/20 | Draft and revise motion to compel further responses and confer with M. Ozzello | 2.0 | 1.0 | 0.2 | 0.8 |
| Waldrop 8/26/20 | Draft and revise motion to compel further responses and confer with M. Ozzello and B. Brouillette | 0.5 | 0.3 | 0.1 | 0.2 |
| Waldrop 9/1/20 | Draft and revise motion to compel further responses, and confer with M. | 3.1 | 1.6 | 0.3 | 1.2 |
| Ozzello 9/3/20 | Draft and revise motion to compel; review and analyze job descriptions of day and night workers | 4.9 | | 0.9 | 4.0 |
| Ozzello 9/4/20 | Attention to obtaining declarations; Review and analyze emails regarding same | 0.8 | | 0.2 | 0.6 |
| Waldrop 9/15/20 | Draft and revise joint stipulation and notice of motion, and confer with M. Ozzello and B. Brouillette re: meeting and conferring on hearing date | 0.2 | | 0.1 | 0.1 |
| **TOTAL** | | 11.5 | 2.9 | 1.8 | 6.8 |

5.    Some of Plaintiff's Billed Hours May Not Pertain to His Preparation of the Discovery Motion and His Opposition to the Review Motion and Warrant Reduction.

Defendant contends that some of Plaintiff's billing entries do not pertain to time spent preparing the Discovery Motion or opposing the Review Motion. (Fees Opp'n 15–18.)  It challenges fourteen activities (found in twelve entries due to

1    block-billing) that make up 15.1 hours.  Relying on *Berryhill v. Johnson*, No.

2    SACV 11-1468-AG (RNBx), 2012 U.S. Dist. LEXIS 199721, at *5 (C.D. Cal. July

3    19, 2012), Defendant urges the Court to disregard or discount the entries for the

4    fourteen activities (Fees Opp'n 15.)  This is not warranted here.

5        As an initial matter, Defendant's reliance on *Berryhill* is misplaced.  In

6    *Berryhill*, the entries that the Court discounted were nothing like the entries

7    challenged here.  Instead, the court in *Berryhill* denied recompense for meet-and-

8    confer activities, the ministerial act of assembling the motion, duplicative work, and

9    excessive hours.  *Id.* at *4–5.  Defendant fails to identify which of the fourteen

10   activities fall into any of these *Berryhill* categories.  (Fees Opp'n 15–18.)

11       Moreover, the Court does not agree with Defendant that all of the challenged

12   entries are improper even under the general proposition of *Berryhill* that all time

13   entries must relate to the making of the Discovery Motion or opposition of the

14   Review Motion.  *See Berryhill*, 2012 U.S. Dist. LEXIS 199721, at *5.  Defendant's

15   first argument—that time spent preparing a memorandum analyzing case law is not

16   time spent preparing the motion in that the analysis should have been added to the

17   moving papers in the first instance instead of creating one document for the analysis

18   and one document for the motion—is unpersuasive.  (Fees Opp'n 15.)  This appears

19   to be a reference to one of the fourteen challenged activities, which states:

20   "9/14/20:  Legal research re defendant's case law cited in joint statement, and draft

21   memorandum outlining how case law cited is distinguishable to this case."  (*Id.* at

22   16.)  But Defendant presents no legal or evidentiary support for the bald assertion

23   that this billing entry is not compensable.  (*See generally* Fees Opp'n.)  On this

24   basis alone, the argument should be disregarded.  *Natural-Immunogenics Corp.*,

25   2017 U.S. Dist. LEXIS 225879, at *5–6 (holding it is the resisting party's burden to

26   explain how each entry is not connected to the bringing of the discovery motion).

27   In addition, the argument is rejected for the independent reason that it is factually

28   unsound.  A legal memorandum can, and often does, contain strategic, sometimes

privileged, analysis, that never makes its way into a filed brief.  In any event, the Court cannot help but note that today's technology allows for the copying of text from one document to another in nothing more than a few keystrokes.  Accordingly, the supposed time differential over which Defendant does battle is, at best, *de minimis.*

The Court also rejects Defendant's *Berryhill* argument with respect to eight of the fourteen activities that clearly reference the Discovery Motion or the opposition to the Review Motion (which includes Defendant's ex parte application to stay the Discovery Order (ECF No. 49)):  9/15/20:  "joint stipulation"; 10/19/20: "order granting motion to compel"; 10/27/20:  notice of review from opposing counsel"; 10/28/20:  "opposition to ex-parte"; 11/3/20:  "motion re appeal of magistrate's order";  11/3/20: "order from court regarding hearing date"; 11/17/20: "reply re objection to order granting motion to compel"; and 11/30/20: "objection to RJN and declaration."  (Fees Opp'n 14–18.)  While Defendant challenges these entries as not related to the Discovery Motion or the opposition to the Review Motion, it fails to explain how these entries create any ambiguity that the work performed was, indeed, related to these motions.  (*Id.* at 15–18.)

That leaves five of the fourteen challenged activities, which, as Defendant contends, do not specifically identify the work performed as related to the Discovery Motion or the opposition to the Review Motion:  9/14/20:  "filing"; 9/24/20:  "order"; 11/2/20:  "motion"; 11/6/20:  "opposition"; and 11/30/20: "reply."  (*Id.*)  As noted above, this issue was addressed anticipatorily by Mr. Ozzello's under-oath declaration that the attorneys' fees sought here are related to this motion practice.  Nevertheless, because these entries do not precisely state the motion practice at issue here, the Court concludes that a 50% reduction of the five entries is warranted.

///

///

36

On this basis, the Court reduces the number of hours billed by Ms. Waldrop by 0.2 hours, and the number of hours billed by Mr. Ozzello by 3 hours, as detailed in the chart below:

| Attorney Date | Billing Entry | Original Hours | Less 50% | Net Hours (round) |
|---|---|---|---|---|
| Waldrop 9/14/20 | Communicate with opposing counsel re: filing | 0.3 | 0.2 | 0.1 |
| Ozzello 9/24/20 | Review and analyze order; communicate with team regarding same | 0.3 | 0.2 | 0.1 |
| Ozzello 11/2/20 | Review and analyze motion | 0.4 | 0.2 | 0.2 |
| Ozzello 11/6/20 | Draft and revise opposition; conferences with J. Hakakian regarding same | 3.5 | 1.8 | 1.7 |
| Ozzello 11/30/20 | Review and analyze Deft's reply; Review and analyze objection to RJN and declaration | 1.6 | 0.8 | 0.8 |
| **TOTAL** | | 6.1 | 3.2 | 2.9 |

6.    The Hourly Rates Claimed by Plaintiff Are Reasonable and Commensurate with the Prevailing Rate.

Plaintiff claims the following hourly rates: $775.00 for Mr. Ozzello, a Senior Counsel with thirty-five years' experience; $485.00 for Mr. Brouillette, an Associate with eleven years' experience; and $295.00 for Ms. Waldrop, a former Associate with four years' experience. (Ozzello Decl. 3.)

In determining whether the hourly rate billed is reasonable for purposes of an attorneys' fees award, the Court must ensure that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *accord Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (noting that the party seeking fees must prove that the rate

charged is in line with the "prevailing market rate of the relevant community." (citation omitted)).  The burden is on the fee applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community. . . ." *Camacho*, 523 F.3d at 980 (citation omitted).  For this purpose, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (internal quotation marks and citation omitted).  Accordingly, the relevant community here is the Central District of California.  In addition, the court may rely on its own experience to determine a reasonable hourly rate.  *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  Finally, in exercising its discretion in setting a fee, the court must assess the "reasonableness of the fee in light of the totality of the circumstances." *Jordan v. Multonah County*, 815 F.2d 1258, 1262 n.7 (9th Cir. 1987).

Plaintiff's counsel does not attest to the background and experience of the attorneys who worked on this matter.  (*See generally* Ozzello Decl.)  Nor does Plaintiff offer a declaration of an attorneys' fees expert.  (*See generally* Fees Mot., Reply.)  Instead, Plaintiff offers three comparator groups of firms as evidence that the hourly rates sought here are consistent with the prevailing rate in the community for similar work.  Plaintiff's evidence is not entirely persuasive.

*First*, Plaintiff's counsel declares that, during the period 2015 to 2020, three courts in the Central District of California have approved the hourly rates of his law firm, Capstone Law APC ("Capstone"), ranging from $245.00 to $445.00 for associates, $495.00 to $775.00 for senior counsel/partners, and $370.00 to $695.00 for the attorneys in this case.  (Ozzello Decl. 3.)  Notably, by requesting that the Court judicially notice the *Wylie* Matter—one of Plaintiff's three cases—Defendant

38

seems to agree with Plaintiff that it is a fair comparator, at least for Mr. Brouillette's hourly rate. (Fees Opp'n 18 (requesting that this Court use the $445.00 hourly rate requested for Mr. Brouillette in the *Wylie* Matter in setting his rate here).) Nevertheless, the Court's independent review of the dockets in those cases[8] reveals that none is a comparable case requiring similar work. While, indeed, the three cases are class actions, none is a wage-and-hour class action; instead, all are automotive defect cases raising state law claims brought under diversity jurisdiction. Despite Defendant's confirmation that the *Wylie* Matter is a proper comparator, the Court cannot credit this evidence because Plaintiff does not offer any proof regarding the similarities between the cases, the skill needed to litigate them, and the work done.

*Second*, Plaintiff's counsel declares that, during the period 2016 to 2020, seven federal courts and twenty-seven state courts have approved Capstone's hourly rates, ranging from $245.00 to $570.00 for associates, and $485.00 to $775.00 for senior counsel/partners. (*Id.* 3–6.) Because Plaintiff does not describe the nature of the twenty-seven state court cases (*id.*), the Court is unable to determine whether they required comparable skill and work. Accordingly, the Court does not credit this evidence. Plaintiff also does not describe the nature of the seven federal court cases. (*Id.*) Nevertheless, the Court takes judicial notice of their dockets and notes that all are wage-and-hour class or representative actions. Accordingly, the Court credits Plaintiff's evidence that, of the seven cases, the three courts in the Central District of California have approved hourly rates ranging from

---

[8] *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state courts").

$245.00 to $495.00 for associates, and $495.00 to $725.00 for senior counsel/partners, during the period 2016 to 2019.  (*Id.*)

*Third*, Plaintiff's counsel declares that Capstone's hourly rates are comparable to those judicially approved for other plaintiff's firms and provides examples of twenty-three firms[9] across seven federal court cases and two state court cases where the fees awards ranged from $225.00 to $550.00 for associates, and $445.00 to $825.00 for senior counsel/partners.  (*Id.* 7–8.)  Because Plaintiff, again, does not describe the nature of the two state court cases, the Court does not credit this evidence.  Of the federal court cases, the Court's judicial notice of their dockets reveals that only two were Central District of California wage-and-hour class actions:  *Barrera v. Gamestop Corp. et al*, Case No. 2:09-cv-01399-ODW-E (C.D. Cal. Apr. 27, 2012), and *Anderson v. Nextel Retail Stores, LLC, et al.*, Case No. 2:07-cv-04480-SVW-FFM, 2010 U.S. Dist. LEXIS 71598 (C.D. Cal. July 20, 2010).  In these two cases, seven of the eight plaintiff's firms are comparable in size to Capstone—less than fifty attorneys.[10]  These six firms were awarded attorneys'

---

[9]  Plaintiff's counsel does not provide all of the detail necessary for this analysis. While the Court is unable to determine how many firms were involved in the two state court cases cited (*Richard v. Ameri-Force Mgmt. Servs., Inc.*, No. 37-2008-00096019 (San Diego Super. Ct.), and *Luquetta v. Regents of Cal.*, CGC-05-443007 (San Francisco Super. Ct.)), the Court was able to review the dockets of the federal court cases cited by Plaintiff to identify twenty-three plaintiff's firms offered as comparators.

[10]  In *Barrera*, the plaintiff's firms were (1) Alisa Goukasian Law Offices, *see* Law Office of Alisa Goukasian, https://goukasianlaw.com/ (last visited Apr. 26, 2021); (2)  Kesluk & Silverstein, P.C., *see* Kesluk, Silverstein, Jacob, & Morrison, *https://www.californialaborlawattorney.com/*, (last visited Apr. 26, 2021); and (3) the Law Office of Levik Yarian, *see* Yarian & Assocs., https://www.yarianlaw.com/ (last visited Apr. 26, 2021)  In *Anderson*, the plaintiff's firms were (1) Kingsley & Kingsley, *see* Kingsley & Kingsley, *https://www.kingsleykingsley.com/* (last visited Apr. 26, 2021); (2) Barroway Topaz Kessler Meltzer & Check, now Kesler Topaz Meltzer & Check, *see* Kesler Topaz Meltzer & Check, *https://www.ktmc.com/* (last visited Apr. 26, 2021); (3) Lim, Ruger, & Kim LLP, now Lee Anav Chung White

fees ranging from $300.00 to $515.00 for associates, and $600.00 to $700.00 for senior counsel/partners. The Court credits this evidence.

The foregoing is persuasive evidence that, at least in the cases that Plaintiff has chosen to proffer to the Court, the courts in the Central District of California presiding over wage-and-hour class actions have found reasonable, and awarded, hourly rates in the range of $245.00 to $515.00 for associates, and $495.00 to $725.00 for senior counsel/partners. Defendant does not dispute these facts. To the contrary, as stated above, Defendant itself asks the Court to consider the *Wylie* Matter as a proper comparator here.

Still, in addition to the foregoing, the Court considers information contained in Wolsters Kluwer's ELM Solutions 2020 Mid-Year Real Rate Report ("Real Rate Report"), a publication that provides data-driven benchmarking for attorney hourly rates. *See, e.g., Smith v. County of Riverside*, No. EDCV 16-227 JGB (KKx), 2019 U.S. Dist. LEXIS 170421 (C.D. Cal. June 17, 2019) ("[A] number of district courts in California have relied on the Real Rate Report."). The information provided by the Real Rate Report is persuasive because, rather than using self-reported rates aggregated across all practice areas throughout the country, as appear in other surveys, it reflects actual legal billing through paid and processed invoices disaggregated for location, experience, firm size, areas of expertise, industry, and practice areas. (*See* Real Rate Report 4.) According to the Real Rate Report, in the area of Employment and Labor, a litigation attorney with more than twenty years of

---

Kim Ruger & Richter LLP, see Lee Anav Chung White Kim Ruger & Richter LLP, https://www.lacwkrr.com/ (last visited Apr. 26, 2021); (4) The Thierman Law Firm, now The Thierman Buck Law Firm, *see* Thierman Buck Law Firm, *https://thiermanbuck.com/* (last visited Apr. 26, 2021); and (5) The Law Offices of Scott Miller, *see* The Law Offices of Scott A. Miller, *https://www.californiawagelawattorney.com/* (last visited April 26, 2021). With the exception of Kesler Topaz Meltzer & Check, all of these are firms of less than fifty attorneys.

1  experience working in Los Angeles in 2020, such as Mr. Ozzello, earned an hourly
2  rate ranging from $425.00 to $720.00 per hour.  (*Id.* at 76.)  An associate with
3  seven or more years of experience, such as Mr. Brouillette, earned an hourly rate
4  ranging from $297.00 to $446.00.  (*Id.*)  Finally, an associate with three to seven
5  years of experience, such as Ms. Waldrop, earned an hourly rate ranging from
6  $290.00 to $383.00.  (*Id.*)

7  In addition, the Real Rate Report demonstrates that, across all practice areas,
8  the size of the law firm has a significant impact on law firm rates.  (*See generally*
9  Real Rate Report; *see also id.* at 77 (Labor & Employment).)  Refining the analysis
10  here to adjust for size of firm, a Labor and Employment partner in a firm of fifty or
11  fewer attorneys, such as Capstone, earned an hourly rate ranging from $288.00 to
12  $469.00 per hour, with a median hourly rate of $413.00.  (*Id.* at 77.)  Similarly, a
13  Labor and Employment associate at such a firm earned an hourly rate ranging from
14  $214.00 to $345.00, with a median hourly rate of $297.00.  (*Id.*)

15  Significantly, Defendant does not challenge the $775.00 hourly rate
16  requested for Mr. Ozzello or the $295.00 hourly rate requested for Ms. Waldrop.
17  (Fees Opp'n 18.)  Rather, Defendant challenges only the $485.00 hourly rate
18  requested for Mr. Brouillette.  Defendant argues that Mr. Brouillette's hourly rate
19  should be fixed at $445.00 because that is the amount Capstone requested in the
20  *Wylie* Matter for a different associate with the same law class years as Mr.
21  Brouillette and Plaintiff has offered no evidence to support the additional $40.00
22  per hour requested for Mr. Brouillette here.  (*Id.*)  But Defendant offers no
23  authority for the proposition that a firm cannot raise its rates from one year to the
24  next or bill different rates for associates of the same class vintage.  (*Id.*)  Indeed,
25  Defendant offers no evidence that this is an apples-to-apples comparison to begin
26  with.  This argument is without merit.
27  * * *
28

42

Putting all of this together, the Court exercises its discretion to adjust the requested fees to reflect what this Court believes to be appropriate hourly rates under the circumstances.  As to Mr. Brouillette, the Court finds that his eleven years of experience warrant setting an hourly rate at the high end of the Real Rate Report for small firms, or $345.00.  As to Ms. Waldrop, the Court notes that the hourly rate requested for her, $295.00, falls within the median hourly rate for her experience, and leaves it undisturbed.  As to Mr. Ozzello, the Court concludes that an increase over the "small firm" rate stated in the Real Rate Report is warranted. The Court notes that, through the discussions at the IDC and the parties' briefs, Mr. Ozzello has demonstrated not only a high degree of knowledge with respect to the substantive law, but also a superior acuity in the application of that law.  Moreover, the Court notes, again from the IDC, that Mr. Ozzello's approach to the resolution of the discovery disputes reflects a sophistication and flexibility indicative of a seasoned attorney who commands—and in this Court's opinion, has earned—a higher hourly rate.

Accordingly, the Court concludes that the following hourly rates are reasonable in this matter and commensurate with the prevailing hourly rates for private attorneys in the community conducting wage-and-hour class action litigation:

Mr. Ozzello....................$600.00

Mr. Brouillette...............$345.00

Ms. Waldrop..................$295.00

7.    The Lodestar Here Results In an Attorneys' Fees Calculation of $24,291.50 and No *Kerr* Adjustment Is Necessary.

The Court recalculates the lodestar based upon the foregoing as follows:

43

| Lawyer | Original Hours | Reduction to Hours | Adjusted Hours | Adjusted Rate | Fees |
|---|---|---|---|---|---|
| Ozzello | 18.7 | 4.1 | 14.6 | $600.00 | $8,760.00 |
| Brouillette | 35.1 | 0.0 | 35.1 | $345.00 | $12,109.50 |
| Waldrop | 15.4 | 3.8 | 11.6 | $295.00 | $3,422.00 |
| **TOTAL** | 69.2 | 7.9 | 61.3 | | $24,291.50 |

Neither party requests an adjustment to the lodestar based on the *Kerr* factors. (*See generally* Fees Mot., Fees Opp'n, Reply.) Indeed, upon a review of the *Kerr* factors that are not already subsumed within the lodestar, the Court sees no reason to make such an adjustment. On this basis, the final fee award is **$24,291.50**.

## IV.  CONCLUSION

Rule 37(a)(5)(A) requires that the Court award reasonable expenses under the circumstances here. The Court stated clearly that it likely would compel the discovery Defendant was resisting absent new facts or legal argument. Plaintiff unambiguously warned Defendant that he would seek sanctions if forced to bring a motion. The Court reiterated Plaintiff's cautionary note. The record and the preceding pages confirm this. Yet, Defendant persisted, forcing Plaintiff to bring the Discovery Motion and then opposing it with no new persuasive facts and no legal theories different from what already had been rejected at the IDC. Defendant cannot refuse to heed repeated warnings and then expect not to pay for the unnecessary costs it caused Plaintiff to incur. For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** the Fees Motion, and, thereupon, **ORDERS** Defendant to pay Plaintiff the sum of **$24,291.50** as his reasonable

///
///
///
///

expenses in bringing the Discovery Motion and defending its result by opposing the Review Motion.  Defendant shall pay this sum to Plaintiff **no later than thirty days after the date of this Order**.

It is so ordered.

DATED:  April 26, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE